**Hearing Date and Time: May 21, 2019 at 10:00 a.m. ET**
**Objection Deadline: April 29, 2019**

MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
James M. Peck
Grant J. Esposito
Erica J. Richards

*Counsel to the Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------ x
                                              :
In re:                                        :
                                              :   Chapter 11
BLUE DOG AT 399 INC.,                         :
                                              :   Case No. 15-10694 (MEW)
                    Debtor.                   :
                                              :
------------------------------------------------------------ x
                                              :
BLUE DOG AT 399 INC.,                         :
                                              :
                    Plaintiff,                :
      -against-                               :
                                              :
                                              :   Adv. Proc. No. 19-01029
SEYFARTH SHAW, LLP and                        :
RALPH BERMAN                                  :
                                              :
                    Defendants.               :
------------------------------------------------------------ x
```

**DEFENDANTS' MOTION FOR DISMISSAL OF ADVERSARY PROCEEDING**
**PURSUANT TO BANKRUPTCY RULE 7012(b) AND FEDERAL RULE 12(b)(6)**

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ..................................................................................1

II.     BACKGROUND ......................................................................................................6

        A.      The Debtor's Main Bankruptcy Case ...........................................................6

        B.      The Landlord Action ....................................................................................6

        C.      The Adversary Proceeding Against Seyfarth .......................................................10

III.    ARGUMENT .........................................................................................................11

        A.      The Debtor Fails to State a Claim for Legal Malpractice...................................11

                1.      Legal Standard and Judicial Notice ......................................................11

                2.      The Debtor Fails to Allege That Seyfarth's Actions Proximately
                        Caused Its Damages .........................................................................13

                3.      Seyfarth Is Not Estopped from Contesting the Merits of the
                        Landlord Action...............................................................................16

        B.      The Treble Damages Provision of Section 853 of the New York Real
                Property Actions and Proceedings Law Is Inapplicable to This Case.................18

IV.     CONCLUSION ......................................................................................................20

**Exhibits**

Exhibit A – Order Dismissing Adversary Proceeding Pursuant to Bankruptcy Rule 7012(b) and
            Federal Rule of Civil Procedure 12(b)

Exhibit B – Transcript of Hearing Held on January 23, 2019

Exhibit C – Transcript of Hearing Held on November 20, 2018

Exhibit D – Transcript of Hearing Held on July 19, 2016

Exhibit E – Transcript of Hearing Held on December 15, 2016

Exhibit F – Declaration of Adrian Zuckerman in Support of Motion for Leave to Withdraw as
            Counsel

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................... 11

*Brass v. Am. Film Techs., Inc.*,
  987 F.2d 142 (2d Cir. 1993) ....................................................................... 12

*Braun v. Rosenblum*,
  811 N.Y.S.2d 683 (App. Div. 2006) ........................................................... 19

*Buckskin Realty Inc. v. Greenberg (In re Buckskin Realty Inc.)*,
  Adv. No. 15-01203, 2017 WL 1283458 (Bankr. E.D.N.Y. Apr. 5, 2017) ............. 13

*In re Campbell*,
  500 B.R. 56 (Bankr. D.N.M. 2013) ............................................................. 12

*Cappetta v. Lippman*,
  913 F. Supp. 302 (S.D.N.Y. 1996) ............................................................. 19

*Encyclopaedia Britannica, Inc. v. Dickstein Shapiro*, LLP,
  905 F. Supp. 2d 150 (D.D.C. 2012) ...................................................... 16, 17

*Flaxer v. Gifford (In re Lehr Constr. Corp.)*,
  528 B.R. 598 (Bankr. S.D.N.Y. 2015), *aff'd*, 551 B.R. 732 (S.D.N.Y. 2016),
  *aff'd*, 666 Fed. Appx. 66 (2d Cir. 2016) ..................................................... 12

*Flutie Bros. LLC v. Hayes*,
  No. 04 CIV 4187, 2006 WL 1379594 (S.D.N.Y. May 18, 2006) ......................... 13

*Hood v. Koziej*,
  37 N.Y.S.3d 68 (App. Div. 2016) ............................................................... 18

*Joyce v. Thompson Wigdor & Gilly LLP*,
  Case No. 06-CIV-15315, 2008 WL 2329227 (S.D.N.Y. June 3, 2008) ............... 17

*Katzenstein v. VIII SV5556 Lender, LLC (In re Saint Vincent's Catholic Med.
