Scott Michael Hare, Esquire
Special Counsel to Blue Dog at 399 Inc.
437 Grant Street – Suite 1806
Pittsburgh, PA 15219
(412) 338-8632
scott@scottlawpgh.com


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x

In re                                                            Chapter 11

BLUE DOG AT 399 INC.,                                            Case No. 15-10694-mew


                              Debtor.
-----------------------------------------------------x
BLUE DOG AT 399 INC.,


                              Plaintiff,                         Adv. Pro. No. 19-1029-mew


           -against-


SEYFARTH SHAW, LLP and
RALPH BERMAN,


                              Defendants.
-----------------------------------------------------x

**PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS**

# TABLE OF CONTENTS

I.    **Introduction** ................................................................................................ 1

II.   **Facts Alleged in the Complaint** ............................................................. 1

III.  **Argument** ..................................................................................................... 9

    A.    Legal Standard Governing the Motion to Dismiss ................................. 9

    B.    BD has Stated a Claim for Malpractice ................................................. 10

    C.    BD has Plausibly Alleged Proximate Causation ................................... 12

    D.    Defendants are Improperly Seeking to Relitigate the First Case .......... 16

    E.    The Court Should Disregard Defendants' Premature Merits Arguments ........... 19

        1.    Defendants' Misbegotten Estoppel Argument ........................... 19

        2.    Defendants' Premature Damages Argument ............................. 20

IV.   **Conclusion** ................................................................................................ 22

## I.   *Introduction*

Plaintiff Blue Dog at 399 Inc. ("BD" or "Debtor") filed a one-count Complaint against Defendants Seyfarth Shaw, LLP and Ralph Berman stating a claim for negligence/legal malpractice. Adv. Doc. 1. The Defendants have moved this Court to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the argument that BD failed to state a claim on which relief may be granted. Adv. Doc. No. 5. BD has sufficiently alleged facts which, taken as true, plausibly state a claim for relief, and the Motion to Dismiss should be denied.

## II.   *Facts Alleged in the Complaint*

In support of its claim for negligence, BD's Complaint alleges, *inter alia*, as follows.[1] Defendants Seyfarth Shaw, LLP and Ralph Berman represented BD as special litigation counsel before this Court in an adversary proceeding (now settled) entitled *Blue Dog at 399 Inc. v. BP 399 Park Avenue LLC, Adv. Pro No. 15-01097-mew* (the "Landlord Action"). Complaint ¶ 2.

Blue Dog was a tenant in a building at 399 Park Avenue, New York, NY, pursuant to a lease with BP 399 Park Avenue LLC (the "Landlord") dated January 1, 2012 (the "Lease"). Complaint ¶ 12. After execution of the Lease, a dispute arose between Blue Dog and the Landlord regarding various Lease terms, as a result of which the Landlord declared that Blue Dog was in default of the Lease and purported to cancel and terminate the Lease. Blue Dog denied that it was in material breach, denied that it failed to cure any alleged breach, and denied that the Landlord was entitled to declare a default or cancel and terminate the Lease. Complaint ¶ 13. In light of the

---

[1]   The allegations of Plaintiffs' Complaint are accepted as true for purposes of Defendants' Motion to Dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 666, 129 S. Ct. 1937, 1943 (2009)(court must examine whether plaintiff "plead factual matter that, if taken as true, states a claim"); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984)("At this stage of the litigation, we must accept petitioner's allegations as true.").

parties' dispute, Blue Dog filed a Verified Complaint against Landlord on September 11, 2012 in the Supreme Court of the State of New York. Complaint ¶ 14.

Beginning on or around March 20, 2015, Blue Dog consulted with counsel, including Seyfarth, regarding a possible bankruptcy filing. Seyfarth immediately became and remained actively and intimately involved in the bankruptcy case and the eventual Landlord Action from the outset of both. Complaint ¶ 18. BD filed this Bankruptcy on March 24, 2015. Complaint ¶ 19.

Commencing as early as March 30, 2015, Defendants designed and directed the prosecution of the Landlord Action, and among other tasks identified and determined the claims to be raised therein, drafted the complaint, designed and directed all discovery matters, designed and drafted case management and discovery scheduling orders, and identified and cultivated expert witnesses to support BD's claims. Complaint ¶¶ 20, 22-47, *passim*. More than one year later, on May 18, 2016, BD's bankruptcy counsel filed an Application of the Debtor for Entry of an Order Authorizing Employment and Compensation of Seyfarth Shaw, LLP as Special Litigation Counsel for the Debtor in the Landlord Action. Complaint ¶ 50.[2]

Pursuant to the Amended Joint Pretrial Scheduling Order dated April 8, 2016 that Seyfarth helped to draft, expert reports were due the following day, May 19, 2016. Complaint ¶ 52. Seyfarth did not seek any extension to this deadline. Instead, Seyfarth neglected this deadline and neglected to serve any expert reports. *Id.* Pursuant to the same Amended Joint Pretrial Scheduling Order, the deadline for expert depositions was June 2, 2016. Seyfarth did not seek any extension to this deadline either, but instead ignored this deadline as well and neglected to schedule any expert depositions. Complaint ¶ 53.

---

[2]    This Court approved the Seyfarth retention application by Order dated June 13, 2016. Complaint ¶ 54.

