Scott Michael Hare, Esquire
Special Counsel to Blue Dog at 399 Inc.
437 Grant Street – Suite 1806
Pittsburgh, PA 15219
(412) 338-8632
scott@scottlawpgh.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------x
In re                                                                        Chapter 11

BLUE DOG AT 399 INC.,                                         Case No. 15-10694-mew

                                    Debtor.
-------------------------------------------------x
BLUE DOG AT 399 INC.,

                                Plaintiff,                             Adv. Pro. No. 19-1029-mew

        -against-

SEYFARTH SHAW, LLP and
RALPH BERMAN,

                               Defendants.
-------------------------------------------------x

## AMENDED ADVERSARY COMPLAINT

Plaintiff Blue Dog at 399 Inc. ("**Blue Dog**" or the "**Debtor**") files this Amended Adversary Complaint against its former lawyers, Defendants Seyfarth Shaw, LLP ("**Seyfarth**") and Ralph Berman, Esquire ("**Berman**"), and alleges the following good cause for the relief requested herein:

## INTRODUCTION

1. On March 24, 2015, the Debtor commenced a voluntary case under chapter 11 of the Bankruptcy Code.

2. The Debtor brings this action seeking damages for negligence (legal malpractice) against its former special litigation counsel, Seyfarth Shaw, LLP and the individual lawyer who

represented it, Ralph Berman, in an adversary proceeding (now settled) entitled *Blue Dog at 399 Inc. v. BP 399 Park Avenue LLC*, Adv. No. 15-01097-mew (the "**Landlord Action**").

## JURISDICTION AND VENUE

3. Debtor brings this adversary proceeding pursuant to Rule 7001(1) of the Federal Rules of Bankruptcy Procedure.

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

5. Venue lies in this Court pursuant to 28 U.S.C. § 1409(a).

6. Subject-matter jurisdiction, personal jurisdiction and venue are further proper pursuant to this Court's Order dated July 5, 2017 [Docket No. 109 at Bankr. No. 15-10694 and Docket No. 76 at Adv. No. 15-01097], in which this Court expressly retained jurisdiction "over any and all disputes arising out of or relating to this Order or to Seyfarth's retention by the Debtor."

7. Subject-matter jurisdiction, personal jurisdiction and venue are further proper pursuant to this Court's Order dated December 6, 2018 [Docket No. 24 at Adv. No. 18-01571], in which this Court expressly determined "that any future action that may be filed with respect to claims for negligence/legal malpractice arising out of the same facts and circumstances alleged in Count Two of the Complaint may be commenced exclusively in this Court."

8. The Debtor consents to the entry of final orders or judgment by the Bankruptcy Court.

## PARTIES

9. The Plaintiff is a New York corporation and is the Debtor herein.

10. Defendant Seyfarth Shaw, LLP is a New York limited liability partnership with a principal place of business located at 620 Eighth Avenue, New York, NY 10018-1405.

11. Defendant Ralph Berman is an attorney licensed to practice law before this Court and in the State of New York. Berman was employed as an attorney with the Seyfarth firm during the events described herein.

12. As set forth at greater length below, Seyfarth and Berman entered an attorney-client relationship with Blue Dog and represented Blue Dog as its lawyers in the Landlord Action.

## FACTS

A. Background and Underlying Landlord Action

13. Blue Dog was a tenant in a building at 399 Park Avenue, New York, NY, pursuant to a lease with BP 399 Park Avenue LLC (the "**Landlord**") dated January 1, 2012 (the "**Lease**").

14. Sometime after execution of the Lease, a dispute arose between Blue Dog and the Landlord regarding various Lease terms, as a result of which the Landlord declared that Blue Dog was in default of the Lease and purported to cancel and terminate the Lease. Blue Dog denied that it was in material breach, denied that it failed to cure any alleged breach, and denied that the Landlord was entitled to declare a default or cancel and terminate the Lease.

15. In light of the parties' dispute, Blue Dog filed a Verified Complaint against the Landlord on September 11, 2012 in the Supreme Court of the State of New York at Case Index No. 653158-2012 (the "**State Court Action**").

16. Beginning on or around March 20, 2015, Blue Dog consulted with Seyfarth regarding a possible bankruptcy filing.

17. While the state-court proceedings remained pending, the Debtor filed this bankruptcy on March 24, 2015.

18. Seyfarth thereafter designed plans to commence an adversary proceeding in the bankruptcy case to adjudicate the claims between Blue Dog and the Landlord.

