MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
James M. Peck
Grant J. Esposito
Erica J. Richards

*Counsel to the Defendants*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------- x
                                                               :
In re:                                                         :
                                                               :        Chapter 11
BLUE DOG AT 399 INC.,                                          :
                                                               :        Case No. 15-10694 (MEW)
                            Debtor.                            :
                                                               :
-------------------------------------------------------------- x
                                                               :
BLUE DOG AT 399 INC.,                                          :
                                                               :
                            Plaintiff,                         :
        -against-                                              :
                                                               :        Adv. Proc. No. 19-01029
SEYFARTH SHAW, LLP and                                         :
RALPH BERMAN                                                   :
                                                               :
                            Defendants.                        :
-------------------------------------------------------------- x
```

**DEFENDANTS' MOTION FOR DISMISSAL OF**
**AMENDED ADVERSARY COMPLANT PURSUANT TO**
**BANKRUPTCY RULE 7012(b) AND FEDERAL RULE 12(b)(6)**

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     BACKGROUND ........................................................................................................5

        A.      The Debtor's Main Bankruptcy Case .............................................................5

        B.      The Landlord Action ......................................................................................5

        C.      The Adversary Proceedings Against Seyfarth.................................................8

III.    ARGUMENT ..........................................................................................................10

        A.      Legal Standard and Judicial Notice ..............................................................10

        B.      The Debtor Fails to State a Claim for Legal Malpractice...................................12

IV.     CONCLUSION ......................................................................................................17

**Exhibits**

Exhibit A – Order Dismissing Adversary Proceeding Pursuant to Bankruptcy Rule 7012(b) and
            Federal Rule of Civil Procedure 12(b) [2018 Action]

Exhibit B – Transcript of Hearing Held on January 23, 2019

Exhibit C – Order Dismissing Adversary Proceeding Pursuant to Bankruptcy Rule 7012(b) and
            Federal Rule of Civil Procedure 12(b) [Current Action]

Exhibit D – Transcript of Hearing Held on May 21, 2019

Exhibit E – Transcript of Hearing Held on November 20, 2018

Exhibit F – Transcript of Hearing Held on July 19, 2016

Exhibit G – Transcript of Hearing Held on December 15, 2016

Exhibit H – Revised Joint Pretrial Order (Proposed)

ny-1681616

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009) ....................................................................................... 10, 11

*Brass v. Am. Film Techs., Inc.*,
     987 F.2d 142 (2d Cir. 1993) ................................................................................ 11

*Buckskin Realty Inc. v. Greenberg (In re Buckskin Realty Inc.)*,
     Adv. No. 15-01203-NHL, 2017 WL 1283458 (Bankr. E.D.N.Y. Apr. 5, 2017) ............. 12, 16

*In re Campbell*,
     500 B.R. 56 (Bankr. D.N.M. 2013) ...................................................................... 11

*Encyclopaedia Britannica, Inc. v. Dickstein Shapiro, LLP*,
     905 F. Supp. 2d 150 (D.D.C. 2012)...................................................................... 13

*Flaxer v. Gifford (In re Lehr Constr. Corp.)*,
     528 B.R. 598 (Bankr. S.D.N.Y. 2015), *aff'd*, 551 B.R. 732 (S.D.N.Y. 2016),
     *aff'd*, 666 Fed. Appx. 66 (2d Cir. 2016) ............................................................... 11

*Flutie Bros. LLC v. Hayes*,
     No. 04 CIV 4187, 2006 WL 1379594 (DAB), (S.D.N.Y. May 18, 2006) ............................ 12

*Katzenstein v. VIII SV5556 Lender, LLC (In re Saint Vincent's Catholic Med.*
     *Ctrs. of N.Y.)*,
     440 B.R. 587 (Bankr. S.D.N.Y. 2010) .................................................................. 11

*Levine v. Egidi*,
     No. 93 C 188, 1993 WL 69146 (N.D. Ill. Mar. 8, 1993)........................................... 11

*Maroulis v. Sari M. Friedman, P.C.*,
