Scott Michael Hare, Esquire
Special Counsel to Blue Dog at 399 Inc.
437 Grant Street – Suite 1806
Pittsburgh, PA 15219
(412) 338-8632
scott@scottlawpgh.com


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re                                                                    Chapter 11

BLUE DOG AT 399 INC.,                                     Case No. 15-10694-mew


                                 Debtor.
-------------------------------------------------------x
BLUE DOG AT 399 INC.,

                                 Plaintiff,                    Adv. Pro. No. 19-1029-mew

           -against-

SEYFARTH SHAW, LLP and
RALPH BERMAN,

                                 Defendants.
-------------------------------------------------------x

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## MOTION TO DISMISS AMENDED ADVERSARY COMPLAINT

## <u>TABLE OF CONTENTS</u>

I.    **Introduction and Summary** ........................................................................................ 1

II.    **Facts Alleged in the Amended Complaint** ...................................................... 5

III.    **Argument** ..................................................................................................... 13

    A.    Legal Standard Governing the Motion to Dismiss ................................... 13

    B.    BD has Stated a Claim for Malpractice ................................................. 14

    C.    BD Thoroughly and Plausibly Alleged Proximate Causation ............................ 17

    D.    The Court Should Reject (Again) Defendants' Abandoned "Incurable
    Causation" Argument ........................................................................ 19

    E.    The Court Should Ignore Defendants' Invitation to Litigate the Merits .............. 21

IV.    **Conclusion** ..................................................................................................... 23

## I.    *Introduction and Summary*

Pending before the Court is a one-count Amended Complaint filed by Plaintiff Blue Dog at 399 Inc. ("BD" or "Debtor") against Defendants Seyfarth Shaw, LLP and Ralph Berman stating a claim for negligence/legal malpractice. Adv. Doc. 10. The Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that BD failed to state a claim on which relief may be granted and that BD ignored a "virtual roadmap of what additional allegations must be included" to survive a motion to dismiss. Adv. Doc. No. 12 *passim*, ¶ 5, pp. 2-3. To the contrary, a careful examination of the Amended Complaint alongside the Court's "virtual roadmap" reveals that BD has explicitly pled precisely the additional items expected by the Court.

At oral argument held on May 21, 2019, the Court questioned the parties as follows:

THE COURT [addressing defense counsel]:        But plausibility isn't all that high a test. Now I may have some questions for your opponent as to just what connections they have actually alleged. *But if the Complaint said that Blue Dog was armed for litigation and rearing to go and would have won and only backed off from a full litigation because of these mistakes and ultimately had to agree to a deal that was less than it would have gotten in the litigation, they might not win that claim. But if they alleged that, why would it be so plausible (sic) that I should throw it out -- or so implausible -- excuse me*.

* * *

THE COURT [addressing plaintiff counsel]: So the damages you claim are what you would have won at trial. Where in your Complaint -- *show me the language that says that you would have gone to trial if it weren't for these mistakes by Seyfarth. . . . I want you to show me where you say that you would have tried this case, declined the landlord's invitation to mediation, that you actually would have gone to trial if it weren't for these mistakes because I didn't find it anywhere*.

* * *

THE COURT [addressing plaintiff counsel]: I'm going to grant the motion to dismiss because, as pleaded, there is no causal connection between the conduct that is alleged and the damages that are sought. *The damages that are sought are based on what allegedly would have been won if the case had gone to trial and had succeeded. Whereas, in fact, there is no allegation anywhere in the Complaint that you would have gone to trial if this conduct hadn't occurred and that this conduct was the reason why you didn't go to trial. There's no allegation that you would have turned down the mediation, no allegation that*

*you would have wound up -- there's an allegation that you had a weaker hand, but no allegation that, in mediation, you would have accomplished the outcome that a successful trial would have accomplished. And so, there's no connection between what you allege your harm was and what the conduct was*.

You can have leave to replead. **To the extent your allegation is that your mediation outcome was worse than it might otherwise have been, you should at least say in what way**.

Transcript dated May 21, 2019 (Adv. Doc. No. 12-5) at p.9 lines 8-18, p.15 lines 6-9, p.16 lines 4-8, p.24 line 9 - p.25 line 3 (bold italics added).

Carefully following the Court's "virtual roadmap," BD's Amended Complaint explicitly alleges, *inter alia*, as follows:

o   **Court**: If the Complaint said that Blue Dog was armed for litigation and rearing to go and would have won and only backed off from a full litigation because of these mistakes … why would it be so [im]plausible that I should throw it out[?]

•   **Amended Complaint**:        But for Seyfarth's negligence, Blue Dog would have been permitted to *call its expert witnesses on liability and damages at trial, and would have done so*. [Amended Complaint ¶ 43 (italics added)]

•   Had Seyfarth preserved the opportunity for Blue Dog to call expert witnesses at trial, Blue Dog *would have been fully able to prove the elements of its liability claims at trial* and would have been fully able to prove damages thereon. [Amended Complaint ¶ 45 (italics added)]

•   Solely and proximately because of Seyfarth's negligence, Blue Dog was rendered *unable to offer relevant, admissible evidence to prove all elements of its liability claims at trial* and unable to offer relevant, admissible evidence to prove damages thereon. [Amended Complaint ¶ 46 (italics added)]

•   Had Seyfarth preserved the opportunity for Blue Dog to call expert witnesses at trial, *Blue Dog would have proceeded to trial and verdict on its claims* in the absence of a sufficient and satisfactory settlement offer from the Landlord (either before or during trial). [Amended Complaint ¶ 47 (italics added)]

•   Instead, solely and proximately because of Seyfarth's negligence, Blue Dog was left to face the prospect of a trial in which it would be *unable to meet its evidentiary burden of proof as to both liability and damages*. [Amended Complaint ¶ 48 (italics added)]

- *But for Defendants' negligence, Blue Dog would have met its burden and offered sufficient admissible evidence to sustain a trial verdict in its favor.* [Amended Complaint ¶ 58 (italics added)]

- *As a direct and proximate result of Defendants' negligence, Blue Dog was rendered unable to prove its liability and damages claims at trial.* [Amended Complaint ¶ 59 (italics added)]

o **Court**: If the Complaint said that Blue Dog … *ultimately had to agree to a deal that was less than it would have gotten in the litigation*, why would it be so [im]plausible (sic) that I should throw it out[?]

