MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Joel C. Haims
James M. Peck
Erica J. Richards
Andreea R. Vasiliu
Yukiu Monica Chan

*Counsel to the Defendants/Third-Party Plaintiffs*
*Seyfarth Shaw, LLP and Ralph Berman*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BLUE DOG AT 399 INC.,<br><br>           Debtor. | Chapter 11<br><br>Case No. 15-10694 (MEW) |
| BLUE DOG AT 399 INC.,<br><br>           Plaintiff,<br><br>    -against-<br><br>SEYFARTH SHAW LLP and<br>RALPH BERMAN,<br><br>           Defendants. | Adv. Proc. No. 19-01029<br><br>**OPPOSITION TO MOTION BY THIRD-PARTY DEFENDANTS ROBERT POWELL AND D&D FUNDING II, LLC, TO DISMISS THIRD-PARTY COMPLAINT** |
| SEYFARTH SHAW LLP and<br>RALPH BERMAN,<br><br>           Third-Party Plaintiffs,<br><br>    -against-<br><br>ELIZABETH SLAVUTSKY, ROBERT POWELL,<br>and D&D FUNDING II, LLC,<br><br>           Third-Party Defendants. | |

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ................................................................................ 1

II.  FACTS ALLEGED IN THIRD-PARTY COMPLAINT ................................................. 2

III.  ARGUMENT .......................................................................................................... 5

    A.  Legal Standard ............................................................................................. 5

    B.  Seyfarth Has Stated a Claim for Contribution ........................................... 6

        1.  Seyfarth Has Pleaded That Third-Party Defendants Owe Duties to
Blue Dog ......................................................................................... 6

        2.  Seyfarth Does Not Have to Plead an Attorney-Client Relationship
Between Third-Party Defendants and Blue Dog ........................... 8

        3.  Seyfarth Has Pleaded That Third-Party Defendants Contributed to
Blue Dog's Alleged Injury .............................................................. 9

IV.  CONCLUSION ...................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Banco de Desarrollo Agropecuario, S.A. v. Gibbs*,
  709 F. Supp. 1302 (S.D.N.Y. 1989)......................................................................6

*Brass v. Am. Film Techs., Inc.*,
  987 F.2d 142 (2d Cir. 1993)................................................................................2

*In re Campbell*,
  500 B.R. 56 (Bankr. D.N.M. 2013) .....................................................................2

*Comi v. Breslin & Breslin*,
  257 A.D.2d 754 (N.Y. App. Div. 1999) ...............................................................8

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010)................................................................................5

*Erickson v. Pardus*,
  127 S. Ct. 2197 (2007)......................................................................................5, 7

*Fashion Shop LLC v. Virtual Sales Grp. Corp.*,
  525 F. Supp. 2d 436 (S.D.N.Y. 2007).................................................................6

*In re Grumman Olson Indus.*,
  329 B.R. 411 (Bankr. S.D.N.Y. 2005).................................................................6

*In re JMK Constr. Grp., Ltd.*,
  441 B.R. 222 (Bankr. S.D.N.Y. 2010).................................................................9

*In re Lehr Constr. Corp.*,
  528 B.R. 598 (Bankr. S.D.N.Y. 2015), *aff'd*, 551 B.R. 732 (S.D.N.Y. 2016),
  *aff'd*, 666 F. App'x 66 (2d Cir. 2016)...................................................................2

*Levine v. Egidi*,
  No. 93 C 188, 1993 U.S. Dist. LEXIS 2886 (N.D. Ill. Mar. 4, 1993) ...................2

*Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*,
  841 F. Supp. 2d 753 (S.D.N.Y. 2012).................................................................5

*McCoy v Goldberg*,
  883 F. Supp. 927 (S.D.N.Y. 1995) ...................................................................6, 9

*Nechis v. Oxford Health Plans, Inc.*,
  421 F.3d 96 (2d Cir. 2005)..................................................................................5

*Pan Am Corp. v. Delta Air Lines*,
    175 B.R. 438 (S.D.N.Y. 1994)........................................................................7