  Ctrs. of N.Y.)*,
  440 B.R. 587 (Bankr. S.D.N.Y. 2010) ......................................................... 12

*Levine v. Egidi*,
  No. 93 C 188, 1993 WL 69146 (N.D. Ill. Mar. 8, 1993) .................................. 12

*Lyke v. Anderson*,
  541 N.Y.S.2d 817 (App. Div. 1989) ....................................................... 18, 19

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
602 F.3d 57 (2d Cir. 2010) ............................................................................... 12

*Rental & Mgmt. Assocs., Inc. v. Hartford Ins. Co.*,
614 N.Y.S.2d 513 (App. Div. 1994) .......................................................... 18, 19

*Shapiro v. Butler,*
709 N.Y.S.2d 687 (App. Div. 2000) .......................................................... 16, 18

*Summerville v. Lipsig,*
704 N.Y.S.2d 598 (App. Div. 2000) ............................................................... 19

*Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.*,
780 N.Y.S.2d 593 (App. Div. 2004) ............................................................... 13

**Statutes**

New York Real Property Actions and Proceedings Law Section 853 ......................................... 18

## I.    PRELIMINARY STATEMENT

1.        Defendants Seyfarth Shaw LLP (the "Firm") and Ralph Berman (collectively, with the Firm, "Seyfarth") formerly served as litigation counsel to Plaintiff Blue Dog at 399 Inc. ("Blue Dog" or the "Debtor") in an adversary proceeding titled *Blue Dog at 399 Inc. v. BP 399 Park Avenue LLC (In re Blue Dog at 399 Inc.)*, Adv. No. 15-01097 (Bankr. S.D.N.Y.) (the "Landlord Action"), brought by the Debtor against BP 399 Park Avenue LLC (the "Landlord"). In an earlier adversary proceeding brought against Seyfarth last year, *Blue Dog at 399 Inc. v. Seyfarth Shaw, LLP,* Adv. No. 18-01571 (Bankr. S.D.N.Y.) (the "First Action"), the Debtor filed a complaint and then (in response to Seyfarth's initial motion to dismiss) an amended complaint (the "Amended Complaint"), which was dismissed by this Court on December 6, 2018 (the "Dismissal Order") [First Action Dkt. No. 24, attached as **Exhibit A**].  Count One (Declaratory Judgment) and Count Three (Claim under New York Judiciary Law § 487) of the Amended Complaint were dismissed with prejudice and Count Two (Negligence/Legal Malpractice) was dismissed without prejudice.

2.        In January 2019, this Court approved a settlement (the "Landlord Settlement") between Blue Dog and the Landlord [Main Case Dkt. No. 184] that Blue Dog entered into with the aim of again pursuing meritless claims against Seyfarth.  During the hearing to approve the Landlord Settlement, Debtor's counsel acknowledged that the estate is presently administratively insolvent and is depending on a recovery on its claims against Seyfarth to fund its chapter 11 case.  *See* Transcript of Hearing at 9:1-16, *In re Blue Dog at 399 Inc.*, No. 15-10694 (Bankr. S.D.N.Y. Jan. 23, 2019), attached as **Exhibit B**.  The Debtor has now filed an almost identical complaint against Seyfarth [Dkt. No. 1] (the "New Adversary Complaint"), which reasserts Count Two of the Amended Complaint and seeks damages for negligence and legal malpractice allegedly committed by Seyfarth in connection with the Landlord Action.  Although the factual

allegations underlying the negligence claim are unchanged, in a move that strains credulity, the

Debtor's asserted damages have inexplicably ballooned from its prior groundless claim of

$40.5 million to a preposterous $156,694,950.

3.      Seyfarth moves to dismiss the New Adversary Complaint pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure (the "Rules") for failure to state any claims on

which any relief may be granted.  The latest attempt to assign blame to Seyfarth suffers from the

same fatal defect that plagued the Debtor's previously dismissed claim for negligence and legal

malpractice:  Blue Dog did not and cannot show how any alleged malpractice caused cognizable

harm—a dispositive issue that this Court took note of during the November 20, 2018 hearing.

*See* Transcript of Hearing at 16:2-15, *Blue Dog at 399 Inc. v. Seyfarth Shaw, LLP*, No. 18-01571

(Bankr. S.D.N.Y. Nov. 20, 2018) (the "November 20 Hearing Transcript"), attached as

**Exhibit C**.  The New Adversary Complaint is equally flawed and does nothing to remedy that

deficiency.

4.      Plaintiff's third attempt to manufacture a claim merely embellishes the narrative

from the Amended Complaint, removes a handful of distorted allegations, and replaces them

with a number of new conclusory and misleading allegations regarding the Landlord Settlement

and rank speculation concerning Blue Dog's supposed damages.  It does not, however, connect

Seyfarth's alleged negligence to any damages traceable to the Landlord Action, despite the prior

admonitions from this Court that such a failure dooms this proceeding.

5.      Such a connection cannot be made, because Blue Dog settled the Landlord Action

and avoided a determination on the merits of its rights as a tenant.  The Landlord Settlement

amounts to a surrender of all of Blue Dog's rights, including its leasehold and possessory rights,

in exchange for a *de minimus* settlement payment.  By entering into the Landlord Settlement,

Blue Dog forfeited the chance to show any relationship between the handling of pretrial

discovery in the Landlord Action and the ultimate outcome of that proceeding.

6.      Allegations that Blue Dog would have ultimately prevailed at trial but for the

Court's refusal to admit an expert report are impossible to prove without actually holding a trial.

That trial was eliminated as an option and will never be held because of the Landlord Settlement.

As a result, the Debtor has an incurable causation problem and is unable to prove any actual

harm resulting from anything that Seyfarth may have done or not done as counsel.

7.      Blue Dog tries in vain to circumvent these manifest pleading deficiencies in two

ways.  First, Blue Dog appears to argue that Seyfarth is estopped from defending itself because

of statements it made on Blue Dog's behalf as its counsel.  Such a position necessarily fails

because it is contrary to established precedent holding that there can be no judicial estoppel

against a law firm defending a malpractice action if the firm was merely counsel to a party in the

underlying dispute and was not itself a party.  Second, Blue Dog points to self-serving provisions

of the settlement agreement with the Landlord as dispositive evidence that, contrary to arguments

made by the Landlord prior to the settlement, its lease was not terminated prepetition.  This

argument is also unavailing, as the settlement agreement—which Seyfarth is not a party to and is

not bound by—does not constitute a judicial determination on the merits of Blue Dog's claims.