By letter dated July 15, 2016, Seyfarth asked this Court to schedule a telephone conference at its earliest convenience "to address the refusal" of the Landlord "to abide by its commitments and produce necessary discovery." Seyfarth specifically objected to the Landlord's "refusal to produce witnesses, its non-cooperation and other delay tactics," which reportedly precluded Blue Dog from completing the depositions of fact witnesses. As a result of these discovery delays, Seyfarth requested that the Court extend the deadline for discovery and pretrial submissions. In passing, Seyfarth also requested "a short additional time for expert discovery," without mentioning that it already missed the deadline to serve expert reports two months earlier. Complaint ¶ 55.

As requested in the July 15, 2016 letter, the Court held a telephonic hearing on the discovery dispute on July 19, 2016. *See* Hearing Transcript [Docket No. 28 in the Landlord Action]. During the hearing, Berman requested "an extra couple of weeks to try to get these [depositions] done so that we can do our expert reports and get this thing ready for trial." Hearing Transcript, p.5, lines 10-12. In response, counsel for the Landlord argued, *inter alia*, that the discovery deadline had already closed, that weeks had passed during which he heard nothing from Berman, and that in his view, the burden fell upon Seyfarth to move the Court to extend (*i.e.*, reopen) discovery, which he would not oppose. *See generally* Hearing Transcript, pp. 6-8. Complaint ¶ 56.

At Berman's and Seyfarth's request, the Court extended the lapsed deadline to complete discovery until August 10, extended the deadline for pretrial submissions to August 18, and unambiguously cautioned the parties "I won't make any other changes to the schedule. We will have our final pretrial on the 18th and we will then set a trial date. Okay?" Hearing Transcript, p.8. In response, Berman again raised the issue of expert reports, requesting "once we do finish with fact witnesses, there was a period of time for the exchanging of expert reports and expert depositions. I thought we could still accommodate that. ***That's a fairly important part of our case*** [emphasis added]." Hearing Transcript, p.9, lines 1-5. This Court summarily rejected

Berman's proffered rationale as "utter nonsense," admonishing that "***There's no reason why you can't get your experts done within the normal discovery schedule or why they have to wait until the fact witnesses are done. So you should have been working on that already*** [emphasis added]." Hearing Transcript, p.9, lines 11-14. Nonetheless, this Court granted the requested relief and extended expert discovery to August 10, warning once again "I'm not going to extend it any further." Hearing Transcript, p.9, lines 15-16. Berman acknowledged there would be no further extensions, agreeing "Very good, Your Honor." Hearing Transcript, p.9, line 17. Complaint ¶ 57.

By email dated August 8, 2016, Seyfarth attorney Adrian Zuckerman contacted BD to emphasize the importance of expert testimony, referencing a likely upcoming summary judgment motion and later trial: "***We are more likely than not going to need an affidavit from him to oppose any motion the landlord may make to pare down the claims and then need his testimony for the hearing***." (Emphasis added.) Complaint ¶ 58.

Yet again, Seyfarth allowed discovery to close without disclosing experts or serving a single expert report, despite its admission that expert reports are "a fairly important part of our case," and despite the Court's repeated admonition that such reports and depositions would be due by August 10 with no further extensions. Complaint ¶ 59. Worse, despite the passage of the final August 10 deadline, Seyfarth waited until August 11, 2016 before it even tried to locate a damages expert. Complaint ¶¶ 60-61.

After Seyfarth permitted discovery to close for a second time without producing any expert reports as to liability or damages, the Landlord moved for summary judgment on September 30, 2016 [Docket No. 35 in the Landlord Action], as Seyfarth anticipated it would. Complaint ¶ 64. On November 30, 2016, Seyfarth filed a response in opposition to the motion for summary judgment on behalf of BD [Docket No. 45 in the Landlord Action]. Attached to the response in

-4-

opposition, Seyfarth filed and served, for the first time, the declarations (without formal expert reports) of two expert opinion witnesses, Dean Stracuzza [Docket No. 45-3 in the Landlord Action] and Lamar Jermaine Russell [Docket No. 45-5 in the Landlord Action], both of which were dated that same day. Complaint ¶ 65.

Promptly thereafter, by letter dated December 2, 2016, counsel for the Landlord objected to the submission of expert declarations from two undisclosed opinion witnesses who were never previously identified as required by Fed. R. Civ. P. 26(a)(2)(A), and whose reports were due (on extension) by August 10, 2016, yet were never produced as required by Fed. R. Civ. P. 26(a)(2)(B). The Landlord objected that the "last-minute submission by the debtor of declarations by two previously undisclosed expert witnesses, without having ever (much less timely) provided the Landlord with required expert reports is patently unfair and violates this Court's deadlines for expert disclosures." For this reason, the Landlord requested a conference to consider a motion to strike, and further requested that Blue Dog "be barred from offering the Russell and Stracuzza declarations, and from presenting any other expert witness testimony whatsoever in this case." Complaint ¶ 66.

As requested by the Landlord, the Court held a hearing on the motion to strike on December 15, 2016. *See* Hearing Transcript [Docket No. 52 in the Landlord Action]. After reviewing the expert disclosure requirements in the Federal Rules and the Court's own scheduling orders, and the fact that Seyfarth failed to comply with those requirements, the Court asked Berman why it should not grant the motion to strike and exclude the proffered declarations. Berman was unable to articulate any colorable excuse for having neglected to identify his experts and having neglected to produce timely expert reports as required. Instead, he attempted to camouflage his neglect by reference to unrelated discovery proceedings. The Court quickly saw through this deflection, finding that he "just tried to hide" his experts, "proceeded in utter disregard

of the explicit requirements of the pretrial order," and attempted "to game the system." Complaint ¶ 69 (quoting at length from Hearing Transcript [Docket No. 52 in the Landlord Action]).[3]

As a result, by Order dated December 19, 2016 [Docket No. 51 in the Landlord Action], the Court struck the expert witness declarations filed by Seyfarth and barred BD from using those individuals as expert witnesses in connection with any motion, hearing or trial in the Landlord Action. The Court additionally scheduled the Landlord Action for trial on January 27, 2017, approximately one month later. Complaint ¶ 72.