19. On April 17, 2015, as a result of the ongoing and unresolved landlord-tenant dispute, Blue Dog - at the advice of Seyfarth - commenced the Landlord Action, asserting claims for declaratory judgment, wrongful eviction, breach of lease and breach of the implied covenant of good faith and fair dealing, and seeking damages, statutory treble damages pursuant to Section 853 of the New York Real Property and Proceedings Law, and injunctive relief.

20. Although Seyfarth did not initially appear on the pleadings in the Landlord Action, it directed that litigation at all times.

21. On February 1, 2016, this Court entered the parties' proposed Joint Pretrial Scheduling Order [Docket No. 19 in the Landlord Action], which Seyfarth helped to draft, directing, *inter alia*, that "All affirmative expert reports shall be delivered by April 21, 2016, with depositions of those experts to be taken and completed by May 5, 2016," and that "All responding expert reports shall be delivered by May 12, 2016, with depositions of those experts to be taken and completed by May 26, 2016." The Joint Pretrial Scheduling Order further required discovery to be completed no later than May 26, 2016, unless "extended by order of the Court for cause shown."

22. By agreement of the parties, the Court issued an Amended Joint Pretrial Scheduling Order dated April 8, 2016 [Docket No. 20 in the Landlord Action], which Seyfarth helped to draft, amending the scheduling order to require that "All affirmative expert reports shall be delivered by May 19, 2016, with depositions of those experts to be taken and completed by June 2, 2016," and that "All responding expert reports shall be delivered by June 9, 2016, with depositions of those experts to be taken and completed by June 23, 2016." As before, the Amended Joint Pretrial Scheduling Order required discovery to be completed by the stated deadline (June 23, 2016) unless "extended by order of the Court for cause shown."

23. On May 18, 2016 Debtor filed an Application for Entry of an Order Authorizing Employment and Compensation of Seyfarth Shaw, LLP as Special Litigation Counsel for the Debtor

and Debtor-in-Possession *Nunc Pro Tunc* to the Application Date Pursuant to Bankruptcy Code Sections 327(e) and 328 and Rule 2014 of the Federal Rules of Bankruptcy Procedure [Docket No. 60 in the Debtor's lead case].

24. In support of the Seyfarth retention application, Seyfarth attached an engagement letter addressed to Blue Dog [Docket No. 60-2 in the Debtor's lead case]. The Seyfarth engagement letter expressly provided, *inter alia*, that the firm's client is Blue Dog, that the firm agrees to represent Blue Dog as special litigation counsel in the Adversary Proceeding filed at Adv. No. 15-1097 (to-wit, the Landlord Action), and that Blue Dog would be "represented principally" in the adversary by, among others, Mr. Berman.

25. Pursuant to the Amended Joint Pretrial Scheduling Order dated April 8, 2016 that Seyfarth helped to draft, affirmative expert reports were due the following day, May 19, 2016. Seyfarth did not seek any extension to this deadline. Instead, Seyfarth missed this deadline and failed to serve any expert reports.

26. Pursuant to the same Amended Joint Pretrial Scheduling Order, the deadline for expert depositions was June 2, 2016. Seyfarth did not seek any extension to this deadline either, but instead missed this deadline as well and failed to schedule any expert depositions.

27. This Court approved the Seyfarth retention application by order dated June 13, 2016 [Docket No. 67 in the Debtor's lead case].

28. By letter dated July 15, 2016 [Docket No. 22 in the Landlord Action], Seyfarth asked this Court to schedule a telephone conference to address discovery issues and to request that the Court extend the deadline for discovery and pretrial submissions, including expert discovery.

29. At Berman's and Seyfarth's request, the Court extended the lapsed deadline to complete discovery until August 10, extended the deadline for pretrial submissions to August 18, and cautioned the parties "I won't make any other changes to the schedule. We will have our final

pretrial on the 18th and we will then set a trial date. Okay?" Hearing Transcript, p.8. In response, Berman again raised the issue of expert reports, requesting "once we do finish with fact witnesses, there was a period of time for the exchanging of expert reports and expert depositions. I thought we could still accommodate that. That's a fairly important part of our case." Hearing Transcript, p.9, lines 1-5. This Court summarily rejected Berman's proffered rationale as "utter nonsense," admonishing that "There's no reason why you can't get your experts done within the normal discovery schedule or why they have to wait until the fact witnesses are done. So you should have been working on that already." Hearing Transcript, p.9, lines 11-14. Nonetheless, this Court granted the requested relief and extended expert discovery to August 10, warning once again "I'm not going to extend it any further." Hearing Transcript, p.9, lines 15-16. Berman acknowledged there would be no further extensions, agreeing "Very good, Your Honor." Hearing Transcript, p.9, line 17.