     60 N.Y.S.3d 468 (App. Div. 2017)........................................................................ 17

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
     602 F.3d 57 (2d Cir. 2010) ................................................................................ 11

*Power Control Devices, Inc. v. Lerner*,
     437 P.3d 66 (Kan. Ct. App. 2019) ....................................................................... 13

*Schweizer v. Mulvehill*,
     93 F. Supp. 2d 376 (S.D.N.Y. 2000) .................................................................... 16

*Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.*,
     780 N.Y.S.2d 593 (App. Div. 2004)...................................................................... 12

-ii-

## I.    PRELIMINARY STATEMENT

1.    Defendants Seyfarth Shaw LLP (the "Firm") and Ralph Berman (collectively, with the Firm, "Seyfarth") formerly served as litigation counsel to Plaintiff Blue Dog at 399 Inc. ("Blue Dog" or the "Debtor") in an adversary proceeding titled *Blue Dog at 399 Inc. v. BP 399 Park Avenue LLC (In re Blue Dog at 399 Inc.)*, Adv. No. 15-01097 (Bankr. S.D.N.Y.) (the "Landlord Action"), brought by the Debtor against BP 399 Park Avenue LLC (the "Landlord"). In an earlier adversary proceeding brought against Seyfarth last year, *Blue Dog at 399 Inc. v. Seyfarth Shaw, LLP,* Adv. No. 18-01571 (Bankr. S.D.N.Y.) (the "2018 Action"), the Debtor filed a complaint and then (in response to Seyfarth's initial motion to dismiss) an amended complaint (the "2018 Amended Complaint"), which was dismissed by this Court on December 6, 2018 (the "First Dismissal Order") [2018 Action Dkt. No. 24], attached as **Exhibit A**.  Count One (Declaratory Judgment) and Count Three (Claim under New York Judiciary Law § 487) of the 2018 Complaint were dismissed with prejudice and Count Two (Negligence/Legal Malpractice) was dismissed without prejudice.

2.    In January 2019, this Court approved a settlement (the "Landlord Settlement") between Blue Dog and the Landlord [Main Case Dkt. No. 184] that Blue Dog entered into with the aim of again pursuing meritless claims against Seyfarth.  During the hearing to approve the Landlord Settlement, Debtor's counsel acknowledged that the estate is presently administratively insolvent and is depending entirely on a recovery on its claims against Seyfarth to fund its chapter 11 case.  *See* Transcript of Hearing at 9:1-16, *In re Blue Dog at 399 Inc.*, No. 15-10694 (Bankr. S.D.N.Y. Jan. 23, 2019), attached as **Exhibit B**.  That representation is borne out by the Debtor's most recent Corporate Monthly Operating Report [Main Case Dkt. No. 203].

3.    On February 26, 2019, the Debtor filed a new complaint against Seyfarth commencing the instant action [Dkt. No. 1] (the "New Adversary Complaint"), which pleaded

facts that were nearly identical to those contained in the 2018 Amended Complaint.  The New

Adversary Complaint reasserted Count Two of the 2018 Amended Complaint and again sought

damages for negligence and legal malpractice allegedly committed by Seyfarth in connection

with the Landlord Action.  Although the factual allegations underlying the negligence claim were

unchanged, the Debtor's asserted damages ballooned from its prior groundless claim of

$40.5 million to a preposterous $156,694,950.

4.        At a hearing held on May 21, 2019, the Court granted Seyfarth's motion to

dismiss the New Adversary Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure (the "Rules") for failure to state any claims on which any relief may be granted, a

ruling that was memorialized in a Dismissal Order entered on the following day.  *See* Order

Dismissing Adversary Complaint Pursuant to Bankruptcy Rule 7012(b) and Federal Rule of

Civil Procedure 12(b) [Dkt. No. 9], attached as **Exhibit C**.  At the hearing, the Court cautioned

the Debtor that it "should explain what the causal connection is" between Seyfarth's conduct and

the alleged harm suffered by the Debtor.  *See* Transcript of Hearing at 25:5-6, *Blue Dog at 399*

*Inc. v. Seyfarth Shaw, LLP*, No. 19-01029 (Bankr. S.D.N.Y. May 21, 2019) (the "May 21

Hearing Transcript"), attached as **Exhibit D**.  The Court further warned the Debtor that "You

only have one more chance at this.  And I'm going to warn you that if I think that ultimately that

what's alleged here is straight beyond the bounds of Rule 11, I am going to hold your client and

you responsible because there are at least hints that some of these accusations are more

aggressive than I think can be justified."  *Id*. at 25:6-12.

5.        On June 9, 2019, the Debtor filed an amended complaint [Dkt. No. 10] (the

"Amended Complaint").  Although the Court provided the Debtor with a virtual roadmap of

what additional allegations must be included (within the bounds of Rule 11) in the Amended

Complaint in order to survive a motion to dismiss, the Debtor has missed the mark yet again.