- **Amended Complaint**:    But for Defendants' negligence, Blue Dog could have negotiated a settlement consistent with the strength of its liability and damages claims at trial and consistent with the Landlord's corresponding exposure thereon. [Amended Complaint ¶ 60]

- As a direct and proximate result of Defendants' negligence, Blue Dog was rendered unable to negotiate a settlement consistent with the strength of its liability and damages claims, and *was forced to accept a substantially smaller settlement* or risk proceeding to trial where it would be unable to prove its liability and damages claims. [Amended Complaint ¶ 61 (italics added)]

- In a reasonable effort to mitigate its damages resulting from Defendants' negligence in the underlying case, *Blue Dog agreed thereafter to settle the Landlord Action for an amount that, while greater than the offer obtained by Seyfarth, was substantially less than what Blue Dog would have proven at trial and/or would have obtained in a settlement but for the Defendants' negligence.* [Amended Complaint ¶ 62]

o **Court**: Show me the language that says that you would have gone to trial if it weren't for these mistakes by Seyfarth. I want you to show me where you say that you would have tried this case, declined the landlord's invitation to mediation, that you actually would have gone to trial if it weren't for these mistakes.

- **Amended Complaint**:    But for Seyfarth's negligence, Blue Dog would have been permitted to *call its expert witnesses on liability and damages at trial, and would have done so*. [Amended Complaint ¶ 43 (italics added)]

- Had Seyfarth preserved the opportunity for Blue Dog to call expert witnesses at trial, Blue Dog *would have been fully able to prove the elements of its liability claims at trial* and would have been fully able to prove damages thereon. [Amended Complaint ¶ 45 (italics added)]

- Had Seyfarth preserved the opportunity for Blue Dog to call expert witnesses at trial, *Blue Dog would have proceeded to trial and verdict on its claims* in the absence of a sufficient and satisfactory settlement offer from the Landlord (either before or during trial). [Amended Complaint ¶ 47 (italics added)]

- Had Seyfarth properly developed and preserved expert testimony for use at trial, *Blue Dog would have terminated the mediation promptly upon hearing the zero-dollar offer*. [Amended Complaint ¶ 52 (italics added)]

o **Court**: Whereas, in fact, there is no allegation anywhere in the Complaint that you would have gone to trial if this conduct hadn't occurred and that this conduct was the reason why you didn't go to trial. There's no allegation that you would have turned down the mediation, no allegation that you would have wound up -- there's an allegation that you had a weaker hand, but no allegation that, in mediation, you would have accomplished the outcome that a successful trial would have accomplished. And so, there's no connection between what you allege your harm was and what the conduct was.

- **Amended Complaint**:        But for Seyfarth's negligence, Blue Dog would have been permitted to *call its expert witnesses on liability and damages at trial, and would have done so*. [Amended Complaint ¶ 43 (italics added)]

- Had Seyfarth preserved the opportunity for Blue Dog to call expert witnesses at trial, Blue Dog *would have been fully able to prove the elements of its liability claims at trial* and would have been fully able to prove damages thereon. [Amended Complaint ¶ 45 (italics added)]

- Had Seyfarth preserved the opportunity for Blue Dog to call expert witnesses at trial, *Blue Dog would have proceeded to trial and verdict on its claims* in the absence of a sufficient and satisfactory settlement offer from the Landlord (either before or during trial). [Amended Complaint ¶ 47 (italics added)]

- As a direct and proximate result of Defendants' negligence, Blue Dog was rendered unable to negotiate a settlement consistent with the strength of its liability and damages claims, and *was forced to accept a substantially smaller settlement* or risk proceeding to trial where it would be unable to prove its liability and damages claims. [Amended Complaint ¶ 61 (italics added)]

- In a reasonable effort to mitigate its damages resulting from Defendants' negligence in the underlying case, *Blue Dog agreed thereafter to settle the Landlord Action for an amount that, while greater than the offer obtained by Seyfarth, was substantially less than what Blue Dog would have proven at trial and/or would have obtained in a settlement but for the Defendants' negligence*. [Amended Complaint ¶ 62]

o **Court**: To the extent your allegation is that your mediation outcome was worse than it might otherwise have been, you should at least say in what way.

- **Amended Complaint**:        As a direct and proximate result of Defendants' negligence, Blue Dog was rendered unable to negotiate a settlement consistent with the strength of its liability and damages claims, and *was forced to accept a substantially smaller settlement or risk proceeding to trial where it would be unable to prove its liability and damages* claims. [Amended Complaint ¶ 61 (italics added)]

- In a reasonable effort to mitigate its damages resulting from Defendants' negligence in the underlying case, *Blue Dog agreed thereafter to settle the Landlord Action for an amount that, while greater than the offer obtained by Seyfarth, was substantially less than what Blue Dog would have proven at trial and/or would have obtained in a settlement but for the Defendants' negligence.* [Amended Complaint ¶ 62]

- As a direct and proximate result of Defendants' negligence, *Blue Dog has suffered damages equal to the difference between the lost-profit and other damages it would have proven in the underlying Landlord Action (had it been allowed to present expert testimony, including expert testimony as to damages) and the amount it actually recovered in the eventual settlement of that action after being barred from offering any expert testimony.* [Amended Complaint ¶ 63 (italics added)]

By virtue of the foregoing allegations and those identified below, BD has sufficiently alleged facts which, taken as true, plausibly state a claim for relief (not "that high a test"), and the Motion to Dismiss should be denied.