*Raquet v. Braun*,
    659 N.Y.S.2d 237 (1997)............................................................................9

*Razdolskaya v. Lyubarsky*,
    160 A.D.3d 994 (N.Y. App. Div. 2018) ....................................................8

*Rubin v. Duncan*,
    No. 154131/2015, 2018 N.Y. Misc. LEXIS 5512 (N.Y. Sup. Ct. Nov. 16,
    2018) .........................................................................................................8

*Schonberger v. Serchuk*,
    No. 89 Civ. 7094 (PKL), 1992 U.S. Dist. LEXIS 927 (S.D.N.Y. Jan. 31, 1992)...................10

*In re Sept. 11 Prop. Damage & Bus. Loss Litig., Inc. v. Port Auth.*,
    468 F. Supp. 2d 508 (S.D.N.Y. 2006).........................................................6

*Skinner v. Switzer*,
    562 U.S. 521 (2011).................................................................................5

*In re St. Vincent's Catholic Med. Ctrs. of N.Y.*,
    440 B.R. 587 (Bankr. S.D.N.Y. 2010) .......................................................2

*Walsh v. McGee*,
    918 F. Supp. 107 (S.D.N.Y. 1996) ...........................................................5

*Windsor Metal Fabrications, Ltd. v. Scott & Schechtman*,
    286 A.D.2d 732 (N.Y. App. Div. 2001) ....................................................8

## Other Authorities

Fed. R. Civ. P. 8 ...........................................................................................7

N.Y. C.P.L.R. 1401 .....................................................................................6

iii

Defendants and Third-Party Plaintiffs Seyfarth Shaw, LLP and Ralph Berman (collectively, "Seyfarth," "Defendants," or "Third-Party Plaintiffs"), by and through their undersigned counsel, hereby respectfully submit this opposition to the Motion to Dismiss filed by Third-Party Defendants Robert Powell ("Powell") and D&D Funding II, LLC ("D&D Funding") (the "Motion") (Dkt. No. 28) in the above-captioned adversary proceeding brought by Plaintiff Blue Dog at 399 Inc. ("Blue Dog") against Seyfarth, and in support thereof, state as follows:

## I.    PRELIMINARY STATEMENT

1.    Seyfarth denies any liability whatsoever to Blue Dog for legal malpractice.  But, if it was to be found liable to Blue Dog for any of the matters alleged in Blue Dog's latest amended complaint (the "Amended Complaint"), then Third-Party Defendants Powell and D&D Funding (as well as Slavutsky) are also liable to Blue Dog in tort for the same injuries.  A cause of action for contribution exists where a third party owing a duty to the plaintiff played a part in causing or augmenting the injury.

2.    Seyfarth has sufficiently alleged in its Third-Party Complaint (i) that Third-Party Defendants Powell and D&D Funding advised, asserted control, and exercised influence over Blue Dog, thus owing duties to Blue Dog, and (ii) that they contributed to or augmented Blue Dog's alleged injury by causing it to repudiate a favorable settlement in favor of their own self-interests.  Negligence and injury are two separate elements in a legal malpractice action. Seyfarth's allegations that Third-Party Defendants contributed to the purported injury suffered by Blue Dog are sufficient alone to state a claim.

3.    Third-Party Defendants Powell and D&D Funding have moved to dismiss on the shaky foundation of two specious assertions:  (i) that Seyfarth did not plead that Third-Party Defendants Powell and D&D Funding had an attorney-client relationship with Blue Dog and

(ii) that Seyfarth did not plead that they caused or contributed to Seyfarth's alleged failures to timely produce expert reports on Blue Dog's behalf in the Landlord Action. As detailed below, the Motion should be denied as neither of these assertions is relevant or required to state a contribution claim.