8.      Further undermining any claim for relief here, Blue Dog appears to rely solely on

the views of its principal, Elizabeth Slavutsky, in calculating the profits that Blue Dog allegedly

lost by agreeing to surrender its Lease with the Landlord and relinquish its possessory rights.

But that calculation, which disregards the excluded expert report on damages Blue Dog contends

was so critical to the Landlord Action, was fully available to Blue Dog in the Landlord Action.

Perhaps recognizing the contradiction of its position, the Debtor fails to explain why Ms.

Slavutsky's personal testimony regarding damages in the Landlord Action is probative of damages in this action but would not have been sufficient in the Landlord Action itself. This paradox illustrates the absurdity of Blue Dog's claims.

9.      The fact that Blue Dog is pursuing these unsupported opportunistic claims against Seyfarth out of financial desperation is no excuse for stretching the boundaries of permissible pleading. Blue Dog has burdened Seyfarth and the Court with yet another complaint riddled with irrelevant, lurid allegations and, in so doing, has continued to inflict reputational damage upon one of the country's major law firms. Trying to distract from its failure to plead a viable negligence claim, Blue Dog engages in arithmetic fantasy to generate an even more outrageous demand than the one made in the Amended Complaint by applying (yet another) inapplicable trebling statute to its speculative and unsupported damages calculation of $52 million.

10.     The Debtor has concocted an absurd damages claim against Seyfarth, conveniently disregarding the fact that Seyfarth's services directly benefited Blue Dog by setting the stage for negotiation of an enhanced lease on much more favorable terms to the Debtor than those provided under its original lease or the Landlord Settlement. Those lease negotiations took place during a two-day mediation requested by the Landlord and overseen by Judge Garrity in advance of a scheduled trial in the Landlord Action. The Debtor, through its principal, Ms. Slavutsky, agreed to these terms during the mediation and then repudiated them. Due entirely to the Debtor's choice to reject a settlement that made good business sense and on its face would have provided more money and benefits to the Debtor than the subsequent Landlord Settlement, the Landlord Action lingered in this Court for more than two years, never progressed to trial, and resulted in a settlement with the Landlord in which Blue Dog essentially gave up all claims to possession and a lease for a nominal payment.

11.      In contrast to this capitulation, under the settlement terms Seyfarth negotiated,
Blue Dog would have remained in possession of the premises for the full duration of the original
lease (which was the relief Blue Dog sought when it filed the underlying litigation); gained
another ten years at a fixed below market rental amount; obtained a year's free rent; had the
ability to sublet or assign the lease without sharing profits with the Landlord and without the
Landlord having the right to recapture the space; and had the opportunity to generate future
earnings by operating its business.  Blue Dog's conclusory boasts about how much better it did
under the Landlord Settlement than it would have under the settlement terms Seyfarth negotiated
cannot withstand scrutiny.

12.      The New Adversary Complaint also invokes the trebling provision under
Section 853 of the New York Real Property Actions and Proceedings Law ("Section 853") to
reach the latest grossly exaggerated and impermissible damages figure.  The purpose of
Section 853 is to discourage undue intimidation and violence by landlords in the eviction of
persons from real property, which is simply inapplicable to Seyfarth.  Numerous courts have held
that plaintiffs in legal malpractice actions are not entitled to recover non-compensatory or
punitive damages from a defendant attorney even if such amounts would otherwise have been
recoverable from a wrongdoer but for the attorney's negligence.

13.      This Court knows firsthand what occurred here and directly observed the
circumstances of Seyfarth's alleged legal malpractice.  Any failure by Seyfarth to deal
appropriately with expert disclosures occurred during pretrial proceedings while this Court was
presiding over the Landlord Action and was the subject of extensive colloquy that has found its
way into the New Adversary Complaint.

14.     The New Adversary Complaint fails to state any actionable claims—the required element of causation has not been and cannot be satisfied in light of the Landlord Settlement. Seyfarth is not responsible for any damages claimed by Blue Dog, especially those based on an inapplicable statute.  This action should be dismissed with prejudice.

## II.     BACKGROUND

### A.     The Debtor's Main Bankruptcy Case

15.     On March 24, 2015, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code captioned *In re Blue Dog at 399 Inc.*, Case No. 15-10694 (Bankr. S.D.N.Y.) (the "Main Case") [Main Case Dkt. No. 1].  The Debtor's bankruptcy case was commenced in an effort to remedy the consequences of state court eviction proceedings and restore the Debtor to possession of commercial premises located on the ground floor at 399 Park Avenue (the "Premises") under terms of a lease between the Debtor and the Landlord dated January 1, 2012 (the "Lease").

### B.     The Landlord Action

16.     On April 17, 2015, the Debtor filed a complaint against the Landlord (the "Landlord Complaint"), commencing the Landlord Action [Landlord Action Dkt. No. 1], which sought, among other things, to restore the Debtor to possession of the Premises.  The Landlord moved to dismiss the Landlord Complaint on June 19, 2015 [Landlord Action Dkt. No. 6]. Court-ordered mediation before the Honorable James L. Garrity was unsuccessful, and, after a hearing [Landlord Action Dkt. No. 11], the Court issued an opinion and order denying the Landlord's motion to dismiss [Landlord Action Dkt. Nos. 12, 16].