On January 13, 2017, Seyfarth filed a Motion *in Limine* [Docket No. 53 in the Landlord Action] to preclude the Landlord from offering certain evidence at trial. On January 20, 2017, the Landlord filed its Response [Docket No. 55 in the Landlord Action], including its own request to strike new witnesses who had never been identified by Seyfarth until just days earlier. *See* Landlord's Response, pp. 32-35 [Docket No. 55 in the Landlord Action]. Specifically, the Landlord recited that on January 16, 2017, Seyfarth identified, for the first time, three new witnesses who were never before disclosed, followed by the identification of a fourth undisclosed new witness on January 17, 2017. The Landlord objected that the newly-disclosed witnesses were offered to provide expert testimony in violation of the Court's December 19, 2016 Order barring BD from calling expert witnesses at trial, a tactic the Landlord described as an "eve-of-trial … end-run around this Court's order." Complaint ¶ 73.

---

[3]    Although Seyfarth failed to disclose its damages expert and failed to serve any damages report, the draft expert report it obtained opined that BD suffered lost profits in the amount of $4.5 million for the three-year period from March 1, 2015 through February 28, 2018. (This partial figure represented only a small portion of BD's damages, however, because it failed to reflect lost profits through the entire ten-year term of the lease ending in 2022, or the five-year option period thereafter. Likewise, the report excluded any recognition of catering revenue, which BD advised would be a substantial share of the total revenue of the operation.) Nonetheless, in the Joint Pretrial Order (Proposed) and Revised Joint Pretrial Order (Proposed) later filed at Docket Nos. 54 and 60 in the Landlord Action, Seyfarth recited precisely this $4.5 million damage figure, albeit without the benefit of any supporting expert report or admissible testimony. Complaint ¶ 71.

The Court convened a hearing on the dueling motions *in limine* on January 25, 2017. *See* Hearing Transcript [Docket No. 61 in the Landlord Action]. During the hearing, the Court determined, as it had before, that Seyfarth failed to provide timely expert disclosures and would therefore be barred from offering any experts at trial. In so doing, the Court rejected Berman's effort to disguise the newly-disclosed witnesses as simple fact witnesses ("Well, if you're offering these witnesses to show a prevailing practice in the community or a prevailing practice of the Health Department, how is that not expert testimony? . . . The other alternative is that you're offering them to say that by -- that they have sufficient experience to enable them to testify as to how, on a prevailing basis, the Health Department or fire department viewed these issues and what the actual requirements and experience were and that, by its definition, is expert testimony. . . it's just expert testimony that you're unwilling to call expert testimony, and I'm not going to allow it. And if that leaves you with a difficulty of proof, that's your own fault, for not designating experts when you should have"). Complaint ¶ 74 (quoting at length from Hearing Transcript [Docket No. 61 in the Landlord Action]).

Prior to trial on January 27, 2017, the Court directed the parties to return to mediation, which initially occurred on February 8 and 10, 2017. Complaint ¶ 75. The Landlord stated at the outset of the mediation that there would be "no money on the table," and it offered only to allow BD, at some undetermined future date, to resume possession of the leasehold premises, with no payment of damages. Recognizing the impaired state of their case, in which they could not present expert testimony, and in an effort to avoid the exposure of their own negligence, Seyfarth encouraged BD to accept this vague zero-dollar offer. Complaint ¶ 76.[4]

---

[4]    Seyfarth and Berman have invited the Court to look outside the four corners of Plaintiff's Complaint and consider an April 2017 Declaration signed by Seyfarth attorney Adrian Zuckerman as support for their motion to dismiss the Complaint. Putting aside that the Declaration has not been tested by cross-examination and remains subject to reasonable dispute, and further putting

In the meantime, by email dated February 1, 2017, Berman transmitted a copy of the now-inadmissible damages report to BD and attempted to recruit its principal, Elizabeth Slavutsky, to substitute as a damages witness, suggesting "We should also discuss further preparation for trial in case the settlement is not successful. In the first instance, if you could make a chart, just like the one you made for lost profits, showing the actual numbers and actual profits for the same time period for the location you based your estimates on." Seeking to assuage her concerns regarding the Order barring BD from calling expert witnesses, Berman explained to Slavutsky that she would be her own "best expert" because she knew the details of BD's business operations and anticipated profits. At Berman's instruction, therefore, Slavutsky prepared a lost profits analysis that Seyfarth intended to present at trial to establish BD's damages claim, which she determined to be $1,708,300 for 2015, $3,749,750 for 2016, and $3,897,800 for 2017. Complaint ¶¶ 77-78.[5]

Rather than risking its entire claim at trial without the benefit of experts as to liability or damages, BD, now through its new counsel, reached a settlement in the Landlord Action providing, *inter alia*, for the payment to BD of $300,000 (well beyond the $0.00 that Seyfarth negotiated and encouraged BD to accept in settlement of its claims), together with the assumption of BD's lease and waiver of the Landlord's administrative claim for cure payments, thus validating that the lease was in full force and effect as of the petition date. Nonetheless, as a direct and

---

aside that much of its content violates the mediation privilege (*see* N.Y. C.P.L.R. § 4547 ("Evidence of any conduct or statement made during compromise negotiations shall also be inadmissible.")), the alleged facts described therein do not provide a basis for dismissal under Rule 12(b)(6), which presumes the truth of the facts alleged in the Complaint. Nonetheless, it is noteworthy that even Mr. Zuckerman acknowledges that the Landlord's best settlement offer included no payment of any cash and required BD to await the conclusion of other building renovations, at some unspecified date up to two years later (to-wit, the Spring of 2019), before it could even occupy the premises - all without monetary compensation.