30. By email dated August 8, 2016, Seyfarth attorney Zuckerman contacted Blue Dog to emphasize the importance of contemplated expert testimony and alluding to the likelihood of an upcoming summary judgment motion: "We are more likely than not going to need an affidavit from him [the expert witness] to oppose any [summary judgment] motion the landlord may make to pare down the claims and then need his testimony for the hearing [that is, trial]."

31. Once again, Seyfarth missed the extended deadline of August 10, 2016 and failed to serve any expert reports or schedule expert depositions.

32. The following day, August 11, 2016, after the final August 10 expert deadline had elapsed, Seyfarth attempted for the first time to retain a damages expert, Gary Levy, CPA, the Hospitality Industry Practice Leader of CohnReznick LLP, to prepare a report opining to "the lost profits our client could have made had the café opened."

33. As Seyfarth understood and acknowledged, expert testimony was necessary to prove the elements of Blue Dog's case in the Landlord Action. Seyfarth intended to proffer experts to

meet Blue Dog's burden therein and, apart from repeatedly missing the governing deadlines, took steps to develop such expert testimony.

B. <u>Seyfarth's Negligence Comes to Light</u>

34. After the final extended deadline for expert reports had passed, the Landlord filed a motion for summary judgment on September 30, 2016 [Docket No. 35 in the Landlord Action].

35. On November 30, 2016, Seyfarth filed a response in opposition to the motion for summary judgment on behalf of Blue Dog [Docket No. 45 in the Landlord Action]. Attached to the response in opposition, Seyfarth filed and served, for the first time, the declarations of two expert opinion witnesses, Dean Stracuzza [Docket No. 45-3 in the Landlord Action] and Lamar Jermaine Russell [Docket No. 45-5 in the Landlord Action], both of which were dated that same day.

36. Promptly thereafter, by letter dated December 2, 2016 [Docket No. 47 in the Landlord Action], counsel for the Landlord objected to the submission of expert declarations from two undisclosed opinion witnesses who were never previously identified as required by Fed. R. Civ. P. 26(a)(2)(A), and whose reports were due (on extension) by August 10, 2016, yet were never produced as required by Fed. R. Civ. P. 26(a)(2)(B). The Landlord objected that the "last-minute submission by the debtor of declarations by two previously undisclosed expert witnesses, without having ever (much less timely) provided the Landlord with required expert reports is patently unfair and violates this Court's deadlines for expert disclosures." For this reason, the Landlord requested a conference to consider a motion to strike, and further requested that Blue Dog "be barred from offering the Russell and Stracuzza declarations, and from presenting *any other expert witness testimony whatsoever in this case* [italics added]."

37. As requested, the Court held a hearing on the motion to strike on December 15, 2016. *See* Hearing Transcript [Docket No. 52 in the Landlord Action]. After reviewing the expert disclosure requirements in the Federal Rules and the Court's own scheduling orders, the Court orally

-7-

granted the Landlord's motion to strike and barred Blue Dog from using experts at trial.

38. The hearing on December 15, 2016 was the first time Blue Dog learned that Seyfarth had missed expert deadlines and had failed to produce timely disclosures. Prior to that hearing, Blue Dog understood from Seyfarth that it was taking all necessary steps to develop needed expert testimony.

39. Consistent with its oral ruling from the bench, the Court thereafter issued an order dated December 19, 2016 [Docket No. 51 in the Landlord Action] striking the expert witness declarations filed by Seyfarth and barring Blue Dog from using those individuals as expert witnesses in connection with any motion, hearing or trial in the Landlord Action. The Court additionally scheduled the Landlord Action for trial on January 27, 2017, approximately one month later.

40. On January 13, 2017, Seyfarth filed a Motion *in Limine* [Docket No. 53 in the Landlord Action] to preclude the Landlord from offering certain evidence at trial. On January 20, 2017, the Landlord filed its Response [Docket No. 55 in the Landlord Action], including its own request to strike new witnesses who had never been identified by Seyfarth until just days earlier. *See* Landlord's Response, pp. 32-35 [Docket No. 55 in the Landlord Action]. Specifically, the Landlord recounted that on January 16, 2017, Seyfarth identified, for the first time, three new witnesses that were never before disclosed, followed by the identification of a fourth undisclosed new witness on January 17, 2017. The Landlord objected that the newly-disclosed witnesses were offered to provide expert testimony in violation of the Court's December 19, 2016 Order barring Blue Dog from calling expert witnesses at trial.