This latest attempt to assign blame to Seyfarth suffers from the same fatal defect that plagued the

Debtor's previously (twice) dismissed claim for negligence and legal malpractice:  Blue Dog did

not and cannot show how any alleged malpractice caused cognizable harm—a dispositive issue

that this Court took note of during both the May 21, 2019 hearing and the November 20, 2018

hearing to dismiss the 2018 Amended Complaint.  *See* Transcript of Hearing at 16:2-15, *Blue*

*Dog at 399 Inc. v. Seyfarth Shaw, LLP*, No. 18-01571 (Bankr. S.D.N.Y. Nov. 20, 2018) (the

"November 20 Hearing Transcript"), attached as **Exhibit E**.  The Amended Complaint is just as

flawed as the Debtor's prior complaints and does nothing to remedy this critical deficiency.

6.      Allegations that Blue Dog would have ultimately prevailed at trial if only it had

been able to submit expert reports are impossible to prove without actually holding a trial.  That

trial was eliminated as an option and will never be held because of the Landlord Settlement.

Thus, the Debtor's allegation that, had the deadline to submit expert reports not been missed,

"Blue Dog would have been fully able to prove the elements of its liability claims at trial and

would have been fully able to prove damages thereon[]" (Amended Complaint at ¶ 45) is pure,

unsubstantiated speculation.

7.      The Amended Complaint also improperly relies on vague, conclusory allegations,

making no attempt whatsoever to meet the "case within a case" pleading requirement.  Among

other things, the Amended Complaint fails to explain what specific points of evidence the

excluded expert reports were intended to provide, or why expert witness testimony, rather than

lay witness testimony, was required to establish those points.  In fact, the record shows that

Seyfarth, on behalf of Blue Dog, was ready, willing and potentially able to prove all the elements

of its claims at trial even without the benefit of experts.  Because both this case and the Landlord

Action are assigned to the same Bankruptcy Judge on the same judicial docket, judicial notice of

the circumstances of both cases enable this Court to judge the merits of the Debtor's new

Amended Complaint against Seyfarth on a motion to dismiss.  Blue Dog cannot evade a motion

to dismiss by simply failing to address facts about the conduct of the Landlord Action that are

known to the Court and render certain of its key allegations implausible at best.

8.      Blue Dog also fails to allege what its actual damages are, beyond making vague,

speculative, and conclusory statements that render it impossible to determine what harm Blue

Dog actually asserts it suffered.  Blue Dog contends that, with the benefit of expert testimony, it

would have obtained either a verdict (which it concludes without any support whatsoever would

have been in its favor) or a "sufficient and satisfactory settlement offer[.]"  Amended Complaint

at ¶ 47.  Blue Dog further contends that, in the absence of expert testimony, it was forced to

accept "a substantially smaller settlement[.]"  Amended Complaint at ¶ 61.  Smaller than what,

exactly?  Blue Dog does not allege what it would have viewed as a "sufficient and satisfactory

offer" in the first instance, despite explicit instructions from the Court that "[t]o the extent your

allegation is that your mediation outcome was worse than it might otherwise have been, you

should at least say in what way."  *See* May 21 Hearing Transcript at 24:25-25:3 (emphasis

added).  Blue Dog also fails to allege that "in mediation, [Blue Dog] would have accomplished

the outcome that a successful trial would have accomplished," an omission the Court explicitly

highlighted as missing from the New Adversary Complaint.  *Id*. at 24:21-22.

9.      The Debtor's omission of this information—regardless of whether the omission

was due to inadvertence, because disclosure of that information is prevented by mediation

privilege, or because a statement that sufficiently alleges actual damages would also subject the

Debtor and its counsel to potential sanctions for Rule 11 violations—is fatal to Blue Dog's claim in light of the Court's clear prior instructions.

10. The Amended Complaint fails to state any actionable claims because the required elements of causation and damages have not been adequately pleaded. As a result, this action should be dismissed with prejudice.

## II. BACKGROUND

### A. The Debtor's Main Bankruptcy Case

11. On March 24, 2015, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code captioned *In re Blue Dog at 399 Inc.*, Case No. 15-10694 (Bankr. S.D.N.Y.) (the "Main Case") [Main Case Dkt. No. 1]. The Debtor's bankruptcy case was commenced in an effort to remedy the consequences of state court eviction proceedings and restore the Debtor to possession of commercial premises located on the ground floor at 399 Park Avenue (the "Premises") under terms of a lease between the Debtor and the Landlord dated January 1, 2012 (the "Lease").