## II.    *Facts Alleged in the Amended Complaint*

In support of its claim for negligence, BD's Amended Complaint alleges, *inter alia*, as follows.[1] Defendants Seyfarth Shaw, LLP and Ralph Berman represented BD as special litigation counsel before this Court in an adversary proceeding (now settled) entitled *Blue Dog at 399 Inc.*

---

[1]      The allegations of Plaintiffs' Amended Complaint are accepted as true for purposes of Defendants' Motion to Dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 666, 129 S. Ct. 1937, 1943 (2009)(court must examine whether plaintiff "plead factual matter that, if taken as true, states a claim"); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984)("At this stage of the litigation, we must accept petitioner's allegations as true.").

*v. BP 399 Park Avenue LLC, Adv. Pro No. 15-01097-mew* (the "Landlord Action"). Amended Complaint ¶¶ 2, 23, 27.

Blue Dog was a tenant in a building at 399 Park Avenue, New York, NY, pursuant to a lease with BP 399 Park Avenue LLC (the "Landlord") dated January 1, 2012 (the "Lease"). Amended Complaint ¶ 13. After execution of the Lease, a dispute arose between Blue Dog and the Landlord regarding various Lease terms, as a result of which the Landlord declared that Blue Dog was in default of the Lease and purported to cancel and terminate the Lease. Blue Dog denied that it was in material breach, denied that it failed to cure any alleged breach, and denied that the Landlord was entitled to declare a default or cancel and terminate the Lease. Amended Complaint ¶ 14. In light of the parties' dispute, Blue Dog filed a Verified Amended Complaint against Landlord on September 11, 2012 in the Supreme Court of the State of New York. Amended Complaint ¶ 15.

Beginning on or around March 20, 2015, Blue Dog consulted with Seyfarth regarding a possible bankruptcy filing. Amended Complaint ¶ 16. BD filed this Bankruptcy on March 24, 2015. Amended Complaint ¶ 17.

Defendants designed plans to commence an adversary proceeding in the bankruptcy case to adjudicate the claims between Blue Dog and the Landlord. Amended Complaint ¶¶ 18, 19. Defendants directed the prosecution of the Landlord Action, and among other tasks identified and determined the claims to be raised therein, drafted the complaint, designed and directed all discovery matters, designed and drafted case management and discovery scheduling orders, and identified and cultivated expert witnesses to support BD's claims. Amended Complaint ¶¶ 18-22, 25, 29, 32, 35, *passim*.

On May 18, 2016, BD filed an Application of the Debtor for Entry of an Order Authorizing Employment and Compensation of Seyfarth Shaw, LLP as Special Litigation Counsel for the Debtor in the Landlord Action. Amended Complaint ¶ 23. The Court approved the Seyfarth retention application by Order dated June 13, 2016. Amended Complaint ¶ 27.

Pursuant to the Amended Joint Pretrial Scheduling Order dated April 8, 2016 that Defendants helped to draft, expert reports were due on May 19, 2016. Amended Complaint ¶ 25. Defendants did not seek any extension to this deadline. Instead, Defendants neglected this deadline and neglected to serve any expert reports. *Id*. Pursuant to the same Amended Joint Pretrial Scheduling Order, the deadline for expert depositions was June 2, 2016. Defendants did not seek any extension to this deadline either, but instead ignored this deadline as well and neglected to schedule any expert depositions. Amended Complaint ¶ 26.

After the existing discovery deadlines had passed, Defendants asked the Court to extend discovery. The Court accommodated this request, extending the deadline to complete discovery until August 10 and the deadline for pretrial submissions to August 18. The Court cautioned the parties "I won't make any other changes to the schedule. We will have our final pretrial on the 18th and we will then set a trial date. Okay?" Hearing Transcript, p.8. In response, Berman raised the issue of expert reports, requesting "once we do finish with fact witnesses, there was a period of time for the exchanging of expert reports and expert depositions. I thought we could still accommodate that. That's a fairly important part of our case." Hearing Transcript, p.9, lines 1-5. This Court summarily rejected Berman's proffered rationale as "utter nonsense," admonishing that "There's no reason why you can't get your experts done within the normal discovery schedule or why they have to wait until the fact witnesses are done. So you should have been working on that already." Hearing Transcript, p.9, lines 11-14. Nonetheless, this Court granted the requested relief

and extended expert discovery to August 10, warning once again "I'm not going to extend it any further." Hearing Transcript, p.9, lines 15-16. Berman acknowledged there would be no further extensions, agreeing "Very good, Your Honor." Hearing Transcript, p.9, line 17. Amended Complaint ¶ 29.

By email dated August 8, 2016, Seyfarth attorney Zuckerman contacted Blue Dog to emphasize the importance of contemplated expert testimony and alluding to the likelihood of an upcoming summary judgment motion: "We are more likely than not going to need an affidavit from him [the expert witness] to oppose any [summary judgment] motion the landlord may make to pare down the claims and then need his testimony for the hearing [that is, trial]." Amended Complaint ¶ 30.

Once again, Seyfarth missed the extended deadline of August 10, 2016 and failed to serve any expert reports or schedule expert depositions. Amended Complaint ¶ 31.

The following day, August 11, 2016, after the final August 10 expert deadline had elapsed, Seyfarth attempted for the first time to retain a damages expert, Gary Levy, CPA, the Hospitality Industry Practice Leader of CohnReznick LLP, to prepare a report opining to "the lost profits our client could have made had the café opened." Amended Complaint ¶ 32.

As Seyfarth understood and acknowledged, expert testimony was necessary to prove the elements of Blue Dog's case in the Landlord Action. Seyfarth intended to proffer experts to meet Blue Dog's burden and, apart from repeatedly missing the governing deadlines, took steps to develop such expert testimony. Amended Complaint ¶¶ 33, 35.

After the final extended deadline for expert reports had passed, the Landlord filed a motion for summary judgment on September 30, 2016 [Docket No. 35 in the Landlord Action]. Amended Complaint ¶ 34. On November 30, 2016, Seyfarth filed a response in opposition to the motion for

summary judgment on behalf of Blue Dog [Docket No. 45 in the Landlord Action]. Attached to the response in opposition, Seyfarth filed and served, for the first time, the declarations of two expert opinion witnesses, Dean Stracuzza [Docket No. 45-3 in the Landlord Action] and Lamar Jermaine Russell [Docket No. 45-5 in the Landlord Action], both of which were dated that same day. Amended Complaint ¶ 35.