## II.    FACTS ALLEGED IN THIRD-PARTY COMPLAINT

4.    Third-Party Plaintiff Seyfarth Shaw LLP formerly served as litigation counsel to Blue Dog in an adversary proceeding titled *Blue Dog at 399 Inc. v. BP 399 Park Avenue LLC (In re Blue Dog at 399 Inc.)*, Adv. No. 15-01097 (Bankr. S.D.N.Y.) (the "Landlord Action"), brought by Blue Dog against BP 399 Park Avenue LLC (the "Landlord"), seeking to restore Blue Dog to possession of the commercial premises located on the ground floor at 399 Park Avenue (the "Premises") under terms of a lease between Blue Dog and the Landlord dated January 1, 2012 (the "Lease"). (Third-Party Compl. ¶ 11; Landlord Action Dkt. No. 1.)[1] At the time, Blue Dog was owned by Elizabeth Slavutsky. (Third-Party Compl. ¶ 3.) Robert Powell was initially an advisor, representative, and a lender (via D&D Finding) for Blue Dog, and later became its principal. (Third-Party Compl. ¶¶ 4, 5.)

5.    On January 25, 2017, two days before trial in the Landlord Action was to commence, the Landlord suggested that the action be referred to mediation and the trial be adjourned. (Third-Party Compl. ¶ 18.) Because Blue Dog's focus throughout the litigation had

---

[1] To decide a motion to dismiss, the Court may consider "matters of which judicial notice may be taken . . . ." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Courts in the Second Circuit routinely take judicial notice of facts that are outside the complaint and not subject to reasonable dispute under both case law and Federal Rule of Evidence 201. *See, e.g.*, *n re Lehr Constr. Corp.*, 528 B.R. 598, 606 (Bankr. S.D.N.Y. 2015), *aff'd*, 551 B.R. 732 (S.D.N.Y. 2016), *aff'd*, 666 F. App'x 66 (2d Cir. 2016). Courts in the Second Circuit and elsewhere have also routinely taken notice in an adversary proceeding of a debtor's main bankruptcy case and other related adversary proceedings. *See, e.g.*, *In re St. Vincent's Catholic Med. Ctrs. of N.Y.*, 440 B.R. 587, 599 (Bankr. S.D.N.Y. 2010) (taking judicial notice of the docket in the underlying bankruptcy case); *Levine v. Egidi*, No. 93 C 188, 1993 U.S. Dist. LEXIS 2886, at *5 (N.D. Ill. Mar. 4, 1993) ("In effect, the bankruptcy judge took judicial notice of his own docket—a permissible undertaking."); *In re Campbell*, 500 B.R. 56, 59 n.7 (Bankr. D.N.M. 2013) (taking judicial notice of the entire file in the case for sake of completeness as a bankruptcy court has the inherent authority to take judicial notice of entries on its own docket).

ny-1769431

been reinstatement into possession of the Premises so that it could open for business, prior to agreeing to mediation, Seyfarth, on behalf of Blue Dog, obtained a representation from the Landlord that any settlement offer would start by restoring Blue Dog to the Premises and reinstating the Lease with the Landlord for a term that was no less than that which remained as of February 28, 2015, the date that Blue Dog attempted to open for business.  (Third-Party Compl. ¶ 19.)

6.    On or about February 7, 2017, Slavutsky and Powell attended an in-person meeting on behalf of Blue Dog at Seyfarth's New York offices to discuss, among other things, strategies for settling the Landlord Action (the "Pre-Mediation Meeting").  (*Id.*)  The Landlord's representation regarding reinstatement of the Lease was discussed at the Pre-Mediation Meeting. (*Id.*)

7.    Over the course of the February 8 and 10, 2017, mediation sessions before the Hon. James L. Garrity Jr., Southern District of New York Bankruptcy Judge (the "February 2017 Mediation"), attended by Slavutsky on behalf of Blue Dog, Seyfarth obtained additional and substantial concessions from the Landlord, and the parties reached agreement on the terms of a new lease that would have restored possession of the Premises to Blue Dog and would have allowed Blue Dog to open and operate its business on much more favorable lease terms (the "Proposed Settlement").  (*Id*. ¶ 20.)

8.    Powell did not attend the February 2017 Mediation, but was located nearby and remained in telephonic contact with Slavutsky throughout the mediation.  (Third-Party Compl. ¶ 20.)