17.     On January 11, 2016, the Landlord filed an answer to the Landlord Complaint [Landlord Action Dkt. No. 17] that largely denied the Debtor's allegations and asserted various affirmative defenses.

18.     On February 1, 2016, the Court entered a joint pretrial scheduling order setting

May 26, 2016 as the deadline to complete discovery [Landlord Action Dkt. No. 19].  The order

was subsequently amended multiple times to extend the close of all discovery to August 10,

2016.  *See* Transcript of Hearing at 8:13-14, 9:11-16, *Blue Dog at 399, Inc. v. BP 399 Park

*Avenue LLC*, No. 15-01097 (Bankr. S.D.N.Y. July 19, 2016) (the "July 19 Hearing Transcript"),

attached as **Exhibit D**.

19.     On May 18, 2016, the Debtor filed an application (the "Retention Application") to

retain the Firm as special litigation counsel to prosecute the Landlord Action [Main Case Dkt.

No. 60], which was approved on June 13, 2016 [Main Case Dkt. No. 67].

20.     On September 30, 2016, the Landlord filed a motion for summary judgment in the

Landlord Action [Landlord Action Dkt. No. 35].  During a December 15, 2016 hearing on this

motion, the Court excluded the Debtor's proposed expert witnesses as untimely and denied the

Landlord's summary judgment motion.  Transcript of Hearing, *Blue Dog at 399, Inc. v. BP 399*

*Park Avenue, LLC*, No. 15-01097 (Bankr. S.D.N.Y. Dec. 15, 2016), attached as **Exhibit E**.

21.     On January 25, 2017, two days before trial was to commence, counsel to the

Landlord suggested that the Landlord Action be referred back for further mediation and that the

trial be adjourned [Landlord Action Dkt. No. 57].  The mediation sessions were held, again

before Judge Garrity, on February 8 and 10, 2017, and Seyfarth's representatives were present at

both sessions, as was Ms. Slavutsky on behalf of the Debtor.  *See Declaration of Adrian*

*Zuckerman in Support of Motion for Leave to Withdraw as Counsel* (the "Zuckerman

Declaration") [Landlord Action Dkt. No. 65-1], attached as **Exhibit F**, at ¶¶ 3, 14.  During the

mediation, Seyfarth obtained further concessions from the Landlord that could not have been

obtained through a trial—leading to what seemed to be an agreement by all parties to the terms

7

of a new lease for the Premises (the "<u>New Lease</u>").  (Zuckerman Declaration ¶ 8).  Among other things, those terms included the following:

- The New Lease would take effect immediately, with all time periods (the term of the Lease, period of free rent, etc.) tolled until the Debtor opened for business and calculated on the basis of the time remaining on the original Lease on February 28, 2015.  In other words, the Debtor would have the same amount of time to operate under the New Lease as it would have had had it been able to open on February 28, 2015, allowing it time to recover any lost revenue incurred as a result of not being able to open on February 28, 2015.

- The Debtor would be given access to the Premises before opening, rent free, in order to prepare for opening. The original Lease had no similar provision allowing the Debtor to occupy the Premises in preparation for opening without paying rent.

- The Debtor's first year in operation would be rent free in order to further compensate Debtor for any losses incurred during the period since February 28, 2015 that it was unable to operate its business.  The original Lease had no such rent concession, which is worth in excess of $160,000.

- The Debtor's option to renew the original Lease for five years at market rent, provided for in the original Lease, would be replaced in the New Lease with a ten-year extension of the lease term, at fixed incremental rent increases of 2% a year that would not require increasing the rent to market rates at any point.  In effect, this transformed the Debtor's terms from a seven-year lease with a five-year option to renew at market to a 17-year lease, with below-market rent increases for the entire life of the New Lease.

- During the remaining period of the original Lease (the first approximately seven years of the New Lease), the Debtor would have the right to assign the New Lease, or sublet the Premises and retain all payments associated with the assignment or sublet.  Under the original Lease, any assignment or sublet would require that the revenue be shared with Landlord or, at Landlord's option, Landlord would be permitted to recapture the Lease and exclude the Debtor entirely from the transaction.

- The parties would agree in advance on a list of legal requirements that the Debtor would have to meet in order for the Debtor to open for business under the New Lease.  All lease requirements for opening provided for in the original Lease, but not provided for on the list, would be waived.  In addition, under the New Lease, any failure to meet the agreed upon requirements would not be treated as a lease default and any dispute would be resolved by this Court.  Under the original Lease, the Debtor was not only required to comply with a host of unspecified legal requirements in connection with opening, but also had to comply with a large number of technical requirements that were not required by law.  Under the original Lease, failure to comply with any of these requirements could result in the Debtor being held in default and, ultimately, having the original Lease terminated.

22.     However, the settlement brokered by Judge Garrity, and to which Ms. Slavutsky

expressly agreed by allocution, was never brought before the Court for approval.  Following the

February 2017 mediation, Ms. Slavutsky attempted to alter the terms of the settlement, contrary

to Seyfarth's advice.  In addition, Ms. Slavutsky continued to accrue legal fees payable to

Seyfarth.  Due to these disputes, the relationship deteriorated between Seyfarth and its client, the

Debtor.  (Zuckerman Declaration ¶¶ 17-19).  As a result, on April 14, 2017, Seyfarth filed a

motion for leave to withdraw as counsel to the Debtor (the "Withdrawal Motion") [Landlord

Action Dkt. No. 62-1], which was granted on July 5, 2017 [Landlord Action Dkt. No. 76].