[5]      Of course, as with the contemplated outside expert the Court already excluded, the newly-crafted Slavutsky damages opinion had never been disclosed and would have been similarly barred by the prior Order.

proximate result of Seyfarth's negligence in failing to present timely expert disclosures, and its resulting inability to mount a damage claim against the Landlord, BD suffered lost profits through lease-end (including the option period) of not less than $52,231,650, as measured by the damages opinion Seyfarth and Berman cultivated through BD's principal. Complaint ¶ 92.

### III.    *Argument*

### A.    Legal Standard Governing the Motion to Dismiss

The standard governing Defendants' motion to dismiss under Rule 12(b)(6) is well known to this Court:

> Rule 7012(b) of Federal Rules of Bankruptcy Procedure, which incorporates Federal Rule of Civil Procedure 12(b)(6), permits a bankruptcy court to dismiss an adversary proceeding if a complaint fails to state a claim upon which relief may be granted. *See* Fed. R. Bankr. P. 7012(b). In reviewing a motion to dismiss the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in the plaintiffs' favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *E.E.O.C. v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000). However, the factual allegations in a complaint must be supported by more than mere conclusory statements. *Twombly*, 550 U.S. at 555. The allegations must be sufficient "to raise a right to relief above the speculative level" and provide more than a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (*citing Twombly*, 550 U.S. at 556).

> "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Fed. R. Civ. P. 8(a) because it has merely "alleged" but not "show[n] ... that the pleader is entitled to relief." *Id.* at 679; *see also id.* at 682 (allegations in a complaint are rejected where there is an "obvious alternative explanation" for the conduct alleged that is more "likely") (internal quotation marks and citation omitted).

*Music Mix Mobile, LLC v. Newman (In re Stage Presence, Inc.)*, 555 B.R. 166, 172 (Bankr. S.D.N.Y. 2016)(Wiles, J.); *see also Nationstar Mortg. LLC v. Fein, Such & Crane LLP*, 2018 U.S. Dist. LEXIS

143068 at *5-6 (W.D.N.Y. Aug. 21, 2018)(recommending that the court deny defendants' motion

to dismiss complaint alleging legal malpractice); *aff'd*, 2018 U.S. Dist. LEXIS 156285, at *1

(W.D.N.Y. Sep. 13, 2018)(adopting Magistrate Report and Recommendation and denying motion

to dismiss). A "complaint 'does not need detailed factual allegations' to survive a Rule 12(b)(6)

motion to dismiss." *Spicer v. Pier Sixty LLC*, 2011 U.S. Dist. LEXIS 11959, at *9 (S.D.N.Y. Feb. 7,

2011), *quoting Ashcroft*, 129 S. Ct. at 1949.


**B.**    **BD has Stated a Claim for Malpractice**

BD has sufficiently pled facts that, taken as true, establish each element of a claim for legal

malpractice. The elements of a claim for legal malpractice in New York are as follows:

> To prevail on a claim of legal malpractice under New York law, a plaintiff must establish
> four elements: (1) an attorney-client relationship; (2) attorney negligence; (3) that is the
> proximate cause of a loss; and (4) actual damages. *Stonewell Corp. v. Conestoga Title Ins. Co.*,
> 678 F. Supp. 2d 203, 208-09 (S.D.N.Y. 2010); *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 118
> (2d Cir. 2005); *Estate of Re v. Kornstein Veisz & Wexler*, 958 F. Supp. 907, 920 (S.D.N.Y. 1997).

*Nationstar Mortg. LLC v. Fein, Such & Crane LLP, supra*, 2018 U.S. Dist. LEXIS 143068, at *7. BD has

adequately alleged sufficient facts, satisfying each element of its claim, to state a claim with facial

plausibility. *Iqbal*, 556 U.S. at 679.

(1)    Attorney-Client Relationship. BD alleged the existence of an attorney-client

relationship. *See generally* Complaint ¶¶ 2, 6, 17, 18-48, 49-51 (retention application), 81-87 (motion

for leave to withdraw as counsel).

(2)    Attorney Negligence. To plead negligence, BD must allege that the Defendants

"'failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member

of the legal profession.'" *McCoy v. Feinman*, 99 N.Y.2d 295, 301-2 (N.Y. 2002). BD alleged

Defendants' negligence in the form of multiple missed deadlines and the failure to produce timely

expert reports, which Defendants acknowledged were "a fairly important part" of BD's case

(Complaint ¶ 57) and were necessary "to oppose any [summary judgment] motion the landlord may make" and to establish BD's claims at trial (Complaint ¶ 58). *See* Complaint at ¶¶ 52-74, *passim*. Defendants do not dispute that the applicable standard of care for lawyers requires meeting, rather than neglecting, court-imposed deadlines. *See, e.g., Protostorm, LLC v. Antonelli, Terry, Stout & Kraus, LLP*, 2015 WL 3605143, 2015 U.S. Dist. LEXIS 73486 (E.D.N.Y. Jun. 5, 2015)(denying motion to set aside jury verdict for legal malpractice where lawyers missed deadlines); *Glamm v. Allen*, 57 N.Y.2d 87, 93 (N.Y. 1982)("the alleged malpractice occurred when attorney Reinhart failed to file on behalf of the plaintiff a notice of claim pursuant to section 50-e of the General Municipal Law."); *Gaskin v. Harris*, 950 N.Y.S.2d 751, 752 (N.Y. App. Div. 2012)(defendant failed, *inter alia*, to advise plaintiff of the deadline for filing a notice of claim); *Rizzo v. Parlatore*, 2017 N.Y. Misc. LEXIS 799 (N.Y. Sup. Ct. 2017)(denying motion to dismiss because plaintiff sufficiently alleged malpractice where lawyers failed, *inter alia*, to meet case deadlines).