41. The Court convened a hearing on the dueling motions *in limine* on January 25, 2017. *See* Hearing Transcript [Docket No. 61 in the Landlord Action]. During the hearing, the Court determined, once again, that Seyfarth failed to provide timely expert disclosures and would therefore be barred from offering any experts at trial, observing "if that leaves you with a difficulty of proof,

-8-

that's your own fault, for not designating experts when you should have."

      C.      **Seyfarth's Negligence Caused Actual Harm to Blue Dog**

42. The inability to call expert witnesses left Blue Dog with insurmountable difficulties of proof at the upcoming scheduled trial. In particular, Seyfarth had developed expert witnesses as to both liability and damages. These experts were necessary to prove elements of Blue Dog's claims at trial, including the elements of its claims for declaratory judgment, breach of lease and breach of the implied covenant of good faith and fair dealing, and to prove its damages thereon.

43. But for Seyfarth's negligence, Blue Dog would have been permitted to call its expert witnesses on liability and damages at trial, and would have done so.

44. Solely and proximately because of Seyfarth's negligence, Blue Dog was barred from calling any expert witnesses at trial, whether as to liability or damages.

45. Had Seyfarth preserved the opportunity for Blue Dog to call expert witnesses at trial, Blue Dog would have been fully able to prove the elements of its liability claims at trial and would have been fully able to prove damages thereon.

46. Solely and proximately because of Seyfarth's negligence, Blue Dog was rendered unable to offer relevant, admissible evidence to prove all elements of its liability claims at trial and unable to offer relevant, admissible evidence to prove damages thereon.

47. Had Seyfarth preserved the opportunity for Blue Dog to call expert witnesses at trial, Blue Dog would have proceeded to trial and verdict on its claims in the absence of a sufficient and satisfactory settlement offer from the Landlord (either before or during trial).

48. Instead, solely and proximately because of Seyfarth's negligence, Blue Dog was left to face the prospect of a trial in which it would be unable to meet its evidentiary burden of proof as to both liability and damages.

49. Prior to trial on January 27, 2017, the Court directed the parties to return to

mediation, which occurred on February 8 and 10, 2017.

50. Solely and proximately because of Seyfarth's negligence, which left Blue Dog unable to meet its evidentiary burden of proof at trial (a handicap that the Landlord and its lawyers fully understood), Blue Dog was likewise unable to exercise any strength and leverage in negotiating with the Landlord at mediation, thus leaving it unable to achieve a sufficiently meaningful offer to warrant settlement.

51. Indeed, recognizing the impaired state of Blue Dog's case heading into trial, the Landlord stated at the outset of the mediation that there would be "no money on the table," and offered only to allow Debtor, at some unspecified future date as much as two years later, to resume possession of the leasehold premises, but with no payment of damages for lost revenue, the costs of delay or otherwise.

52. Had Seyfarth properly developed and preserved expert testimony for use at trial, Blue Dog would have terminated the mediation promptly upon hearing the zero-dollar offer.

53. Unfortunately, however, and likewise recognizing the impaired state of Blue Dog's case in which Blue Dog could not present expert testimony (at Seyfarth's own doing), Seyfarth advised Blue Dog to accept the Landlord's vaguely-defined zero-dollar offer.

54. No settlement was achieved at mediation, and the docket remained quiet for the next two months until April 14, 2017, when Seyfarth filed a Motion for Leave to Withdraw [Docket No. 62 in the Landlord Action; Docket No. 79 in the Debtor's lead case].

55. Blue Dog - now represented by new counsel - responded to the Motion for Leave to Withdraw by filing an Application asking the Court to deny the Motion in part [Docket No. 63 in the Landlord Action; Docket No. 81 in the Debtor's lead case]. In its Application, Blue Dog recounted that Seyfarth missed critical deadlines in the Landlord Action, impacting not only the prosecution of the case but also the lawyer-client relationship. For this reason, Blue Dog agreed that

it was critical for it to change counsel in an effort to salvage the case. Conversely, Blue Dog opposed the Motion for Leave to Withdraw to the extent it sought to recover fees, to impose any liens, or otherwise to blockade Blue Dog's efforts to prepare the case for trial by withholding the case file.