### B. The Landlord Action

12. On April 17, 2015, the Debtor filed a complaint against the Landlord (the "Landlord Complaint"), commencing the Landlord Action [Landlord Action Dkt. No. 1], which sought, among other things, to restore the Debtor to possession of the Premises. The Landlord moved to dismiss the Landlord Complaint on June 19, 2015 [Landlord Action Dkt. No. 6]. Court-ordered mediation before the Honorable James L. Garrity was unsuccessful, and, after a hearing [Landlord Action Dkt. No. 11], the Court issued an opinion and order denying the Landlord's motion to dismiss [Landlord Action Dkt. Nos. 12, 16].

13.     On January 11, 2016, the Landlord filed an answer to the Landlord Complaint

[Landlord Action Dkt. No. 17] that largely denied the Debtor's allegations and asserted various

affirmative defenses.

14.     On February 1, 2016, the Court entered a joint pretrial scheduling order setting

May 26, 2016 as the deadline to complete discovery [Landlord Action Dkt. No. 19].  The order

was subsequently amended multiple times to extend the close of all discovery to August 10,

2016.  *See* Transcript of Hearing at 8:13-14, 9:11-16, *Blue Dog at 399, Inc. v. BP 399 Park

Avenue LLC*, No. 15-01097 (Bankr. S.D.N.Y. July 19, 2016) (the "July 19 Hearing Transcript"),

attached as **Exhibit F**.

15.     On May 18, 2016, the Debtor filed an application (the "Retention Application") to

retain the Firm as special litigation counsel to prosecute the Landlord Action [Main Case Dkt.

No. 60], which was approved on June 13, 2016 [Main Case Dkt. No. 67].

16.     On September 30, 2016, the Landlord filed a motion for summary judgment in the

Landlord Action [Landlord Action Dkt. No. 35].  During a December 15, 2016 hearing on this

motion, the Court excluded the Debtor's proposed expert witnesses as untimely and denied the

Landlord's summary judgment motion.  Transcript of Hearing, *Blue Dog at 399, Inc. v. BP 399

Park Avenue, LLC*, No. 15-01097 (Bankr. S.D.N.Y. Dec. 15, 2016), attached as **Exhibit G** (the

"December 15 Hearing Transcript").

17.     On January 25, 2017, two days before trial was to commence, counsel to the

Landlord suggested that the Landlord Action be referred back for further mediation and that the

trial be adjourned [Landlord Action Dkt. No. 57].  The mediation sessions were held, again

before Judge Garrity, on February 8 and 10, 2017, and Seyfarth's representatives were present at

both sessions, as was Ms. Slavutsky on behalf of the Debtor.  *See Declaration of Adrian*

*Zuckerman in Support of Motion for Leave to Withdraw as Counsel* (the "Zuckerman Declaration") [Landlord Action Dkt. No. 65-1].  During the mediation, Seyfarth obtained concessions from the Landlord that could not have been obtained through a trial, leading to what seemed to be an agreement by all parties to the terms of a new lease for the Premises (the "New Lease").  (Zuckerman Declaration ¶ 8).  If consummated, this settlement would have allowed Blue Dog to operate what by its own account would have been a profitable business at the Premises, thereby avoiding years of protracted litigation/mediation with the Landlord and giving it the opportunity to earn the alleged lost profits it now seeks to recover from Seyfarth.

18.    However, the settlement brokered by Judge Garrity, and to which Ms. Slavutsky expressly agreed by allocution, was never brought before the Court for approval.  Following the February 2017 mediation, Ms. Slavutsky attempted to alter the terms of the settlement, contrary to Seyfarth's advice.  In addition, Ms. Slavutsky continued to accrue legal fees payable to Seyfarth.  Due to these disputes, the relationship deteriorated between Seyfarth and its client, the Debtor.  (Zuckerman Declaration ¶¶ 17-19).  As a result, on April 14, 2017, Seyfarth filed a motion for leave to withdraw as counsel to the Debtor (the "Withdrawal Motion") [Landlord Action Dkt. No. 62-1], which was granted on July 5, 2017 [Landlord Action Dkt. No. 76].