By letter dated December 2, 2016 [Docket No. 47 in the Landlord Action], counsel for the Landlord objected to the submission of expert declarations from two undisclosed opinion witnesses who were never previously identified as required by Fed. R. Civ. P. 26(a)(2)(A), and whose reports were due (on extension) by August 10, 2016, yet were never produced as required by Fed. R. Civ. P. 26(a)(2)(B). The Landlord objected that the "last-minute submission by the debtor of declarations by two previously undisclosed expert witnesses, without having ever (much less timely) provided the Landlord with required expert reports is patently unfair and violates this Court's deadlines for expert disclosures." For this reason, the Landlord requested a conference to consider a motion to strike, and further requested that Blue Dog "be barred from offering the Russell and Stracuzza declarations, and from presenting any other expert witness testimony whatsoever in this case." Amended Complaint ¶ 36.

As requested, the Court held a hearing on the motion to strike on December 15, 2016. *See* Hearing Transcript [Docket No. 52 in the Landlord Action]. After reviewing the expert disclosure requirements in the Federal Rules and the Court's own scheduling orders, the Court orally granted the Landlord's motion to strike and barred Blue Dog from using experts at trial. Amended Complaint ¶ 37.

The hearing on December 15, 2016 was the first time Blue Dog learned that Seyfarth had missed expert deadlines and had failed to produce timely disclosures. Prior to that hearing, Blue

Dog understood from Seyfarth that it was taking all necessary steps to develop needed expert testimony. Amended Complaint ¶ 38.

Consistent with its oral ruling from the bench, the Court thereafter issued an order dated December 19, 2016 [Docket No. 51 in the Landlord Action] striking the expert witness declarations filed by Seyfarth and barring Blue Dog from using those individuals as expert witnesses in connection with any motion, hearing or trial in the Landlord Action. The Court additionally scheduled the Landlord Action for trial on January 27, 2017, approximately one month later. Amended Complaint ¶ 39.

On January 13, 2017, Seyfarth filed a Motion in Limine [Docket No. 53 in the Landlord Action] to preclude the Landlord from offering certain evidence at trial. On January 20, 2017, the Landlord filed its Response [Docket No. 55 in the Landlord Action], including its own request to strike four new witnesses who had never been identified by Seyfarth until just days earlier. *See* Landlord's Response, pp. 32-35 [Docket No. 55 in the Landlord Action]. Specifically, the Landlord recounted that on January 16, 2017, Seyfarth identified, for the first time, three new witnesses that were never before disclosed, followed by the identification of a fourth undisclosed new witness on January 17, 2017. The Landlord objected that the newly-disclosed witnesses were offered to provide expert testimony in violation of the Court's December 19, 2016 Order barring Blue Dog from calling expert witnesses at trial. Amended Complaint ¶ 40.

The Court convened a hearing on the dueling motions *in limine* on January 25, 2017. *See* Hearing Transcript [Docket No. 61 in the Landlord Action]. During the hearing, the Court determined, once again, that Seyfarth failed to provide timely expert disclosures and would therefore be barred from offering any experts at trial, observing "if that leaves you with a difficulty

of proof, that's your own fault, for not designating experts when you should have." Amended Complaint ¶ 41.

The inability to call expert witnesses left Blue Dog with insurmountable difficulties of proof at the upcoming scheduled trial. In particular, Seyfarth had developed expert witnesses as to both liability and damages. These experts were necessary to prove elements of Blue Dog's claims at trial, including the elements of its claims for declaratory judgment, breach of lease and breach of the implied covenant of good faith and fair dealing, and to prove its damages thereon. Amended Complaint ¶ 42. But for this negligence, Blue Dog would have been permitted to call its expert witnesses on liability and damages at trial, and would have done so. Amended Complaint ¶ 43. Solely and proximately because of Seyfarth's negligence, Blue Dog was barred from calling any expert witnesses at trial, whether as to liability or damages. Amended Complaint ¶ 44. Had Seyfarth preserved the opportunity for Blue Dog to call expert witnesses at trial, Blue Dog would have been fully able to prove the elements of its liability claims at trial and would have been fully able to prove damages thereon. Amended Complaint ¶ 45. Solely and proximately because of Seyfarth's negligence, Blue Dog was rendered unable to offer relevant, admissible evidence to prove all elements of its liability claims at trial and unable to offer relevant, admissible evidence to prove damages thereon. Amended Complaint ¶ 46. Had Seyfarth preserved the opportunity for Blue Dog to call expert witnesses at trial, Blue Dog would have proceeded to trial and verdict on its claims in the absence of a sufficient and satisfactory settlement offer from the Landlord (either before or during trial). Amended Complaint ¶ 47. Instead, solely and proximately because of Defendants' negligence, Blue Dog was left to face the prospect of a trial in which it would be unable to meet its burden of proof as to liability and damages. Amended Complaint ¶ 48.

Prior to trial on January 27, 2017, the Court directed the parties to return to mediation, which occurred on February 8 and 10, 2017. Amended Complaint ¶ 49. Solely and proximately because of Seyfarth's negligence, which left Blue Dog unable to meet its evidentiary burden of proof at trial (a handicap that the Landlord and its lawyers fully understood), Blue Dog was likewise unable to exercise any strength and leverage in negotiating with the Landlord at mediation, thus leaving it unable to achieve a sufficiently meaningful offer to warrant settlement. Amended Complaint ¶ 50. Indeed, recognizing the impaired state of Blue Dog's case heading into trial, the Landlord stated at the outset of the mediation that there would be "no money on the table," and offered only to allow Debtor, at some unspecified future date as much as two years later, to resume possession of the leasehold premises, but with no payment of damages for lost revenue, the costs of delay or otherwise. Amended Complaint ¶ 51. Had Seyfarth properly developed and preserved expert testimony for use at trial, Blue Dog would have terminated the mediation promptly upon hearing the zero-dollar offer. Amended Complaint ¶ 52. Unfortunately, however, and likewise recognizing the impaired state of Blue Dog's case in which Blue Dog could not present expert testimony (at Seyfarth's own doing), Seyfarth advised Blue Dog to accept the Landlord's vaguely-defined zero-dollar offer. Amended Complaint ¶ 53.