9.    At the conclusion of the February 10, 2017, mediation session, Judge Garrity read aloud, and Slavutsky acknowledged, on behalf of Blue Dog, each term of the Proposed Settlement and agreed to all of them.  (*Id.* ¶ 21.)  As a result of Seyfarth's efforts, Plaintiff would

3

have been restored to possession of the Premises on lease terms that were exceedingly better, and could be monetized far more readily, than the much shorter-term and less advantageous terms Plaintiff could have obtained,[2] if it subjected itself to the risk and cost of trial and ultimately prevailed. (*Id.*)

10.    But the Proposed Settlement brokered by Judge Garrity was never brought before the Court for approval. Following the February 2017 Mediation, Slavutsky, in consultation with Powell, who was acting in his own interest and in the interest of D&D Funding, repudiated the Proposed Settlement, contrary to Seyfarth's advice and to the detriment of Blue Dog. (*Id.* ¶ 22.) As a consequence of this repudiation of the Proposed Settlement and a dispute over unpaid legal fees, Seyfarth and Blue Dog's relationship deteriorated, leading to Seyfarth's withdrawal as counsel to Blue Dog in the Landlord Action. (Landlord Action Dkt. No. 62-1.)

11.    Following a lengthy period of inactivity in the Landlord Action, on June 19, 2018, Blue Dog filed an adversary complaint against Seyfarth, alleging legal malpractice in connection with the Court's exclusion of Blue Dog's proposed expert witnesses in the Landlord Action that occurred in December 2016, months before the favorable Proposed Settlement that resulted from the February 2017 Mediation. (*See Blue Dog at 399 Inc. v. Seyfarth Shaw, et al.*, Adv. No. 18-01571 (Bankr. S.D.N.Y.), Dkt. No. 1.)

12.    Following that dismissal, in December 2018, Blue Dog chose to settle the Landlord Action (the "Landlord Settlement") on much less favorable terms to Blue Dog than the Proposed Settlement, resulting in a surrender of the Premises to the Landlord. (Third-Party Compl. ¶ 22; *see also In re Blue Dog at 399 Inc.*, Case No. 15-10694 (Bankr. S.D.N.Y.) (the "Bankruptcy") Dkt. No. 169-2, ¶ 2(a).)

---

[2] In the Landlord Action, Blue Dog had requested that the Court declare and adjudge that the Lease was in full force and effect and that Blue Dog was entitled to rightful possession and occupancy of the Premises. (Landlord Action Dkt. No. 1.)

13.     After several more dismissals for failure to adequately plead the proximate cause

element of its malpractice claim, Blue Dog's latest adversary complaint against Seyfarth claims

that the inability to call expert witnesses in the Landlord Action rendered Blue Dog "unable to

negotiate a settlement consistent with the strength of its liability and damages claims," and,

ignoring the settlement reached in February 2017, Blue Dog "was forced to accept a substantially

smaller settlement or risk proceeding to trial where it would be unable to prove its liability and

damages claims."  (Am. Compl. ¶ 61.)  In response to the Amended Complaint, Seyfarth asserted

third-party contribution claims against Powell, D&D Funding, and Slavutsky.

## III.    ARGUMENT

### A.    Legal Standard

14.     Under the notice pleading standard of Federal Rule of Civil Procedure 8(a)(2),

made applicable to these proceedings by Bankruptcy Rule 7008, a complaint "generally requires

only a plausible 'short and plain' statement of the plaintiff's claim."  *Skinner v. Switzer*, 562 U.S.

521, 530 (2011).  "Specific facts are not necessary; the statement need only give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*,

127 S. Ct. 2197, 2200 (2007) (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955) (quotation

marks omitted).

15.     In deciding a Rule 12(b)(6) motion, "a court must accept as true all of the factual

allegations set out in plaintiff's complaint, draw inferences from those allegations in the light

most favorable to plaintiff, and construe the complaint liberally."  *Luv N' Care, Ltd. v. Regent

Baby Prods. Corp.*, 841 F. Supp. 2d 753, 756 (S.D.N.Y. 2012) (quoting *Rescuecom Corp. v.

Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009)).  Dismissal should be granted only if "it appears

beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would

entitle [it] to relief."  *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005)

(quotation marks and citation omitted); *see also Walsh v. McGee*, 918 F. Supp. 107, 112

(S.D.N.Y. 1996) ("[T]he motion to dismiss for failure to state a claim is viewed with disfavor

and is rarely granted.") (quoting 5A Wright & Miller, *Federal Practice & Procedure* § 1357, at

321 (2d ed. 1990)).  Where, as here, the complaint "contain[s] sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face,'" *DiFolco v. MSNBC Cable L.L.C.*,

622 F.3d 104, 111 (2d Cir. 2010) (*citing Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)), the

motion to dismiss should be denied.

> **B.    Seyfarth Has Stated a Claim for Contribution**

16.    Under New York law, "two or more persons who are subject to liability for

damages for the same personal injury, injury to property or wrongful death, may claim

contribution among them whether or not an action has been brought or a judgment has been

rendered against the person from whom contribution is sought."  N.Y. C.P.L.R. 1401.  "Courts

have consistently read this statute expansively, interpreting it to apply 'not only to joint

tortfeasors, but also to concurrent, *successive, independent, alternative*, and even *intentional*

tortfeasors.'"  *McCoy v Goldberg*, 883 F. Supp. 927, 932 (S.D.N.Y. 1995) (quoting *Bd. of Educ.*

*v. Sargent, Webster, Crenshaw & Folley*, 517 N.E.2d 1360, 1364 (1987)) (emphasis added).

> **1.    Seyfarth Has Pleaded That Third-Party Defendants Owe Duties to
> Blue Dog**

17.    A valid claim for contribution requires that "the breach of duty by the

contributing party must have had a part in causing or *augmenting* the injury for which

contribution is sought."  *McCoy*, 883 F. Supp. at 933 (emphasis added); *see also Fashion Shop*

*LLC v. Virtual Sales Grp. Corp.*, 525 F. Supp. 2d 436, 446 (S.D.N.Y. 2007) (same).  Seyfarth

has satisfied this requirement with regard to Powell and D&D Funding.

18.    Generally, "[t]hose who perform work, or deliver services or products, pursuant to

a contractual or other commercial relationship owe duties of care and proper performance to

6

those entitled to receive the benefit of their work or services or products." *In re Sept. 11 Prop.*

*Damage & Bus. Loss Litig., Inc. v. Port Auth.*, 468 F. Supp. 2d 508, 531 (S.D.N.Y. 2006). In the

context of a corporate entity, a duty can arise "when one assumes control and responsibility over

another." *In re Grumman Olson Indus.*, 329 B.R. 411, 427 (Bankr. S.D.N.Y. 2005) (internal

quotation and citation omitted). Control persons of a corporate entity are not limited to directors

and officers but can also include advisors and consultants to a company. *See Banco de*

*Desarrollo Agropecuario, S.A. v. Gibbs*, 709 F. Supp. 1302, 1306 (S.D.N.Y. 1989) (financial

advisor and consultant of company were control persons who owed duties to the company).

Likewise, a creditor can owe duties to a debtor where there is a showing of "a relationship of

confidence, trust, or superior knowledge or control." *Pan Am Corp. v. Delta Air Lines*, 175 B.R.

438, 511 (S.D.N.Y. 1994).

19.     Here, Seyfarth has properly pleaded that Powell and D&D Funding owed duties

to Blue Dog (including, but not limited to, duties of care and proper performance), by virtue of

their relationships and positions with, and control over, Blue Dog. As alleged in the Third-Party

Complaint, as an advisor to and a representative of Blue Dog in connection with the Landlord

Action, Powell, among other things, participated in decision-making, provided advice and

counsel to Blue Dog, and facilitated D&D Funding's financing of the Landlord Action. (Third-