23.     More than a year after Seyfarth's withdrawal as counsel for Blue Dog in the

Landlord Action, the Debtor filed a motion for entry of an order approving a settlement

agreement reached between the Debtor and the Landlord (the "Settlement Agreement") [Main

Case Dkt. No. 169], which was vastly inferior to the settlement terms negotiated by Seyfarth.

Under the terms of the Settlement Agreement, the Debtor assumed the Lease, which was then

deemed to be immediately terminated and of no further force and effect, and the Premises were

surrendered by the Debtor to the Landlord.  [Main Case Dkt. No. 169-2, ¶ 2(a)].  The Settlement

Agreement provided for a $300,000 payment to the Debtor, but the Landlord would be entitled to

retain the approximately $160,000 in Blue Dog funds it held in escrow, resulting in a net cash

benefit to the Debtor of only $140,000.  *Id.* at ¶ 2(b).  Additionally, Blue Dog surrendered all of

its improvements to the demised Premises which, according to the Amended Complaint, cost

Blue Dog in excess of $1.6 million.  *Id.* at ¶ 2(a); Amended Complaint at ¶ 96.  This Court issued

an order approving the Settlement Agreement on January 24, 2019 [Main Case Dkt. No. 184].

C.      **The Adversary Proceeding Against Seyfarth**

24.      On June 19, 2018, the Debtor filed the original complaint in the First Action.
Pursuant to a briefing schedule agreed to among the parties, Seyfarth filed a motion to dismiss
that complaint on August 8, 2018 [First Action Dkt. No. 7] (the "Initial Motion to Dismiss").

25.      After reviewing the Initial Motion to Dismiss, Blue Dog filed the Amended
Complaint on August 30, 2018.  [First Action Dkt. No. 12].  The Amended Complaint included a
claim for declaratory relief that Seyfarth acted negligently, a claim for negligence/legal
malpractice, and a claim for statutory treble damages under Section 487 of the New York
Judiciary law ("Section 487").

26.      On September 28, 2018, Seyfarth filed a motion to dismiss the Amended
Complaint [First Action Dkt. No. 16] (the "Second Motion to Dismiss"), on the grounds that the
Court lacked subject matter jurisdiction as there was no live case or controversy and the
Amended Complaint failed to state any claims on which relief could be granted.

27.      During the hearing held on November 20, 2018, this Court dismissed Blue Dog's
Section 487 claim with prejudice.[1]  November 20 Hearing Transcript, attached as **Exhibit C**, at
33:17-23.  This Court dismissed Blue Dog's negligence/legal malpractice claim without
prejudice but made clear that the claim suffered from a causation issue:

> There is no hint in your complaint that -- of any suggestion that you would
> have turned down that mediation or refused that mediation or insisted on
> going to trial, despite the landlord's offer, if only Seyfarth hadn't lost your
> expert witnesses.   And in the absence of that there is zero causal
> connection that's pleaded between the expert witness point and the delays
> that have resulted from the world's longest mediation that seems to be
> going on now.

---

[1] Blue Dog voluntarily withdrew its claim for declaratory judgment prior to the hearing.

* * *

> But you haven't shown any delays that are attributable to what you're
> really mainly complaining about, which is the failure to designate experts
> in a timely way.  You have not shown that that caused delays, you have
> not shown that that had any connection to the long mediation that has
> happened, and as I said, that would require a connection that somehow
> would have suggested that either you would have gone straight to trial or
> that the mediation somehow would be easier and over with.  There's no
> such allegation.

*Id.* at 16:8-15, 16:24-17:8, attached as **Exhibit C**.  This Court's rulings were memorialized in the

Dismissal Order dated December 6, 2018.  *See* Dismissal Order, attached as **Exhibit A**.

28.     Blue Dog initiated this adversary proceeding by filing the New Adversary

Complaint on February 26, 2019 [Dkt. No. 1], which differs only marginally from the dismissed

Amended Complaint in two respects.  First, between the time of the Dismissal Order and

commencement of this action, Blue Dog and the Landlord entered into the Settlement

Agreement.  Second, the New Adversary Complaint includes opaque and conclusory allegations

regarding Blue Dog's calculation of damages that supposedly stemmed from Seyfarth's

negligence.  Notwithstanding these new allegations, there is still "zero causal connection"

between Seyfarth's and any actionable harm to Blue Dog.

## III.     ARGUMENT

### A.     The Debtor Fails to State a Claim for Legal Malpractice

#### 1.     Legal Standard and Judicial Notice

29.     To survive a motion to dismiss pursuant to Rule 12(b)(6), which is applicable to

these proceedings under Bankruptcy Rule 7012, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to

11

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, it need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action . . . ." *Id.* at 678, 681 (citing *Twombly*, 550 U.S. at 555).