(3)     <u>Proximate Cause of a Loss</u>. As explored at greater length below (pp. 12-16), BD alleged that it was proximately damaged by Defendants' negligence in missing expert witness deadlines in the Landlord Action, which resulted in orders barring BD from presenting "fairly important" expert testimony as to liability or damages. *See* Complaint ¶¶ 61 ("One issue in the litigation is the lost profits our client could have made had the café opened. . . *We need an expert* to review the client's data, and whatever other information you think relevant, and *give us an opinion as to the amount of the lost profits*"), 76, 88-90, 92.

(4)     <u>Actual Damages</u>. BD adequately pled damages, including foregone money damages that would have been proven in the underlying Landlord Action but-for the failure to disclose timely expert reports and testimony. *See* Complaint ¶¶ 71, 78-80, 88-90, 92-93.

C.    **BD has Plausibly Alleged Proximate Causation**

The Complaint satisfies the required facial plausibility because its well-pled allegations of fact, taken as true, allow this Court to draw a reasonable inference that Defendants are liable for malpractice.[6] Stated differently, Defendants do not provide any "obvious alternative explanation" unrelated to their own negligence that "more likely" explains BD's harm in finding itself unable to present expert proof in the Landlord Action. *Music Mix Mobile*, 555 B.R. at 172.

BD's satisfaction of the plausibility standard is readily illustrated by reference to the claims asserted by Defendants on BD's behalf in the Landlord Action. *See* Complaint ¶ 23 (the complaint drafted by Defendants in the Landlord Action asserted "claims for declaratory judgment, wrongful eviction, breach of lease and breach of the implied covenant of good faith and fair dealing" and sought "damages [and] treble damages" thereon.) As to each of these claims, as Mr. Berman correctly summarized, experts were a "fairly important part" of BD's case. *See* Complaint ¶ 57.

Consistent with Mr. Berman's acknowledgement, each of the claims pled by Defendants in the Landlord Action required expert testimony. By way of example, each substantive claim for relief required proof of damages. *See, e.g.*, *Flomenbaum v. N.Y. University*, 71 A.D.3d 80, 91 (N.Y. App. Div. 2009), *aff'd*, 14 N.Y.3d 901 (N.Y. 2010) ("The elements of a breach of contract claim are formation of a contract between the parties, performance by the plaintiff, the defendant's failure to perform, and resulting damage"); *Harris v. Seward Park*, 79 A.D.3d 425, 426, 913 N.Y.S.2d 161 (N.Y. App. Div. 2010) ("The elements of such a claim [for breach of contract] include the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages"); *Fasolino Foods v. Banca Nazionale Del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992) ("Under

---

[6]    Although "the plausibility standard is not akin to a probability requirement," and "probability" need not be established (*Iqbal*, 556 U.S. at 678), the facts of the Complaint establish, without speculation, the high probability of Defendants' negligence and resulting proximate damages to BD.

New York law, parties to an express contract are bound by an implied duty of good faith, 'but breach of that duty is merely a breach of the underlying contract.' *Geler v. National Westminster Bank USA*, 770 F.Supp. 210, 215 (S.D.N.Y. 1991) (citations omitted)"); N.Y. Real Prop. Acts. Law § 853 ("Action for forcible or unlawful entry or detainer; treble damages. If a person is disseized, ejected, or put out of real property in a forcible or unlawful manner, or, after he has been put out, is held and kept out by force or by putting him in fear of personal violence or by unlawful means, he is entitled to recover *treble damages* in an action therefor against the wrong-doer [italics added].")

To prevail on these claims, therefore, BD was required to produce admissible evidence of damages which, in the Landlord Action, rested on expert opinion testimony. Defendants acknowledged this need in their initial correspondence with the proposed damages expert: "We need an expert to review the client's data, and whatever other information you think relevant, and give us an opinion as to the amount of the lost profits." Complaint ¶ 61. After the Court barred BD from offering any expert testimony, Defendants sought to recruit BD's principal, Elizabeth Slavutsky, to pinch-hit, insisting that "she would be her own 'best expert' because she knew the details of BD's business operations and anticipated profits." This last-minute substitution would be no panacea, however, because like the outside expert opinion, any similar damages testimony from Ms. Slavustsky was both undisclosed and would necessarily constitute an opinion as to future damages that had not yet occurred. The loss of such testimony therefore plausibly caused harm to BD by foreclosing any recovery of damages at trial.

Likewise, given the nature of the claims in the Landlord Action, BD was required to present expert testimony to establish that it was eligible to occupy the premises and commence operations by the deadline. Indeed, the Stracuzza and Russell declarations stricken by the Court were specifically designed for this purpose. *See* Complaint ¶¶ 65-66, 69. Defendants later attempted an "an end around out of the expert exclusion order" by adding new purported fact witnesses that

were, "by its definition . . . expert testimony." Complaint ¶ 74. In likewise striking these new

proposed experts, this Court identified exactly the harm to BD resulting from Seyfarth's

negligence:

> THE COURT: Yeah, no, it seems to me that as I say, there's only two possibilities. Either that's just hey, this is what happened in my case, in which case I don't know that that really proves anything, or ***it's just expert testimony that you're unwilling to call expert testimony, and I'm not going to allow it. And if that leaves you with a difficulty of proof, that's your own fault, for not designating experts when you should have***.