56. After considerable further negotiations and considerable expense to Blue Dog, its new counsel were able to negotiate a settlement in the Landlord Action providing, *inter alia*, for the payment to Blue Dog of $300,000, the assumption and consensual termination of the lease and a full waiver of the Landlord's considerable administrative claim for cure payments.

### D.    Debtor's Damages Resulting from Seyfarth's Negligence

57. But for Defendants' negligence, Blue Dog could have proven its liability and damages claims at trial.

58. But for Defendants' negligence, Blue Dog would have met its burden and offered sufficient admissible evidence to sustain a trial verdict in its favor.

59. As a direct and proximate result of Defendants' negligence, Blue Dog was rendered unable to prove its liability and damages claims at trial.

60. But for Defendants' negligence, Blue Dog could have negotiated a settlement consistent with the strength of its liability and damages claims at trial and consistent with the Landlord's corresponding exposure thereon.

61. As a direct and proximate result of Defendants' negligence, Blue Dog was rendered unable to negotiate a settlement consistent with the strength of its liability and damages claims, and was forced to accept a substantially smaller settlement or risk proceeding to trial where it would be unable to prove its liability and damages claims.

62. In a reasonable effort to mitigate its damages resulting from Defendants' negligence in the underlying case, Blue Dog agreed thereafter to settle the Landlord Action for an amount that,

-11-

while greater than the offer obtained by Seyfarth, was substantially less than what Blue Dog would have proven at trial and/or would have obtained in a settlement but for the Defendants' negligence.

63. As a direct and proximate result of Defendants' negligence, Blue Dog has suffered damages equal to the difference between the lost-profit and other damages it would have proven in the underlying Landlord Action (had it been allowed to present expert testimony, including expert testimony as to damages) and the amount it actually recovered in the eventual settlement of that action after being barred from offering any expert testimony.

64. As a further direct and proximate result of Defendants' negligence, Blue Dog has also suffered damages equal to the added costs and attorneys' fees necessarily incurred by Blue Dog to retain new counsel to replace Seyfarth after it withdrew from the Landlord Action and to continue the prosecution and settlement of that action.

## FIRST CLAIM FOR RELIEF
### (Negligence/Legal Malpractice)

65.     Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as if fully set forth herein.

66.     Defendants had a duty to use ordinary care in prosecuting the Landlord Action, and were specifically required to take all steps necessary to preserve and advance the prosecution of Blue Dog's claims and causes of action.

67.     More specifically, and without limitation, Defendants were required to comply with all applicable bankruptcy rules, rules of civil procedure, scheduling orders and other deadlines issued by the Court so as not to waive or impair Blue Dog's claims and causes of action.

68.     Defendants breached their duties by, *inter alia*, failing to take all required steps necessary to preserve and advance the prosecution of Blue Dog's claims and causes of action and by failing to comply with all applicable bankruptcy rules, rules of civil procedure, scheduling orders and other deadlines issued by the Court so as not to waive or impair Blue Dog's claims and causes of action.

69.     Defendants' negligent and repeated failure to comply with the applicable bankruptcy rules, rules of civil procedure, and Court deadlines governing expert reports (which Defendants admitted were "a fairly important part of the case" and would be needed at the time of trial) is not within the purview of "litigation strategy," and was not justified or excusable. Likewise, Defendants' negligent and repeated failure to satisfy governing deadlines was not harmless error, but rather directly and proximately caused harm to Blue Dog as described herein. As such, Defendants' failure constitutes actual and material negligence.

70.     As a direct and proximate result of Defendants' negligence, Debtor has sustained actual monetary damages in an amount to be established at trial.

WHEREFORE, Blue Dog respectfully requests entry of judgment in its favor and against Defendants, jointly and severally, as follows:

(i) Awarding Blue Dog damages in an amount to be determined at determined at trial, plus interest;

(ii) Awarding Blue Dog all fees and costs, including attorneys' fees, associated with this action; and

(iii) Granting Blue Dog such other and further relief, both at law and in equity, as the Court may deem just and proper.

Dated: June 9, 2019

                                  LAW OFFICE OF SCOTT M. HARE

                                  By:    /s/ Scott M. Hare
                                         Scott M. Hare
                                         1806 Frick Building
                                         437 Grant Street
                                         Pittsburgh, PA 15219
                                         (412) 338-8632
                                         scott@scottlawpgh.com
                                         Pa. I.D. No. 63818
                                         Michigan P52081

Special Counsel to Blue Dog at 399 Inc.