19.    More than a year after Seyfarth's withdrawal as counsel for Blue Dog in the Landlord Action, the Debtor filed a motion for entry of an order approving a settlement agreement reached between the Debtor and the Landlord (the "Settlement Agreement") [Main Case Dkt. No. 169], which was vastly inferior to the settlement terms negotiated by Seyfarth. Under the terms of the Settlement Agreement, the Debtor assumed the Lease, which was then deemed to be immediately terminated and of no further force and effect, and the Premises were surrendered by the Debtor to the Landlord.  [Main Case Dkt. No. 169-2, ¶ 2(a)].  The Settlement

Agreement provided for a $300,000 payment to the Debtor, but the Landlord would be entitled to

retain the approximately $160,000 in Blue Dog funds it held in escrow, resulting in a net cash

benefit to the Debtor of only $140,000.  *Id*. at ¶ 2(b).  Additionally, Blue Dog surrendered all of

its improvements to the demised Premises.  *Id*. at ¶ 2(a).  This Court issued an order approving

the Settlement Agreement on January 24, 2019 [Main Case Dkt. No. 184].

### C.    The Adversary Proceedings Against Seyfarth

20.    On June 19, 2018, the Debtor filed the original complaint in the 2018 Action.

Pursuant to a briefing schedule agreed to among the parties, Seyfarth filed a motion to dismiss

that complaint on August 8, 2018 [2018 Action Dkt. No. 7] (the "2018 Motion to Dismiss").

21.    After reviewing the 2018 Motion to Dismiss, Blue Dog filed the 2018 Amended

Complaint on August 30, 2018.  [2018 Action Dkt. No. 12].  The 2018 Amended Complaint

included a claim for declaratory relief that Seyfarth acted negligently, a claim for

negligence/legal malpractice, and a claim for statutory treble damages under Section 487 of the

New York Judiciary law ("Section 487").

22.    On September 28, 2018, Seyfarth filed a motion to dismiss the 2018 Amended

Complaint [2018 Action Dkt. No. 16] (the "Second Motion to Dismiss"), on the grounds that the

Court lacked subject matter jurisdiction as there was no live case or controversy and the

Amended Complaint failed to state any claims on which relief could be granted.

23.    During the hearing held on November 20, 2018, this Court dismissed Blue Dog's

Section 487 claim with prejudice.[1]  *See* November 20 Hearing Transcript, attached as **Exhibit E**,

---

[1] Blue Dog voluntarily withdrew its claim for declaratory judgment prior to the hearing.

at 33:17-23.  This Court dismissed Blue Dog's negligence/legal malpractice claim without

prejudice but made clear that the claim suffered from a causation issue:

> There is no hint in your complaint that -- of any suggestion that you would
> have turned down that mediation or refused that mediation or insisted on
> going to trial, despite the landlord's offer, if only Seyfarth hadn't lost your
> expert witnesses.   And in the absence of that there is zero causal
> connection that's pleaded between the expert witness point and the delays
> that have resulted from the world's longest mediation that seems to be
> going on now.
>
> * * *
>
> But you haven't shown any delays that are attributable to what you're
> really mainly complaining about, which is the failure to designate experts
> in a timely way.  You have not shown that that caused delays, you have
> not shown that that had any connection to the long mediation that has
> happened, and as I said, that would require a connection that somehow
> would have suggested that either you would have gone straight to trial or
> that the mediation somehow would be easier and over with.  There's no
> such allegation.

*Id*. at 16:8-15, 16:24-17:8, attached as **Exhibit E**.  This Court's rulings were memorialized in the

First Dismissal Order dated December 6, 2018, attached as **Exhibit A**.

24.      Blue Dog initiated this adversary proceeding by filing the New Adversary

Complaint on February 26, 2019 [Dkt. No. 1].  Seyfarth moved to dismiss, which the Court

granted, highlighting numerous pleading deficiencies on the issue of causation:

> I'm going to grant the motion to dismiss because, as pleaded, there is no
> causal connection between the conduct that is alleged and the damages
> that are sought. The damages that are sought are based on what allegedly
> would have been won if the case had gone to trial and had succeeded.
> Whereas, in fact, there is no allegation anywhere in the complaint that you
> would have gone to trial if this conduct hadn't occurred and that this
> conduct was the reason why you didn't go to trial. There's no allegation
> that you would have turned down the mediation, no allegation that you
> would have wound up – there's an allegation that you had a weaker hand,
> but no allegation that, in mediation, you would have accomplished the
> outcome that a successful trial would have accomplished. And so, there's
> no connection between what you allege your harm was and what the
> conduct was.

*See* May 21 Hearing Transcript attached as **Exhibit D**, at 24:9-24.  The Court provided Blue Dog with leave to amend one final time, together with an outline of the kinds of specific additional allegations that would be required to survive a motion to dismiss:

> You can have leave to replead. To the extent your allegation is that your mediation outcome was worse than it might otherwise have been, you should at least say in what way. . .  And you should explain what the causal connection is. You only have one more chance at this.