No settlement was achieved at mediation, and the docket remained quiet for the next two months until April 14, 2017, when Seyfarth filed a Motion for Leave to Withdraw [Docket No. 62 in the Landlord Action; Docket No. 79 in the Debtor's lead case]. Amended Complaint ¶ 54. Blue Dog - now represented by new counsel - responded to the Motion for Leave to Withdraw by filing an Application asking the Court to deny the Motion in part [Docket No. 63 in the Landlord Action; Docket No. 81 in the Debtor's lead case]. In its Application, Blue Dog recounted that Seyfarth missed critical deadlines in the Landlord Action, impacting not only the prosecution of the case

but also the lawyer-client relationship. For this reason, Blue Dog agreed that it was critical for it to change counsel in an effort to salvage the case. Conversely, Blue Dog opposed the Motion for Leave to Withdraw to the extent it sought to recover fees, to impose any liens, or otherwise to blockade Blue Dog's efforts to prepare the case for trial by withholding the case file. Amended Complaint ¶ 55.

After considerable further negotiations and considerable expense to Blue Dog, its new counsel were able to negotiate a settlement in the Landlord Action providing, inter alia, for the payment to Blue Dog of $300,000, the assumption and consensual termination of the lease and a full waiver of the Landlord's considerable administrative claim for cure payments. Amended Complaint ¶ 56. But for Defendants' negligence, Blue Dog could have proven its liability and damages claims at trial. Amended Complaint ¶ 57. But for Defendants' negligence, Blue Dog would have met its burden and offered sufficient admissible evidence to sustain a trial verdict in its favor. Amended Complaint ¶ 58. As a direct and proximate result of Defendants' negligence, Blue Dog was rendered unable to prove its liability and damages claims at trial. Amended Complaint ¶ 59. But for Defendants' negligence, Blue Dog could have negotiated a settlement consistent with the strength of its liability and damages claims at trial and consistent with the Landlord's corresponding exposure thereon. Amended Complaint ¶ 60. As a direct and proximate result of Defendants' negligence, Blue Dog was rendered unable to negotiate a settlement consistent with the strength of its liability and damages claims, and was forced to accept a substantially smaller settlement or risk proceeding to trial where it would be unable to prove its liability and damages claims. Amended Complaint ¶ 61.

In a reasonable effort to mitigate its damages resulting from Defendants' negligence in the underlying case, Blue Dog agreed thereafter to settle the Landlord Action for an amount that, while

greater than the offer obtained by Seyfarth, was substantially less than what Blue Dog would have proven at trial and/or would have obtained in a settlement but for the Defendants' negligence. Amended Complaint ¶ 62. As a direct and proximate result of Defendants' negligence, Blue Dog has suffered damages equal to the difference between the lost-profit and other damages it would have proven in the underlying Landlord Action (had it been allowed to present expert testimony, including expert testimony as to damages) and the amount it actually recovered in the eventual settlement of that action after being barred from offering any expert testimony. Amended Complaint ¶ 63. As a further direct and proximate result of Defendants' negligence, Blue Dog has also suffered damages equal to the added costs and attorneys' fees necessarily incurred by Blue Dog to retain new counsel to replace Seyfarth after it withdrew from the Landlord Action and to continue the prosecution and settlement of that action. Amended Complaint ¶ 64.

## III.   _Argument_

### A.   Legal Standard Governing the Motion to Dismiss

The standard governing Defendants' motion to dismiss under Rule 12(b)(6) is well known to this Court:

> Rule 7012(b) of Federal Rules of Bankruptcy Procedure, which incorporates Federal Rule of Civil Procedure 12(b)(6), permits a bankruptcy court to dismiss an adversary proceeding if a complaint fails to state a claim upon which relief may be granted. _See_ Fed. R. Bankr. P. 7012(b). In reviewing a motion to dismiss the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in the plaintiffs' favor. _Ashcroft v. Iqbal_, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); _E.E.O.C. v. Staten Island Sav. Bank_, 207 F.3d 144, 148 (2d Cir. 2000). However, the factual allegations in a complaint must be supported by more than mere conclusory statements. _Twombly_, 550 U.S. at 555. The allegations must be sufficient "to raise a right to relief above the speculative level" and provide more than a "formulaic recitation of the elements of a cause of action." _Id._ (citations omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." _Iqbal_, 556 U.S. at 679 (_citing Twombly_, 550 U.S. at 556).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Fed. R. Civ. P. 8(a) because it has merely "alleged" but not "show[n] ... that the pleader is entitled to relief." *Id.* at 679; *see also id.* at 682 (allegations in a complaint are rejected where there is an "obvious alternative explanation" for the conduct alleged that is more "likely") (internal quotation marks and citation omitted).

*Music Mix Mobile, LLC v. Newman (In re Stage Presence, Inc.)*, 555 B.R. 166, 172 (Bankr. S.D.N.Y. 2016)(Wiles, J.); *see also Nationstar Mortg. LLC v. Fein, Such & Crane LLP*, 2018 U.S. Dist. LEXIS 143068 at *5-6 (W.D.N.Y. Aug. 21, 2018)(recommending that the court deny defendants' motion to dismiss Amended Complaint alleging legal malpractice); *aff'd*, 2018 U.S. Dist. LEXIS 156285, at *1 (W.D.N.Y. Sep. 13, 2018)(adopting Magistrate Report and Recommendation and denying motion to dismiss). A "Complaint 'does not need detailed factual allegations' to survive a Rule 12(b)(6) motion to dismiss." *Spicer v. Pier Sixty LLC*, 2011 U.S. Dist. LEXIS 11959, at *9 (S.D.N.Y. Feb. 7, 2011), *quoting Ashcroft*, 129 S. Ct. at 1949.