Party Compl. ¶¶ 4, 17.) Notably, Powell asserted control and exercised influence over Blue Dog

at a pivotal point in time: the February 2017 Mediation. Not only was Powell closely involved

in dictating Blue Dog's strategy during the Pre-Mediation Meeting with Seyfarth, but he also

was consulted by Slavutsky, Blue Dog's principal, during the February 2017 Mediation and

caused Blue Dog to repudiate the Proposed Settlement afterwards. (*Id.* ¶¶ 19-20, 22.) Through

the actions of Powell, D&D Funding, as the largest unsecured creditor of Blue Dog, and now

equity holder and principal, also asserted control and responsibility over Blue Dog. (*Id.* ¶ 5*; see*

7

*also* Bankruptcy Dkt. No. 104 ("D&D Funding II, LLC . . . holds the largest unsecured claim

against Blue Dog at 399 Inc.").)

20.    Under the notice pleading standard, nothing more is required.  *See Erickson*,

127 S. Ct. at 2200; Fed. R. Civ. P. 8 (requiring only "a short and plain statement of the claim

showing that the pleader is entitled to relief").  Seyfarth should not be required to lay out a

labyrinth of all the dealings between Powell, D&D Funding, and Blue Dog when information

regarding the operations and management of Blue Dog is exclusively within Blue Dog's or the

Third-Party Defendants' control.

### 2.    Seyfarth Does Not Have to Plead an Attorney-Client Relationship Between Third-Party Defendants and Blue Dog

21.    Third-Party Defendants are wrong in saying that an attorney-client relationship

between Third-Party Defendants and Blue Dog is required to sustain a claim for contribution in a

legal malpractice action.  (Mot. ¶ 22.)  On the contrary, defendants in malpractice actions can

successfully assert contribution claims against non-lawyer third-parties.  *See, e.g.*, *Comi v.

Breslin & Breslin*, 257 A.D.2d 754, 756 (N.Y. App. Div. 1999) (defendant-attorneys sued for

legal malpractice can seek contribution from non-lawyer third-party defendants because,

"although different theories [were] offered as to the cause of injury, it is plausible that

defendants' and [third-party defendants'] actions and/or omissions, together, may have

contributed to plaintiff's alleged single injury"); *Rubin v. Duncan*, No. 154131/2015, 2018 N.Y.

Misc. LEXIS 5512, at *2 (N.Y. Sup. Ct. Nov. 16, 2018) (denying motion to dismiss defendant-

law firm's contribution claim against third-party defendant-accountants, where law firm alleged

that "third-party defendants negligently prepared certain tax returns" that caused an unfavorable

ruling in the underlying lawsuit); *Razdolskaya v. Lyubarsky*, 160 A.D.3d 994, 997 (N.Y. App.

Div. 2018) (affirming denial of third-party defendant condominium sellers' motion to dismiss

contribution claim because the sellers and the defendant-lawyer "are alleged to have caused the

8

same injury to the plaintiff, *i.e.*, the diminution in value of the plaintiff's condominium unit and

her interest in the common elements of the building as a result of the alleged mold and water

damage.").

22.     Powell and D&D Funding rely on the inapplicable *Windsor Metal Fabrications,*

*Ltd. v. Scott & Schechtman*, 286 A.D.2d 732, 733 (N.Y. App. Div. 2001) for the proposition that

"[a]bsent an attorney-client relationship, there is no claim of legal malpractice." (Mot. ¶ 25.)

But that case is distinguishable because the *Windsor* third-party plaintiffs, who were themselves

sued for legal malpractice, sought contribution against the third-party defendant under the same

theory, specifically, for his alleged legal malpractice. Seyfarth is not alleging that any of the

Third-Party Defendants committed legal malpractice (and even alleged that Powell is a disbarred

lawyer (Third-Party Compl. ¶ 4)), so it is irrelevant that they are not lawyers. Indeed,

"contribution is available whether or not the culpable parties are allegedly liable for the injury

***under the same or different theories***, and the remedy may be invoked against concurrent,

successive, independent, alternative and even intentional tortfeasors." *Raquet v. Braun*, 659

N.Y.S.2d 237, 240 (1997) (emphasis added); *see also In re JMK Constr. Grp., Ltd.*, 441 B.R.