30.      To decide a motion to dismiss, the court "may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted). The Court may also consider "matters of which judicial notice may be taken . . . ." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Courts in the Second Circuit routinely take judicial notice of facts that are outside the complaint and not subject to reasonable dispute under both case law and Federal Rule of Evidence 201. *See, e.g.*, *Flaxer v. Gifford (In re Lehr Constr. Corp.)*, 528 B.R. 598, 606 (Bankr. S.D.N.Y. 2015), *aff'd*, 551 B.R. 732 (S.D.N.Y. 2016), *aff'd*, 666 Fed. Appx. 66 (2d Cir. 2016). Courts in the Second Circuit and elsewhere have also routinely taken notice in an adversary proceeding of a debtor's main bankruptcy case and other related adversary proceedings. *See, e.g.*, *Levine v. Egidi*, No. 93 C 188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) ("In effect, the bankruptcy judge took judicial notice of his own docket—a permissible undertaking."); *Katzenstein v. VIII SV5556 Lender, LLC (In re Saint Vincent's Catholic Med. Ctrs. of N.Y.)*, 440 B.R. 587, 599 (Bankr. S.D.N.Y. 2010) (taking judicial notice of the docket in the underlying bankruptcy case); *In re Campbell*, 500 B.R. 56, 59 n.7 (Bankr. D.N.M. 2013) (taking judicial notice of the entire file in

the case for sake of completeness as a bankruptcy court has the inherent authority to take judicial

notice of entries on its own docket).

31.     Here, the Court has presided over the Landlord Action in which the alleged

malpractice occurred, as well as the underlying main bankruptcy case, and has first-hand

knowledge regarding the circumstances giving rise to the Settlement Agreement and many of the

Debtor's allegations.  The Court is thus well-positioned to evaluate the plausibility and

sufficiency of the Debtor's claims against Seyfarth in this adversary proceeding and to find that

Blue Dog has failed to state a claim for legal malpractice.

> **2.      The Debtor Fails to Allege That Seyfarth's Actions Proximately
> Caused Its Damages**

32.     In order to state a claim for legal malpractice under New York law, a plaintiff

must "allege that the attorney failed to exercise the ordinary reasonable skill and knowledge

commonly possessed by a member of the legal profession, and that the attorney's breach of this

duty proximately caused the plaintiff to sustain actual and ascertainable damages."  *See Buckskin*

*Realty Inc. v. Greenberg (In re Buckskin Realty Inc.)*, Adv. No. 15-01203, 2017 WL 1283458,

at *3 (Bankr. E.D.N.Y. Apr. 5, 2017) (citing *Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer*,

867 N.E.2d 385, 387 (N.Y. 2007)).  The causation requirement, "a high bar to attorney

malpractice liability, seeks to insure a tight causal relationship exists between the claimed

injuries and the alleged malpractice, and demands a nexus between loss and injury."  *Flutie Bros.*

*LLC v. Hayes*, No. 04 CIV 4187, 2006 WL 1379594, at *5 (S.D.N.Y. May 18, 2006) (citation

and internal quotation marks omitted).  The "but for" prong requires that the trier of fact in effect

"decide a lawsuit within a lawsuit, because it demands a hypothetical re-examination of the

events at issue absent the alleged malpractice."  *Id.* (citation omitted).  *See also Weil, Gotshal &*

*Manges, LLP v. Fashion Boutique of Short Hills, Inc.*, 780 N.Y.S.2d 593, 596 (App. Div. 2004)

("[T]o establish the elements of proximate cause and actual damages, where the injury is the value of the claim lost, the client must meet a 'case within the case' requirement, demonstrating that 'but for' the attorney's conduct the client would have prevailed in the underlying matter or would not have sustained any ascertainable damages . . . .") (citations omitted).

33.     The allegations made by Blue Dog describe several actions by Seyfarth that the Debtor claims amount to negligence, including the fact that Seyfarth presumably already had an expert report from 2015 that it did not effectively use in the Landlord Action (New Adversary Complaint ¶¶ 15-16, 37-38)[2] and Seyfarth's alleged failure to disclose its experts in a timely manner (New Adversary Complaint ¶¶ 57, 70, 74).[3]  The Debtor claims to have been damaged by the delay in resolving its main bankruptcy case, the resulting costs of administration, and the handicap in its negotiations with the Landlord (New Adversary Complaint ¶¶ 88-94).  Putting aside the speculative and uncertain nature of many of these asserted damages, the rhetoric used cannot obscure the Debtor's inability to show that any such damages were proximately caused by Seyfarth's alleged negligence.

34.     The Debtor's allegations are deficient on their face and defy logic.  Just like the Amended Complaint dismissed by this Court in November 2018, the renewed effort to state a claim still does not "show[] any delays that are attributable to what [the Debtor is] really mainly

---

[2] This open "report" was not about damages or anything else at issue in the New Adversary Complaint – it was a "report" as to why Blue Dog was ready in 2015 to open for business.  Seyfarth resolved these issues by a motion *in limine* that effectively precluded Landlord from raising these issues at trial.  *See* July 19 Hearing Transcript, attached as **Exhibit D**, at 21:1-13.

[3] The New Adversary Complaint still contains allegations regarding the manner in which Seyfarth sought to withdraw from the case (New Adversary Complaint ¶¶ 81-87).  Assuming solely for purposes of this motion that Seyfarth's withdrawal as counsel—to which the Debtor consented—could ever amount to legal malpractice (a point that Seyfarth vigorously disputes), the Debtor fails to show how Seyfarth's withdrawal could have had any impact on or reduced the chances of success in the Landlord Action.  Such allegations do not support the Debtor's negligence claim in the New Adversary Complaint in any way.