Complaint ¶ 74 (quoting Hearing Transcript [Docket No. 61 in the Landlord Action], p.18, lines

10-17 (emphasis added)).

In a variation on this theme, Defendants also argue illogically that BD cannot prove any

claim in this case because it "settled the Landlord Action and avoided a determination on the

merits of its rights as a tenant." Motion to Dismiss at ¶ 5.[7] Expanding on the theory, Defendants

argue, without any citation to legal authority, that:

> Allegations that Blue Dog would have ultimately prevailed at trial but for the Court's refusal to admit an expert report are impossible to prove without actually holding a trial. That trial was eliminated as an option and will never be held because of the Landlord Settlement. As a result, the Debtor has an incurable causation problem and is unable to prove any actual harm resulting from anything that Seyfarth may have done or not done as counsel.

Motion to Dismiss at ¶ 6. The fallacy of Defendants' *non sequitur* is obvious: in every legal

malpractice action, the plaintiff is ultimately required to prove the "case within a case."[8] Whatever

---

[7]    BD notes the irony that Defendants moved to dismiss the first lawsuit on the basis that the Landlord Action remained pending, and now move to dismiss this action on the basis that the Landlord Action was settled and is no longer pending. BD notes the further irony that Defendants describe the Landlord's $300,000 settlement payment as *de minimis* (Motion to Dismiss at ¶ 5), while elsewhere praising their own alleged accomplishment in getting $160,000 in rent concessions, alongside $0.00 in settlement payments and a two-year delay in occupancy. *Id*. at ¶ 21.

[8]    Critically, in doing so, a malpractice plaintiff is not required to prove that the malpractice was the sole proximate cause of injury, merely that the negligence was "a proximate cause," and doing so is not subject to any heightened burden. *See Barnett v. Schwartz*, 47 A.D.3d 197, 204 (N.Y. App. Div. 2007) ("[we] hold that a plaintiff-client in a legal malpractice action need prove only

challenge that burden may present in any given lawsuit, it is an issue of proof at the appropriate

stage of the proceedings - it is not an issue of pleading. Indeed, it is commonplace that malpractice

lawsuits spring from underlying litigation that never reached trial as a result of the malpractice. *See*,

*e.g.*, *Nationstar Mortg. LLC v. Fein, Such & Crane LLP*, *supra* (malpractice claim based on negligence in

prosecuting underlying action, resulting in its dismissal before trial); *Cappetta v. Lippman*, 913 F.

Supp. 302, 306 (S.D.N.Y. 1996) (cited by Defendants)(finding liability, and awarding damages, in

malpractice action arising from negligence in prosecuting the underlying lawsuit, resulting in its

dismissal before trial).

     The inability of BD to present any experts and the resulting inability to prove the elements

of its claims, including its damage claim, plausibly states a claim for legal malpractice by these

Defendants. Defendants' challenge is nothing but an unfortunate effort to obtain a premature

ruling on the merits, in the absence of a full record, rather than a proper Rule 12 motion.

---

that the defendant-attorney's negligence was a proximate cause of damages. First, the parties have not cited, and research has not revealed, any case from the Court of Appeals or any other court expressly holding that 'but for' causation is synonymous with sole proximate cause, or that requires a degree of causation in legal malpractice cases greater than proximate cause, *i.e.*, greater than that which must be typically proved as against any other professional or lay defendant in a negligence action. Similarly, the parties have not cited, and research has not revealed, any case discussing or identifying any basis for singling out attorneys for special treatment on the issue of causation. The Pattern Jury Instruction on legal malpractice, which focuses upon the lawsuit-within-a-lawsuit scenario, does not expressly use either the phrase 'but for' or 'proximate cause' in its formulation (PJI 2:152). However, the comments to the instruction, while noting the 'but for' formulation, provide that a defendant-attorney's negligence need only be 'a' proximate cause of damages and refer the reader to the general Pattern Jury Instruction on proximate cause (1 NY PJI3d 2:152, at 872, 880 [2008]; PJI 2:70). Moreover, our reading of the case law does not reveal that a heightened standard for causation is actually being applied in legal malpractice cases. Rather, all results can be explained by application of general principles of proximate cause.")

**D.**    **Defendants are Improperly Seeking to Relitigate the First Case**

A modern proverb teaches that generals often prepare to fight the last war. To that we may add that defendants sometimes try to fight the last lawsuit. In this case, facing the difficult challenge of demonstrating that BD's fully-ripe, single-count Complaint for legal malpractice fails to state a claim, Defendants attempt to distract the Court with a lengthy relitigation of the prior case. *See, e.g.*, Brief at ¶¶ 1-5, 9, 24-28, 34. As illustrated above, however, BD has adequately and plausibly alleged facts stating a claim for legal malpractice, and Defendants' sleight-of-hand should be rejected.