*Id*. at 24:25-25:6.

25.     Short of writing an amended complaint for the Debtor, the Court could not have been more explicit that the Debtor must plead specific facts establishing the scope of the harm it allegedly suffered and the causal connection between that harm and Seyfarth's actions.  Despite that clear direction, the Amended Complaint still identifies "zero causal connection" between Seyfarth's conduct and any actionable harm to Blue Dog.

## III.     ARGUMENT

### A.     Legal Standard and Judicial Notice

26.     To survive a motion to dismiss pursuant to Rule 12(b)(6), which is applicable to these proceedings under Bankruptcy Rule 7012, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678.  While the court must accept all factual allegations in the complaint as true and draw all

reasonable inferences in the plaintiff's favor, it need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action . . . ." *Id.* at 678, 681 (citing *Twombly*, 550 U.S. at 555).

27.    To decide a motion to dismiss, the court "may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted). The Court may also consider "matters of which judicial notice may be taken . . . ." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Courts in the Second Circuit routinely take judicial notice of facts that are outside the complaint and not subject to reasonable dispute under both case law and Federal Rule of Evidence 201. *See, e.g.*, *Flaxer v. Gifford (In re Lehr Constr. Corp.)*, 528 B.R. 598, 606 (Bankr. S.D.N.Y. 2015), *aff'd*, 551 B.R. 732 (S.D.N.Y. 2016), *aff'd*, 666 Fed. Appx. 66 (2d Cir. 2016). Courts in the Second Circuit and elsewhere have also routinely taken notice in an adversary proceeding of a debtor's main bankruptcy case and other related adversary proceedings. *See, e.g.*, *Levine v. Egidi*, No. 93 C 188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) ("In effect, the bankruptcy judge took judicial notice of his own docket—a permissible undertaking."); *Katzenstein v. VIII SV5556 Lender, LLC (In re Saint Vincent's Catholic Med. Ctrs. of N.Y.)*, 440 B.R. 587, 599 (Bankr. S.D.N.Y. 2010) (taking judicial notice of the docket in the underlying bankruptcy case); *In re Campbell*, 500 B.R. 56, 59 n.7 (Bankr. D.N.M. 2013) (taking judicial notice of the entire file in the case for sake of completeness as a bankruptcy court has the inherent authority to take judicial notice of entries on its own docket).

28.     Here, the Court has presided over the Landlord Action in which the alleged

malpractice occurred, as well as the underlying main bankruptcy case, and has first-hand

knowledge regarding the circumstances giving rise to the Settlement Agreement and many of the

Debtor's allegations.  The Court is thus well-positioned to evaluate both the plausibility and

sufficiency of the Debtor's claims against Seyfarth in this adversary proceeding and to find that

Blue Dog has failed to state a claim for legal malpractice.

**B.      The Debtor Fails to State a Claim for Legal Malpractice**

29.     In order to state a claim for legal malpractice under New York law, a plaintiff

must allege that "the attorney failed to exercise the ordinary reasonable skill and knowledge

commonly possessed by a member of the legal profession, and that the attorney's breach of this

duty proximately caused the plaintiff to sustain actual and ascertainable damages."  *See Buckskin*

*Realty Inc. v. Greenberg (In re Buckskin Realty Inc.)*, Adv. No. 15-01203-NHL, 2017 WL

1283458, at *3 (Bankr. E.D.N.Y. Apr. 5, 2017) (citing *Rudolf v. Shayne, Dachs, Stanisci, Corker*

*& Sauer*, 867 N.E.2d 385, 387 (N.Y. 2007)).  The causation requirement, "a high bar to attorney

malpractice liability, seeks to insure a tight causal relationship exists between the claimed

injuries and the alleged malpractice, and demands a nexus between loss and injury."  *Flutie Bros.*

*LLC v. Hayes*, No. 04 CIV 4187, 2006 WL 1379594 (DAB), at *5 (S.D.N.Y. May 18, 2006)

(citation and internal quotation marks omitted).  The "but for" prong requires that the trier of fact

in effect "decide a lawsuit within a lawsuit, because it demands a hypothetical re-examination of

the events at issue absent the alleged malpractice."  *Id.* (citation omitted).  *See also Weil, Gotshal*

*& Manges, LLP v. Fashion Boutique of Short Hills, Inc.*, 780 N.Y.S.2d 593, 596 (App. Div.