## B.    **BD has Stated a Claim for Malpractice**

BD has sufficiently pled facts that, taken as true, establish each element of a claim for legal malpractice. The elements of a claim for legal malpractice in New York are as follows:

To prevail on a claim of legal malpractice under New York law, a plaintiff must establish four elements: (1) an attorney-client relationship; (2) attorney negligence; (3) that is the proximate cause of a loss; and (4) actual damages. *Stonewell Corp. v. Conestoga Title Ins. Co.*, 678 F. Supp. 2d 203, 208-09 (S.D.N.Y. 2010); *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 118 (2d Cir. 2005); *Estate of Re v. Kornstein Veisz & Wexler*, 958 F. Supp. 907, 920 (S.D.N.Y. 1997).

*Nationstar Mortg. LLC v. Fein, Such & Crane LLP*, *supra*, 2018 U.S. Dist. LEXIS 143068, at *7. BD has adequately alleged sufficient facts, satisfying each element of its claim, to state a claim with facial plausibility. *Iqbal*, 556 U.S. at 679.

(1)    Attorney-Client Relationship. BD alleged the existence of an attorney-client relationship. *See generally* Amended Complaint ¶¶ 2, 23, 27 (retention application), 54-55 (motion for leave to withdraw as counsel). Defendants do not dispute the existence of an attorney-client relationship. Motion to Dismiss (Adv. Doc. No. 12) *passim*, ¶ 1, p.1 ("Defendants Seyfarth Shaw LLP (the "Firm") and Ralph Berman (collectively, with the Firm, "Seyfarth") formerly served as litigation counsel to Plaintiff Blue Dog at 399 Inc.").

(2)    Attorney Negligence. To plead negligence, BD must allege that the Defendants "'failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession.'" *McCoy v. Feinman*, 99 N.Y.2d 295, 301-2 (N.Y. 2002). BD alleged Defendants' negligence in the form of multiple missed deadlines and the failure to produce timely expert reports, which Defendants acknowledged were "a fairly important part" of BD's case (Amended Complaint ¶ 29) and were necessary "to oppose any [summary judgment] motion the landlord may make" and to establish BD's claims at trial (Amended Complaint ¶ 30). Defendants do not dispute that the applicable standard of care for lawyers requires meeting, rather than neglecting, court-imposed deadlines, nor could they credibly do so. *See*, *e.g.*, *Protostorm, LLC v. Antonelli, Terry, Stout & Kraus, LLP*, 2015 WL 3605143, 2015 U.S. Dist. LEXIS 73486 (E.D.N.Y. Jun. 5, 2015)(denying motion to set aside jury verdict for legal malpractice where lawyers missed deadlines); *Glamm v. Allen*, 57 N.Y.2d 87, 93 (N.Y. 1982)("the alleged malpractice occurred when attorney Reinhart failed to file on behalf of the plaintiff a notice of claim pursuant to section 50-e of the General Municipal Law."); *Gaskin v. Harris*, 950 N.Y.S.2d 751, 752 (N.Y. App. Div.

2012)(defendant failed, *inter alia*, to advise plaintiff of the deadline for filing a notice of claim); *Rizzo v. Parlatore*, 2017 N.Y. Misc. LEXIS 799 (N.Y. Sup. Ct. 2017)(denying motion to dismiss because plaintiff sufficiently alleged malpractice where lawyers failed, *inter alia*, to meet case deadlines).

(3)    <u>Proximate Cause of a Loss</u>. BD alleged that it was proximately damaged by Defendants' negligence in missing expert witness deadlines in the Landlord Action, which resulted in orders barring BD from presenting "fairly important" expert testimony as to liability or damages. *See* Amended Complaint ¶¶ 32 (attempt to recruit an expert to prepare a report opining to "the lost profits our client could have made had the café opened"), 35-41 (liability experts), 42-64 (causal connection).

(4)    <u>Actual Damages</u>. BD is obligated to allege the existence of actual damages proximately resulting from Defendants' negligence (*see Nationstar Mortg. LLC v. Fein, Such & Crane LLP*, *supra*). BD has met this obligation by pleading foregone money damages that it would have proven at trial in the underlying Landlord Action but-for the failure to disclose timely expert reports and testimony. *See* Amended Complaint ¶¶ 42-64. The ultimate measure, calculation, and allowance of damages will depend upon the eventual proof in the case, as fully developed in the record. *See Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Research*, 2016 WL 205445 at *7 (S.D.N.Y. Jan. 15, 2016)(Nathan, J.) ("Although a plaintiff must 'plead[] factual content that allows the court to draw the reasonable inference' that he suffered damages as a result of the breach, *Iqbal*, 556 U.S. at 678, it need not, at this stage, 'specify the measure of damages nor plead . . . [specific] proof of causation.' [Citations omitted.] **The precise magnitude of damages proximately caused by the breach is properly evaluated at the summary judgment stage, not the motion to dismiss stage**. *See id*; *see also Luitpold Pharm., Inc. v. Ed. Geistlich*

*Söhne A.G. Fur Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015) (alleging a speculative measure of damages in a breach of contract action does not justify dismissal under Rule 12(b)(6) because nominal damages are available under New York law) [bold emphasis added]." )[2]

## C.    BD Thoroughly and Plausibly Alleged Proximate Causation

As the Court previously observed, "if the Complaint said that Blue Dog was armed for litigation and rearing to go and would have won and only backed off from a full litigation because of [Defendants'] mistakes and ultimately had to agree to a deal that was less than it would have gotten in the litigation . . . why would it be so [im]plausible (sic) that I should throw it out[?]" Transcript dated May 21, 2019 (Adv. Doc. No. 12-5) at p.9 lines 10-17. Although the Court found that BD's original Complaint failed to make such allegations expressly, the Amended Complaint has unambiguously done so. *See, e.g.*, Amended Complaint at ¶¶ 42-64. As such, the Amended Complaint conforms to the Court's mandate and guidance and allows this Court to draw a reasonable inference that Defendants are liable for malpractice.