222, 232 (Bankr. S.D.N.Y. 2010) (same). Powell and D&D Funding's argument misses the

point completely. As non-lawyers, they torpedoed the Proposed Settlement causing damage to

Blue Dog.

### 3.     Seyfarth Has Pleaded That Third-Party Defendants Contributed to Blue Dog's Alleged Injury

23.     Third-Party Defendants Powell and D&D Funding's argument that Seyfarth

should have pleaded "that Movants caused or contributed to Seyfarth's repeated failures to

produce expert reports" is inapposite. (Mot. ¶¶ 28-35.) In order to state a claim for contribution

from Third-Party Defendants, Seyfarth only needs to plead—and has pleaded—that Third-Party

Defendants' actions and its own alleged actions caused the same ***injury*** to Blue Dog. *McCoy,*

9

883 F. Supp. at 932-33 (contribution applies "to concurrent, successive, independent, alternative, and even intentional tortfeasors," and "the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought.").

24.     In essence, Blue Dog's claimed injury is the diminution in the value of its claim against the Landlord because of Seyfarth's alleged negligence with regard to certain expert deadlines.  (Am. Compl. ¶ 61.)  Seyfarth has pleaded that Third-Party Defendants owed duties to Blue Dog by virtue of their relationships and positions with, and control over, Blue Dog, and, assuming Seyfarth is found liable for Blue Dog's injury, Third-Party Defendants' actions augmented and exacerbated Blue Dog's injury by causing it to repudiate the favorable Proposed Settlement reached during the February 2017 Mediation.  (Third-Party Compl. ¶ 22.)  Seyfarth does not need to plead that Powell and D&D Funding had any involvement with the expert deadlines.  Indeed, it is Seyfarth's position that those deadlines had nothing to do with the fair settlement value of Blue Dog's claims against the Landlord.

25.     Similar allegations regarding interference with a proposed settlement have been deemed sufficient to sustain a cause of action.  In *Schonberger v. Serchuk*, a case cited in Powell and D&D Funding's Motion, the court denied a motion to dismiss a contribution claim, holding that third-party plaintiff had stated a claim for "breach of fiduciary duty by [third-party defendants], which aggravated [plaintiff's] injuries, giving third-party plaintiffs a right of contribution" where there were allegations that (1) "a settlement would have been possible had third-party defendants relinquished their insistence on having the settlement proceeds held in escrow in New Jersey, an insistence that allegedly was in breach of their fiduciary duty to plaintiff" and (2) "but for the position taken by [third-party defendants], which allegedly was the proximate cause of the collapse of the negotiations, the settlement would have been

10

consummated." No. 89 Civ. 7094 (PKL), 1992 U.S. Dist. LEXIS 927, at *20 (S.D.N.Y. Jan. 31, 1992). Seyfarth's allegations likewise satisfy the notice pleading standard.

## IV.    CONCLUSION

Seyfarth does not allege in the Third-Party Complaint that Third-Party Defendants participated in the underlying Landlord Action as lawyers or had anything to do with discovery deadlines. Those are red herrings. Seyfarth does complain that Powell and D&D Funding caused harm to Blue Dog by convincing Elizabeth Slavutsky, on behalf of D&D Funding, to repudiate a Proposed Settlement that would have benefited Blue Dog and allowed it to regain possession of the Premises and operate its business. Third-Party Defendants are potentially liable, and their motion should be denied.

11

Dated:   October 29, 2019
         New York, New York

Respectfully submitted,

MORRISON & FOERSTER LLP


/s/ Joel C. Haims
Joel C. Haims
James M. Peck
Erica J. Richards
Andreea R. Vasiliu
Yukiu Monica Chan
250 West 55th Street
New York, New York 10019-9601
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Email: JHaims@mofo.com
       JPeck@mofo.com
       ERichards@mofo.com
       AVasiliu@mofo.com
       MonicaChan@mofo.com

*Counsel to the Defendants/Third-Party
Plaintiffs Seyfarth Shaw LLP and Ralph
Berman*

12