ny-1564987

complaining about, which is the failure to designate experts in a timely way." November 20

Hearing Transcript, attached as **Exhibit C**, at 16:24-17:1. Nor has the Debtor connected the

exclusion of the expert testimony to any other provable harm in relation to the Landlord Action.

35. The New Adversary Complaint also argues that the Landlord Settlement is

superior to the proposed settlement negotiated by Seyfarth (New Adversary Complaint ¶ 91).

But such assertions cannot withstand scrutiny. Had the Debtor accepted the proposed settlement

negotiated by Seyfarth in February 2017, Blue Dog would have been able to operate a profitable

business (by its own accounts) at the Premises under a New Lease with the Landlord, obtained

more than $160,000 in free rent, received more favorable lease terms that would not have been

available had it prevailed in litigation, and avoided years of protracted litigation/mediation with

the Landlord. The Debtor, through its principal, Ms. Slavutsky, for reasons of her own,

repudiated this proposed settlement. Under the Settlement Agreement, however, the Debtor gave

up the continued operation of its business at the Premises and received a net cash settlement of

only $140,000 ($300,000 less the $160,000 in Blue Dog funds held by the Landlord in escrow

and forfeited under the settlement)—a nominal amount compared to the Debtor's supposed lost

profits of $52,231,650—whereas the Landlord obtained the exact outcome it pursued from the

beginning: cancellation and termination of the Lease. Thus, under any fair reading of the

Landlord Settlement, the Landlord won, but it won for reasons that had nothing to do with

Seyfarth.

36. The Debtor does not even attempt to explain how the $52,231,650 in alleged

damages (before trebling) can possibly result solely from Seyfarth's purported negligence.

Indeed, that amount is more than ten times greater than the actual damages asserted in the

excluded expert report that forms the basis of the Debtor's negligence claim. It appears,

however, that the Debtor may be relying on the very same lost profits analysis prepared by Ms. Slavutsky that Seyfarth intended to present at trial against the Landlord to establish Debtor's damages claim in the absence of the expert report. New Adversary Complaint at ¶ 78-79. Blue Dog thus concedes that it suffered no harm from the exclusion of an expert report on which it did not then and does not now rely. The absurdity of such an approach here serves to highlight that the Debtor's made up claims against Seyfarth are due to be rejected.

37.    The Debtor's conclusory allegations regarding causation are not plausible. The exclusion of the Debtor's expert testimony had no effect on the Landlord's summary judgment motion, which the Landlord lost, and it cannot be shown what, if any, effect the exclusion of certain expert testimony had on the Debtor's final resolution of the Landlord Action.

### 3.    Seyfarth Is Not Estopped from Contesting the Merits of the Landlord Action

38.    Perhaps implicitly acknowledging its inability to show proximate causation, the Debtor appears to suggest that Seyfarth is estopped from disputing the merits of the Landlord Action in defending itself against the legal malpractice claim because it "repeatedly endorsed every element of the claims against the Landlord in the Landlord Action, including lease validity, liability, damages and treble damages calculated thereon. (New Adversary Complaint ¶¶ 95-100). This argument is unavailing and wholly unsupported by the case law.

39.    Courts in New York and elsewhere have held that there can be no judicial estoppel against a law firm defending a malpractice action if the firm was not a party to the underlying dispute but was merely counsel to a party. *See, e.g.*, *Encyclopaedia Britannica, Inc. v. Dickstein Shapiro*, LLP, 905 F. Supp. 2d 150, 154-55 (D.D.C. 2012); *see also Shapiro v. Butler,* 709 N.Y.S.2d 687, 690 (App. Div. 2000) (holding that judicial estoppel did not bar a law firm from arguing in a legal malpractice action that their former clients would not have prevailed

in defending a federal civil action for illegal interception and disclosure of telephone conversations because the attorney and law firm were not parties to the federal action and the attorney's position in the underlying action was not adopted by the court); *Joyce v. Thompson Wigdor & Gilly LLP*, Case No. 06-CIV-15315, 2008 WL 2329227, at *6 (S.D.N.Y. June 3, 2008) (holding that the doctrine of judicial estoppel did not apply to bar a defendant law firm's challenge to the legal sufficiency of plaintiff's underlying claim because, among other things, the law firm was not a party to the underlying litigation).  Courts are unwilling to apply judicial estoppel in these circumstances because they recognize that:

> [t]he logic of judicial estoppel unravels in the malpractice context.  An entity acting as a lawyer to a client is fundamentally differently situated than an entity acting in its own interest in subsequent malpractice litigation.  The positions a law firm takes in those two contexts are necessarily in significant tension—as a lawyer representing a client, a firm defends the strengths of the client's position while in malpractice litigation it seeks to demonstrate the opposite, *i.e.*, that the client would have lost. A lawyer cannot be faulted for this inherent inconsistency, and where a party cannot be faulted, applying judicial estoppel is often inappropriate.

*Encyclopaedia Britannica, Inc.*, 905 F. Supp. 2d at 156.