As the Court knows, in an effort to proceed with diligence and avoid any possible expiration of the governing statute of limitations, BD originally sued these Defendants while the Landlord Action remained pending. The Defendants moved to dismiss the original malpractice action primarily on the grounds that it was premature and therefore would not ripen so long as the Landlord Action remained pending. Indeed, the Defendants' Motion to Dismiss the first lawsuit did not challenge the negligence/malpractice claim beyond the ripeness issue. As counsel for BD observed at oral argument, "Your Honor, we read the motion [to dismiss] much as the Court does. I don't perceive either in the paper or in today's oral presentation any real challenge to the elements of our malpractice claim apart from the ripeness issue." Hearing Transcript dated November 20, 2018, Adv. Doc. No. 5-4, at p.33 line 24 through p.34 line 3. The Landlord Action has now concluded. Complaint ¶ 2, 91. As a result, the ripeness issue has vanished.

Nevertheless, hoping to find added mileage from the hearing in the first lawsuit, Defendants attempt to portray the argument on ripeness as a prior adjudication on the merits of the malpractice claim. *See* Motion to Dismiss at ¶ 3.[9] To this end, Defendants mischaracterize the prior

---

[9]    Conspicuously, however, Defendants do not argue any variety of collateral estoppel, law of the case or other form of claim or issue preclusion. *See* Motion to Dismiss *passim*.

colloquy with the Court to suggest that BD has not, and cannot, allege a causal connection between

Defendants' negligence and BD's harm:

> This Court dismissed Blue Dog's negligence/legal malpractice claim without prejudice but made clear that the claim suffered from a causation issue:

>> There is no hint in your complaint that -- of any suggestion that you would have turned down that mediation or refused that mediation or insisted on going to trial, despite the landlord's offer, if only Seyfarth hadn't lost your expert witnesses. And in the absence of that there is zero causal connection that's pleaded between the expert witness point and the delays that have resulted from the world's longest mediation that seems to be going on now. But you haven't shown any delays that are attributable to what you're really mainly complaining about, which is the failure to designate experts in a timely way. You have not shown that that caused delays, you have not shown that that had any connection to the long mediation that has happened, and as I said, that would require a connection that somehow would have suggested that either you would have gone straight to trial or that the mediation somehow would be easier and over with. There's no such allegation.

> Id. at 16:8-15, 16:24-17:8, attached as **Exhibit C**.

Motion to Dismiss at ¶ 27. Defendants' selective quotation, out of context, obscures that this

colloquy was specifically in reference to the ripeness concerns raised in the first lawsuit, which is

apparent in a fuller reading of the transcript:

> THE COURT [addressing counsel for Defendants]: . . . the issue that you've made your motion on is standing and about ripeness and about whether any injury has been incurred.

> * * *

> MR. PECK:  . . . The causation question can't be fully understood or briefed or evaluated under the present circumstances, many of which are appropriately cloaked in mediation privilege at the moment.
> So I would assert that there are good grounds for present dismissal without prejudice of the negligence claims.

> * * *

> THE COURT [addressing counsel for BD regarding the bar against calling expert witnesses]: I have nothing but the most conclusory of allegations that [the order precluding experts] has actually harmed you. You find every way you can

think of to say that it's either delayed or made more expensive or crippled or whatever, whatever, whatever, but the truth of the matter is that the main thing you complain about is the foreclosure of expert witness testimony. . . . There is no hint in your complaint that -- of any suggestion that you would have turned down that mediation or refused that mediation or insisted on going to trial, despite the landlord's offer, if only Seyfarth hadn't lost your expert witnesses. And in the absence of that there is zero causal connection that's pleaded between the expert witness point **and the delays that have resulted from the world's longest mediation that seems to be going on now**. . . . But you haven't shown any delays that are attributable to what you're really mainly complaining about, which is the failure to designate experts in a timely way. **You have not shown that that caused delays, you have not shown that that had any connection to the long mediation that has happened, and as I said, that would require a connection that somehow would have suggested that either you would have gone straight to trial or that the mediation somehow would be easier and over with**. There's no such allegation.

Hearing Transcript dated November 20, 2018, Adv. Doc. No. 5-4, at p.8 lines 9-11, p.11 lines 2-

8, p.15 lines 19-25, p.16 lines 8-15, line 24 through p.17 line 8. As the Court then accurately

concluded:

> THE COURT: . . . Whatever I do with the negligence claim, whether I stay it, whether I dismiss it without prejudice, and **it doesn't seem like anybody is arguing that you should be forever foreclosed, it's a question of whether your damages have fully accrued yet** and how do we let that happen. And whether I dismiss without prejudice or stay it sure seems to me that even if I don't dismiss without prejudice that I would stay the case because we'd be crazy to try to proceed today when everything is still in flux.

> \* \* \*

> All right. Now, as to the other parts of the case, whether the case is stayed, whether there's a dismissal on -- with some protections of the kind that I mentioned so that you can be assured you don't have a statute of limitations issue and you can be sure that you don't lose your chosen court, I think -- the two of you should just discuss that. Because it's quite clear that there are allegations that nobody has challenged the sufficiency of in terms of pleading that there was negligence. **The motion is focused on whether harm has materialized. And I understand nobody is conceding there was negligence, that's an issue for the merits later, but in terms of the sufficiency of the allegations nobody has challenged that**.

Hearing Transcript dated November 20, 2018, Adv. Doc. No. 5-4, at p.20 lines 13-22, p.32 line

22 through p.33 line 10. Given that Defendants never challenged the sufficiency of the complaint

as to malpractice in the first case, apart from the ripeness issue, the Court was not called upon, and did not, otherwise adjudicate the adequacy of the first complaint (much less the Complaint in this action) on that count. Rather, as the Court observed, any such adjudication is a matter for merits determination at the proper time. The overreaching argument that the Court has already done so should be swiftly rejected.