2004) ("[T]o establish the elements of proximate cause and actual damages, where the injury is

the value of the claim lost, the client must meet a 'case within the case' requirement,

demonstrating that 'but for' the attorney's conduct the client would have prevailed in the

underlying matter or would not have sustained any ascertainable damages . . . .") (citations omitted).

30.    Blue Dog asserts that Seyfarth failed to disclose its experts in a timely manner, resulting in the exclusion of expert testimony.  (Amended Complaint ¶ 41.)  The Debtor claims that it needed the excluded experts to "prove elements of [its] claims at trial . . . and to prove its damages thereon.  (Amended Complaint ¶ 42).  The Debtor's allegations about the need for expert testimony are deficient on their face and contradicted by the record in the Landlord Action.

31.    The Debtors' allegations are deficient on their face because the Debtor does not explain what evidence the excluded experts were to provide that could not have been established through other means.  The Debtor's citation to statements by Mr. Berman to the Court that expert testimony was "a fairly important part of our case" (Amended Complaint ¶ 29) do not cure this omission, because such statements constitute advocacy, not admission, and are therefore "not evidence of any of the claims made in the underlying lawsuit[]."  *Power Control Devices, Inc. v. Lerner*, 437 P.3d 66, 73 (Kan. Ct. App. 2019).  *See also Encyclopaedia Britannica, Inc. v. Dickstein Shapiro*, *LLP*, 905 F. Supp. 2d 150, 154-55 (D.D.C. 2012) ("An entity acting as a lawyer to a client is fundamentally differently situated than an entity acting in its own interest in subsequent malpractice litigation.  . . . [A]s a lawyer representing a client, a firm defends the strengths of the client's position while in malpractice litigation it seeks to demonstrate the opposite, i.e., that the client would have lost.  A lawyer cannot be faulted for this inherent inconsistency, and where a party cannot be faulted, applying judicial estoppel is often inappropriate.").  The Amended Complaint also cites comments by Mr. Zuckerman in an email to a representative of Blue Dog that "[w]e are more likely than not going to need an affidavit

from him [the expert witness] to oppose any [summary judgment] motion the landlord may make

to pare down the claims and then need his testimony for the hearing…." (Amended Complaint

¶ 30). This citation is similarly inconclusive, as Mr. Zuckerman's comments are, on their face,

speculative and could plausibly reflect nothing more than a colloquial expression of the

attorney's belief that expert testimony might be preferable to other methods of proving the

Debtor's claims.

32.    To understand the importance (or lack thereof) of the excluded expert testimony,

one must first understand the claims and defenses being asserted by each party. The crux of the

Debtor's claims in the Landlord Action were as follows: Under the prevention doctrine the

Debtor was entitled to specific performance by the Landlord (i.e., to reinstatement of the Lease),

and to damages for wrongful eviction because (a) the Landlord frustrated the Debtor's ability to

open for business within the time required under the prior stipulation between the parties and,

(b) the Debtor was otherwise ready, willing and able to open on time. *See* Revised Joint Pretrial

Order (Proposed) [Landlord Action Dkt. No. 60], attached as **Exhibit H**, at 3, 6.

33.    The Landlord disputed each of these points, arguing, among other things, that it

did not improperly or unjustifiably frustrate Blue Dog's effort to open by failing to attend an

inspection after 6 p.m. on the night before the opening deadline and, even if it had, Blue Dog was

not otherwise ready to open because it had not complied with certain New York Department of

Health and Fire Department regulations. *Id*. at 8-10.

34.    Seyfarth attempted to submit expert testimony in support of arguments that Blue

Dog could have opened on time but for the Landlord's actions because the New York

Departments of Health and the Fire Department had a regular policy and practice of permitting

businesses to open despite technical failures to comply or complete certain regulatory

requirements.  *See* December 15 Hearing Transcript at 6:2-7, attached as **Exhibit G** ("Your two

experts have proposed to testify generally about the requirements in New York regarding

whether you can open without a health department permit and whether you can open without

having already filed your certifications with the fire department as to the fire alarm system.").