Beyond simply satisfying the notice pleading requirements of Rules 8 and 12, BD's Amended Complaint goes further and substantively demonstrates the significant harm that resulted from the order barring expert testimony in the Landlord Action. In particular, each of the claims pled by Defendants in the Landlord Action (namely, claims for declaratory judgment, wrongful eviction, breach of lease and breach of the implied covenant of good faith and fair dealing, and a

---

[2]    Defendants object that the Amended Complaint does not quantify BD's damages. *See* Motion to Dismiss, Adv. Doc. No. 12, at ¶ 8 ("Blue Dog also fails to allege what its actual damages are, beyond making vague, speculative, and conclusory statements that render it impossible to determine what harm Blue Dog actually asserts it suffered"), ¶ 9 ("The Debtor's omission of this information . . . is fatal to Blue Dog's claim in light of the Court's clear prior instructions"). The objection is not well-placed: a plaintiff is not required to "specify the measure of damages," but rather only the fact of damages, to survive a motion to dismiss. *Errant Gene Therapeutics*, *supra*.

prayer for damages thereon) required expert testimony as to both liability and damages. To prove liability, BD was required to establish that it was eligible to occupy the premises and commence operations by the deadline. In their untimely effort to meet that burden, Defendants proffered the Stracuzza and Russell declarations specifically designed for this purpose. *See* Amended Complaint ¶¶ 35-36. After the Court struck those declarations and barred Plaintiff from using those experts, Defendants attempted to add new expert witnesses, but were barred. Amended Complaint ¶ 40-41.

Likewise, each claim for relief required proof of damages. *See, e.g., Flomenbaum v. N.Y. University*, 71 A.D.3d 80, 91 (N.Y. App. Div. 2009), *aff'd*, 14 N.Y.3d 901 (N.Y. 2010) ("The elements of a breach of contract claim are formation of a contract between the parties, performance by the plaintiff, the defendant's failure to perform, and resulting damage"); *Harris v. Seward Park*, 79 A.D.3d 425, 426, 913 N.Y.S.2d 161 (N.Y. App. Div. 2010) ("The elements of such a claim [for breach of contract] include the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages"); *Fasolino Foods v. Banca Nazionale Del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992) ("Under New York law, parties to an express contract are bound by an implied duty of good faith, 'but breach of that duty is merely a breach of the underlying contract.' *Geler v. National Westminster Bank USA*, 770 F.Supp. 210, 215 (S.D.N.Y. 1991) (citations omitted)"). In their untimely effort to meet that burden, Defendants retained a damages expert to prepare a report opining to "the lost profits our client could have made had the café opened." Amended Complaint ¶ 32.[3]

---

[3]    After the Court barred BD from offering any expert testimony, Defendants sought to recruit BD's principal, Elizabeth Slavutsky, to provide damages testimony. This last-minute substitution would be no panacea, however, because like the outside expert opinion, any similar damages testimony from Ms. Slavustsky was both undisclosed and would necessarily constitute an opinion as to future damages that had not yet occurred.

By these well-pled allegations, BD's claims achieve facial plausibility and allow the Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678. Further punctuating that such claims are plausible, and not just a "sheer possibility," Defendants themselves stated that experts were a "fairly important part" of BD's case (Amended Complaint ¶ 29), that BD needed an expert on damages (Amended Complaint ¶ 32), and that BD will "more likely than not … need an affidavit from [the expert witness] to oppose any [summary judgment] motion the landlord may make to pare down the claims and then need his testimony for the hearing [that is, trial]." Amended Complaint ¶ 30. Putting aside whether these statements will ultimately bind Defendants at trial, they certainly illuminate the plausibility of BD's claims, as the Court foreshadowed in prohibiting Plaintiff's expert testimony, warning "if that leaves you with a difficulty of proof, that's your own fault, for not designating experts when you should have."

## D.    The Court Should Reject (Again) Defendants' Abandoned "Incurable Causation" Argument

In their original Motion to Dismiss, Defendants argued BD cannot prove any claim in this case because it "settled the Landlord Action and avoided a determination on the merits of its rights as a tenant." Motion to Dismiss, Adv. Doc. No. 5, at ¶ 5. Expanding on their theory, Defendants argued (without any citation to legal authority) that "the Debtor has an incurable causation problem and is unable to prove any actual harm resulting from anything that Seyfarth may have done or not done as counsel." Motion to Dismiss, Adv. Doc. No. 5, at ¶ 6. The Court rejected this argument during the hearing on the first Motion to Dismiss held on May 21, 2019, responding "But there seem to be two parts of your argument. One is, have they alleged enough. And you may be right about that. The other is at times you say that if they didn't actually litigate, they're foreclosed from

arguing about it. I don't think I would go that far." Transcript dated May 21, 2019 (Adv. Doc. No.

12-5) at p.9 lines 20-25. In response, Defendants' counsel conceded "I'm not going that far." *Id*.

at p.10 line 1. The Court then confirmed Defendants' abandonment of this argument in later

colloquy with Plaintiff's counsel:

> [Mr. Hare]:   Your Honor, several times today, Mr. Peck has professed that
> there's an impossibility in connecting the events and the failures in the underlying case
> back in [2016] to resulting damages that are being alleged in this case. He goes so far as to
> say, in his papers, that there is "an incurable causation problem."
>
> THE COURT: He's told me he's backed away from that today.

*Id*. at p.21, line 20 through p.22, line 2.