40.    Plaintiff also seems to suggest that Seyfarth is estopped from arguing that Blue Dog might not have prevailed in the Landlord Action for reasons unrelated to proof of damages, because this Court might have found that the Lease was validly terminated in advance of Blue Dog's bankruptcy.  *See* New Adversary Complaint at ¶ 91 ("Debtor's new counsel were able to negotiate a settlement in the Landlord Action providing, *inter alia*, . . .  the assumption of Debtor's lease and waiver of the Landlord's administrative claim for cure payments, thus validating that the lease was in full force and effect as of the petition date.").  Such a contention is utterly without merit.  As an initial matter, the Settlement Agreement itself makes clear that neither party was a prevailing party.  Settlement Agreement at ¶ 8.  Moreover, a negotiated (and

plainly self-serving) settlement term agreed to in the context of a larger settlement agreement is not the equivalent of a judicial determination of a disputed legal issue, much less one that could bind a non-party to that action.

41.    In short, Seyfarth is not estopped from being able to defend itself and contest the merits of the underlying litigation because it was not a party to the Landlord Action.  *See Shapiro*, 709 N.Y.S.2d at 690 (estoppel did not apply to non-party to the underlying action).  The estoppel arguments are misplaced and constitute inadequate pleading of an inapplicable legal theory.

**B.    The Treble Damages Provision of Section 853 of the New York Real Property Actions and Proceedings Law Is Inapplicable to This Case**

42.    Under Section 853, a person is entitled to recover treble damages in an action against the wrongdoer upon a showing that he or she was "disseized, ejected, or put out of real property in a forcible or unlawful manner, or, after he has been put out, is held and kept out by force or by putting him in fear of personal violence or by unlawful means…."  N.Y. Real Prop. Acts. Law § 853.  The purpose of treble damages under this provision is to "to discourage resort to wrongful evictions by landlords and to punish severely those who engage in such conduct," and it stemmed from "the Legislature's desire to protect a tenant from unlawful eviction and to punish certain violators."  *Rental & Mgmt. Assocs., Inc. v. Hartford Ins. Co.*, 614 N.Y.S.2d 513, 514 (App. Div. 1994) (citation omitted).  Section 853 treble damages are not mandatory but are rather a matter left to the trial court's discretion.  *See Hood v. Koziej*, 37 N.Y.S.3d 68, 70-71 (App. Div. 2016); *Hartford*, 614 N.Y.S.2d at 514; *Lyke v. Anderson*, 541 N.Y.S.2d 817, 823-24 (App. Div. 1989).

43.    Here, the Debtor, lawfully evicted by the New York Sheriff after several applications to the New York State Supreme Court to stay the eviction, cannot even attempt to

make any allegations with respect to the predicate acts of force, violence or unlawful entry of the Premises.  Instead, the Debtor simply *assumes* that it is automatically entitled to recover treble damages from the Landlord under Section 853 (*see* New Adversary Complaint ¶ 93).

44.    Nor has the Debtor cited to any case law to support the award of treble damages against a third party that is not a wrongdoer in the underlying real property dispute.  Indeed, New York law holds to the contrary:  a defendant-attorney in a legal malpractice suit is not liable to a plaintiff for the loss of any penal damages from the underlying action.[4]  *See, e.g., Cappetta v. Lippman*, 913 F. Supp. 302, 306 (S.D.N.Y. 1996) (holding no derivative punitive damages because the purpose of such damages is to punish the defendant and not to compensate the plaintiffs, thus it is "it is illogical to hold Defendant [in the legal malpractice action] liable for those damages.") (applying New York law); *Braun v. Rosenblum*, 811 N.Y.S.2d 683, 684 (App. Div. 2006) ("Although generally a defendant attorney is liable to the plaintiff for the claim he would have recovered in the dismissed suit ... punitive damages are not included in this general claim theory.  Thus, the plaintiffs may not recover in the instant legal malpractice action for any punitive damages that were 'lost' when the underlying personal injury action was dismissed.") (internal citation omitted); *Summerville v. Lipsig*, 704 N.Y.S.2d 598, 599 (App. Div. 2000) ("It would be 'illogical' to hold the law firm liable for causing the loss of a claim for punitive damages which are meant to punish the wrongdoer and deter future similar conduct. Recognition of plaintiff's claim would not further the purpose of punitive damages to punish and deter.") (internal citations omitted).

---

[4] Treble damages under Section 853 are penal in nature, just like punitive damages.  *See Hartford*, 614 N.Y.S.2d at 514 (treble damages under Section 853 similar to punitive damages); *Lyke*, 541 N.Y.S.2d at 823 ("multiple damage statutes are penal in nature and are to be strictly construed.").

45.     The award of treble damages under Section 853 is left to the court's discretion and is far from an entitlement.  No New York court has ever applied trebling under this provision within a legal malpractice action.  This Court should decline Blue Dog's invitation to be the first.

## IV.    CONCLUSION

Plaintiff's third pleading, designed to extract a windfall from its former counsel still lacks the essential linkage between the alleged cause and the claimed damages.  For the reasons stated in this motion, the Defendants respectfully request that the Court dismiss the New Adversary Complaint in its entirety with prejudice.

Dated: March 29, 2019
     New York, New York

Respectfully submitted,

MORRISON & FOERSTER LLP

/s/ James M. Peck

James M. Peck
Grant J. Esposito
Erica J. Richards
250 West 55th Street
New York, New York 10019-9601
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Email:  JPeck@mofo.com
     GEsposito@mofo.com
     ERichards@mofo.com

*Counsel to the Defendants*

ny-1564987