## E.    The Court Should Disregard Defendants' Premature Merits Arguments

As explored above, Defendants have prematurely, and improperly, attempted to argue the merits of BD's case at the Rule 12 stage by challenging the professed inability of BD to prove claims, when BD need only plausibly allege facts giving rise claims. *Music Mix Mobile*, *supra*. Defendants have prematurely argued other merits defenses as well, all of which should be likewise disregarded.

### 1.    Defendants' Misbegotten Estoppel Argument

In an argument that implicitly confronts the merits of BD's claims, Defendants object that BD "appears to suggest" that Defendants are "estopped from disputing the merits of the Landlord Action." Motion to Dismiss at pp.16-18. In addition to presenting a premature merits issue, this argument is a strawman of Defendants' own making: BD's Complaint does not allege that Defendants are estopped from generally contesting elements of the underlying Landlord Action, much less does it seek any preliminary ruling to that effect. Rather, BD's Complaint simply observes factually that Seyfarth repeatedly endorsed every element of the claims in the Landlord Action, including lease validity, liability, and damages. *See* Complaint ¶¶ 95-100. Although these facts will be hard for Defendants to deny, BD's Complaint does not estop Defendants from offering any legal or factual defense they might profess, whether as to the merits of the malpractice claim or the underlying lawsuit. In doing so, admittedly their credibility will be properly tested against

their legacy of affirmative representations to this Court regarding that underlying case. For clarity on this Motion to Dismiss, however, BD affirms that it does not assert any general theory of estoppel to prohibit Defendants from attempting to fashion defenses based on the merits of the underlying case.[10]

### 2.    Defendants' Premature Damages Argument

The test on a motion under Rule 12(b)(6) is whether the plaintiff has plausibly alleged facts stating a claim on which relief may be granted. *Music Mix Mobile*, *supra*. As recited above (pp. 10-12), BD is obligated to allege, *inter alia*, the existence of damages proximately resulting from Defendants' negligence (*see Nationstar Mortg. LLC v. Fein, Such & Crane LLP*, *supra*), and it has done so. The ultimate measure, calculation, and allowance of damages, of course, will depend upon the eventual proof in the case, as fully developed in the record. *See Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Research*, 2016 WL 205445 at *7 (S.D.N.Y. Jan. 15, 2016)(Nathan, J.) ("Although a plaintiff must 'plead[] factual content that allows the court to draw the reasonable inference' that he suffered damages as a result of the breach, *Iqbal*, 556 U.S. at 678, it need not, at this stage, 'specify the measure of damages nor plead . . . [specific] proof of causation.' [Citations omitted.] **The precise magnitude of damages proximately caused by the breach is properly evaluated at the summary judgment stage, not the motion to dismiss stage**. *See id*; *see also Luitpold Pharm., Inc. v. Ed. Geistlich Söhne A.G. Fur Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015) (alleging a speculative measure of damages in a breach of contract action does not justify dismissal under Rule 12(b)(6) because nominal damages are available under New York law) [bold emphasis added].")

---

[10]    Of course, Defendants may eventually find that they are barred by law of the case or related doctrines from disputing particular facts or circumstances, such as the assumption of BD's Lease in the settlement of the Landlord Action. Any such bar is the result of facts, law and prior proceedings herein, however, and not the result of clever pleading in BD's Complaint.

Despite this limited scope of review at the Rule 12 stage, Defendants seek to jump start their defense as to the eventual measure of damages by arguing that BD is prohibited from holding them responsible for the loss of treble damages in the underlying case. The Court should decline to enter any rulings as to eventual damages at this early stage, not only because doing so is premature (*Errant Gene Therapeutics*), but equally because Defendants' proffered authority is thin, consisting of just a single federal decision that excludes an award of punitive damages against an attorney on a default judgment (*Cappetta v. Lippman*, 913 F. Supp. 302, 306 (S.D.N.Y. 1996)) and two later one-page state-court decisions citing *Cappetta*. Further, whereas *Cappetta* and its sparse progeny address only the imposition of foregone punitive damages against a negligent attorney, the statutory treble damages that BD was eligible to recover in the Landlord Action are expressly not punitive damages, as Defendants' own authority makes clear. *See Rental & Mgmt. Assocs., Inc. v. Hartford Ins. Co.*, 614 N.Y.S.2d 513, 514 (App. Div. 1994)(in a one-paragraph opinion, holding that statutory treble damages are "not the equivalent of common-law punitive damages"); *Lyke v. Anderson*, 541 N.Y.S.2d 817 (App. Div. 1989)(holding that a tenant may be entitled to treble damages even though the jury denied punitive damages). Further still, the abbreviated analysis in *Cappetta* is far from universally accepted. *See*, *e.g.*, *O'Connor Agency, Inc. v. Brodkin*, 99 Cal. App. 4th 488, 497 (Cal. Ct. App. 2002) (rejecting *Cappetta* because it "completely ignores the issue of fully compensating the plaintiff for the attorney's malpractice by awarding the plaintiff the full value of the lost claim" and constitutes "the minority view on this issue" (citations omitted)).

In short, any adjudication of BD's damages (either inclusionary or exclusionary) should await a decision on the merits after the development of a proper and complete record.

## IV. _**Conclusion**_

Because BD has plausibly alleged all elements of its claim for negligence, Defendants'

Motion to Dismiss should be denied.

Dated: April 29, 2019

LAW OFFICE OF SCOTT M. HARE

By:    /s/ Scott M. Hare

Scott M. Hare
1806 Frick Building
437 Grant Street
Pittsburgh, PA 15219
(412) 338-8632
scott@scottlawpgh.com
Pa. I.D. No. 63818
Michigan P52081

Special Counsel to Blue Dog at 399 Inc.