35.     The Court struck these reports as untimely, but noted that, <u>even in the absence of</u>

<u>such expert testimony</u>, Blue Dog could potentially still satisfy the prevention doctrine by

showing that it relied on statements by the Landlord that technical compliance with those

regulations would not be required.  *Id*. at 16:18-22 ("part of their argument as to why your failure

to show up was the cause of their failure is their contention that you had previously agreed that

that was the only thing left to be done."); *id*. at 21:18-23; 22:8-10 ("what they have said is that

you agreed that it didn't have to be done by the 28th.  And that is sufficient, if they can prove it,

and if they can prove that's why they were unable to satisfy that condition, that's sufficient to

raise a factual issue for me to resolve on the prevention doctrine…If you tell somebody they

don't have to do something, you can't terminate their contract when they fail to do it.").  As a

result, the question of whether Blue Dog was otherwise ready, willing and able to open was a

factual one based on the communications between the parties in the weeks leading up to the

opening deadline, and Blue Dog did not need expert testimony to establish that the Landlord was

liable under the prevention doctrine.

36.     In addition, Seyfarth had prepared an expert report calculating Blue Dog's lost

profits during the period following its eviction through the trial.  In the absence of that report,

however, there was no reason Blue Dog could not instead submit the fact testimony of its

principal, Elizabeth Slavutsky to testify about what profits her other three café locations

generated historically, which could provide a logical point of comparison.  And, in fact, the list

of trial exhibits Seyfarth intended to submit at trial, which included menus, tax returns, and

profit-and-loss statements for those businesses, shows she was prepared to do just that.  *See*

Revised Joint Pretrial Order (Proposed), attached as **Exhibit H**, at 22-24.

37.    The exclusion of the Debtor's expert testimony had no effect on the Landlord's

summary judgment motion, which the Landlord lost, and it cannot be shown what, if any, effect

the exclusion of certain expert testimony would have had if the matter had gone to trial, or on the

Debtor's final resolution of the Landlord Action.  In short, the Debtor's allegations regarding

causation are conclusory, implausible and speculative.  "Mere speculation of a loss resulting

from an attorney's alleged omissions is insufficient to sustain a prima facie case in malpractice."

*Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 395 (S.D.N.Y. 2000) (citation omitted).  *See also*

*Buckskin Realty*, 2017 WL 1283458, at *6 (holding that plaintiff did not adequately plead

proximate cause, because plaintiff "has not shown that the proffered argument would have

changed the outcome of the [underlying action].").

38.    The Amended Complaint also ignores the Court's instruction that, "[t]o the extent

your allegation is that your mediation outcome was worse than it might otherwise have been, you

should at least say in what way."  *See* May 21 Hearing Transcript, attached as **Exhibit D**, at

24:25-25:3 (emphasis added).  The Amended Complaint states only that, "Blue Dog was

rendered unable to negotiate a settlement consistent with the strength of its liability and damages

claims, and was forced to accept a substantially smaller settlement."  (Amended Complaint ¶ 61.)

This bare bones allegation that Blue Dog would have done better at mediation if its experts had

not been excluded is insufficient to establish harm in the context of a legal malpractice case.  "[A]

plaintiff's conclusory allegations that merely reflect a subsequent dissatisfaction with the

settlement, or that the plaintiff would be in a better position but for the settlement, without more,

do not make out a legal malpractice cause of action." *Maroulis v. Sari M. Friedman, P.C.*, 60

N.Y.S.3d 468, 470 (App. Div. 2017) (dismissing claim for legal malpractice because "the

complaint failed to plead specific factual allegations demonstrating that, but for [counsel's]

alleged negligence, there would have been a more favorable outcome in the underlying

matrimonial action.").  Indeed, the Court already warned Blue Dog that its pleadings were

deficient in this respect because "there's an allegation that you had a weaker hand, but no

allegation that, in mediation, you would have accomplished the outcome that a successful trial

would have accomplished."  May 21 Hearing Transcript, attached as **Exhibit D**, at 24:22-24.

The Amended Complaint fails to remedy this shortcoming, requiring dismissal.

## IV.    CONCLUSION

Plaintiff's fourth attempt to plead a negligence claim that will survive a motion to dismiss

and enable it to extract a windfall from its former counsel still lacks the essential linkage

between the alleged cause and any claimed damages.  For the reasons stated in this motion, the

Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety

with prejudice.

*[Signature Page Follows]*

Dated: June 27, 2019
      New York, New York

Respectfully submitted,

MORRISON & FOERSTER LLP

/s/ James M. Peck

James M. Peck
Grant J. Esposito
Erica J. Richards
250 West 55th Street
New York, New York 10019-9601
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Email: JPeck@mofo.com
       GEsposito@mofo.com
       ERichards@mofo.com

*Counsel to the Defendants*