Despite the Court's stated skepticism and Defendants' resulting abandonment of the

"incurable causation problem" argument, Defendants have raised the same argument again in the

current Motion to Dismiss. *See* Motion to Dismiss, Adv. Doc. No. 10, at ¶ 6 ("Allegations that

Blue Dog would have ultimately prevailed at trial if only it had been able to submit expert reports

are impossible to prove without actually holding a trial. That trial was eliminated as an option and

will never be held because of the Landlord Settlement"). Defendants' argument has not improved

with repetition. In every legal malpractice action, the plaintiff is ultimately required to prove the

"case within a case."[4] Doing so is an issue of proof, not an issue of pleading. Indeed, it is

commonplace that malpractice lawsuits spring from underlying litigation that never reached trial

as a result of the malpractice. *See, e.g., Nationstar Mortg. LLC v. Fein, Such & Crane LLP, supra*

(malpractice claim based on negligence in prosecuting underlying action, resulting in its dismissal

before trial); *Cappetta v. Lippman*, 913 F. Supp. 302, 306 (S.D.N.Y. 1996) (cited by Defendants

---

[4]   Critically, in doing so, a malpractice plaintiff is not required to prove that the malpractice
was the sole proximate cause of injury, merely that the negligence was "a proximate cause," and
doing so is not subject to any heightened burden. *See Barnett v. Schwartz*, 47 A.D.3d 197, 204
(N.Y. App. Div. 2007).

in their first Motion to Dismiss)(finding liability, and awarding damages, in malpractice action arising from negligence in prosecuting the underlying lawsuit, resulting in its dismissal before trial). Indeed, as Defendants themselves recognize (*see* Motion to Dismiss at ¶ 29, p.12), adjudication of any legal malpractice case requires the trier of fact to "decide a lawsuit within a lawsuit, because it demands a *hypothetical re-examination* of the events at issue absent the alleged malpractice." *Flutie Bros. LLC v. Hayes*, 2006 WL 1379594 at *5 (S.D.N.Y. May 18, 2006), *citing Littman Krooks Roth Ball, P.C. v. New Jersey Sports Prod., Inc.*, 2001 WL 963949, at *3 (S.D.N.Y. Aug. 22, 2001), *N.A. Kerson Co. v. Shayne, Dachs, Weiss, Kolbrenner, Levy*, 397 N.Y.S.2d 142, 143 (2d Dep't 1977). That necessary and routine "hypothetical re-examination" is the very exercise that Defendants now suggest, incorrectly, is impossible. The Court should reject that suggestion.

**E.**       **The Court Should Ignore Defendants' Invitation to Litigate the Merits**

A motion to dismiss presumes the truth of all factual allegations in the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984)("At this stage of the litigation, we must accept petitioner's allegations as true."). Further, a motion to dismiss is not an occasion to adjudicate the merits or weigh evidence for and against a claim. Rather:

> A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *See* 5A Charles A. Wright Arthur R. Miller, Federal Practice and Procedure § 1356 (1990). Our inquiry then is limited to whether the allegations constitute "'a short and plain statement of the claim showing that the pleader is entitled to relief.'"

*Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992); *see also Mangan v. TL Mgmt., LLC (In re Walnut Hill, Inc.)*, No. 16-20960 (JJT), at *5 (Bankr. D. Conn. May 10, 2019) ("A motion to dismiss is meant 'merely to assess the legal feasibility of the complaint, not

to assay the weight of evidence which might be offered in support thereof.' *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (*quoting Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).*"*). Despite this, Defendants' Motion to Dismiss repeatedly argues the ultimate merits of BD's claim by reference to alleged countervailing evidence, the weight of the evidence, and Defendants' conjecture as to what the evidence may eventually show. *See*, *e.g.*, Motion to Dismiss at ¶ 7 (expressly inviting the Court "to judge the merits of the Debtor's new Amended Complaint against Seyfarth on a motion to dismiss"), ¶ 31 ("*This citation is similarly inconclusive*, as Mr. Zuckerman's comments are, on their face, speculative and *could plausibly reflect* nothing more than a colloquial expression of the attorney's belief that expert testimony might be preferable to other methods of proving the Debtor's claims [italics added]"), ¶¶ 32-35 (deflecting the significance of the foregone expert testimony by proposing alternate methods of liability proof under the "prevention doctrine," suggesting "Blue Dog could potentially still satisfy the prevention doctrine" with other evidence), ¶ 36 (again deflecting the significance of the foregone expert testimony by proposing alternate methods of damages proof). Defendants remain free to raise these facts in their affirmative defense or in rebuttal to BD's claims at the proper time. A motion to dismiss is not, however, that time. *Ryder Energy Distribution Corp.*, *supra*.[5]

---

[5]      In similar fashion, Defendants repeatedly fault BD for failing to plead more evidence. *See*, *e.g.*, Motion to Dismiss at ¶ 7 ("the Amended Complaint fails to explain what specific points of evidence the excluded expert reports were intended to provide, or why expert witness testimony, rather than lay witness testimony, was required to establish those points"), ¶ 31 ("The Debtors' allegations are deficient on their face because the Debtor does not explain what evidence the excluded experts were to provide that could not have been established through other means.") Defendants' argument inherently goes to the merits and is misplaced on a motion to dismiss. Further, a plaintiff is not required to plead evidence in a complaint. *See Perrin v. Conn. Dep't of Corr.*, No. 3:16-cv-00643 at *5 n.2 (D. Conn. Nov. 7, 2016) ("a complaint need not plead 'evidence' but need only plead facts to sustain a claim"); *Freudenberg v. E*TRADE Financial Corporation*, No. 07 Civ. 8538, at *14 (S.D.N.Y. 2010) ("A plaintiff is not required to plead

### IV.    *Conclusion*

Because BD has plausibly alleged all elements of its claim for negligence, Defendants'

Motion to Dismiss should be denied.

Dated: July 11, 2019

<div style="margin-left:40%">

LAW OFFICE OF SCOTT M. HARE

By:     /s/ Scott M. Hare

Scott M. Hare
1806 Frick Building
437 Grant Street
Pittsburgh, PA 15219
(412) 338-8632
scott@scottlawpgh.com
Pa. I.D. No. 63818
Michigan P52081

Special Counsel to Blue Dog at 399 Inc.

</div>

---

evidence. *See Skydell v. Ares-Serono S.A.*, 892 F. Supp. 498, 501 (S.D.N.Y. 1995).”); *Politico v. Promus Hotels, Inc.*, 184 F.R.D. 232, 233 (E.D.N.Y. 1999) (“The complaint should not plead evidence.”).