**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
In re:                                                          :
                                                                :   **Chapter 11**
**BLUE DOG AT 399 INC.,**                                       :
                                                                :   **Case No. 15-10694 (MEW)**
                               Debtor.                          :
----------------------------------------------------------------x
**BLUE DOG AT 399 INC.,**                                       :
                                                                :
                               Plaintiff,                       :
                                                                :   **Adv. Proc. No. 19-01029 (MEW)**
                -against-                                       :
                                                                :
**SEYFARTH SHAW, LLP and RALPH**                                :
**BERMAN,**                                                     :
                                                                :
                               Defendants.                      :
----------------------------------------------------------------x
**SEYFARTH SHAW, LLP and RALPH**                                :
**BERMAN,**                                                     :
                                                                :
                               Third-Party Plaintiffs,          :
                                                                :
                -against-                                       :
                                                                :
**ELIZABETH SLAVUTSKY,**                                        :
                                                                :
                               Third-Party Defendant.           :
----------------------------------------------------------------x

**DECISION GRANTING IN PART, AND DENYING IN PART,**
**PLAINTIFF'S MOTION TO AMEND ITS COMPLAINT**

A P P E A R A N C E S:

WHITEFORD, TAYLOR & PRESTON LLP
*Attorneys for Blue Dog at 399 Inc.*
By:   Scott Michael Hare
      Cara C. Murray

MORRISON & FOERSTER LLP
*Attorneys for Seyfarth Shaw LLP and Ralph Berman*
By:   Joel C. Haims
      Michael Birnbaum

**HONORABLE MICHAEL E. WILES**
**UNITED STATES BANKRUPTCY JUDGE**

Before me is a motion by Plaintiff Blue Dog at 399 Inc. ("**Blue Dog**") for leave to file a second amended complaint against the law firm of Seyfarth Shaw LLP ("**Seyfarth**") and Ralph Berman, an attorney formerly associated with Seyfarth. Blue Dog has alleged that the Defendants committed malpractice and were negligent in their representation of Blue Dog during an adversary proceeding between Blue Dog and a landlord known as BP 399 Park Avenue LLC (the "**Landlord**"). There are two main changes that Blue Dog wishes to make to its complaint. First, Blue Dog proposes to assert a claim under section 487 of the New York Judiciary law. Second, Blue Dog proposes to amend its negligence/malpractice claim by alleging additional facts and by adding a claim for punitive damages.

For the reasons set forth below, Blue Dog's motion to amend its pleadings to assert a claim under section 487 of the New York Judiciary Law is denied. Blue Dog's other proposed amendments will be permitted to the extent described below.

**Background**

1. **The Landlord Action**. Blue Dog entered into a commercial real property lease agreement with the Landlord in early 2012 for the purpose of operating a cafe in midtown Manhattan. A dispute arose between Blue Dog and the Landlord before the cafe could open, and those disputes eventually became the subject of an adversary proceeding in this Court. *See* Adversary Proceeding No. 15-01097 the "**Landlord Action**").

On February 1, 2016, I entered a joint pretrial scheduling order that set a deadline of February 8, 2016 for initial disclosures and a deadline of May 26, 2016 for all discovery. [Landlord Action ECF No. 19]. It also fixed deadlines for the delivery of expert reports and the depositions of witnesses. *Id.* I approved a series of amendments to the schedule, and then after a

2

discovery conference on July 19, 2016 I extended the deadline for the completion of both fact and expert discovery to August 10, 2016.  Hr'g Tr. 8:13-23, Jul. 19, 2016 [Landlord Action ECF No. 28].  However, I warned the parties that I would allow no further extensions. *Id.*

The Defendants did not make a timely identification of any expert witnesses on behalf of Blue Dog.  Blue Dog alleges that the Defendants waited until the day following the August 10 deadline to retain an expert to prepare a report on the economic damages resulting from the cafe's failure to open.  Am. Compl. ¶ 32.  Blue Dog also retained at least one other expert to testify about other issues but did not disclose the expert by the August 10 deadline.  Blue Dog first disclosed the two experts when it filed its opposition to the Landlord's motion for summary judgment.  Am. Compl. ¶¶ 34-35; Landlord Action ECF Nos. 35 & 45.  I granted the Landlord's motion to strike the untimely reports and I prohibited Blue Dog from using the proposed experts at trial.  Am. Compl. ¶¶ 36-39, Order Striking Proposed Expert Witnesses.  [Landlord Action ECF No. 51].

Blue Dog later identified four other previously-undisclosed witnesses in the parties' proposed joint pre-trial order.  [Landlord Action ECF No. 54].  The Landlord objected, and I determined that the witnesses were either fact witnesses who had no relevant testimony to offer, or were otherwise expert witnesses whose untimely designation required that their testimony be excluded from the case.  Am. Compl. ¶¶ 40-41; Hr'g Tr. 18:10-17, Jan. 25, 2017 [Landlord Action ECF No. 61].

I made other pretrial rulings that affected the evidence the parties could use and the contentions they could pursue at trial, and the parties elected to return to mediation rather than to proceed with the scheduled trial.  Blue Dog and the Landlord later negotiated a settlement but that deal fell through.  Seyfarth then withdrew as counsel and was replaced by another firm.

3

2. **The First Malpractice Proceeding.** On June 18, 2018, Blue Dog filed an adversary proceeding against the Defendants that asserted claims for declaratory judgment, negligence/legal malpractice, and violation of section 487 of the New York Judiciary Law. *See* Adversary Proc. No. 18-01571 (the "**First Malpractice Proceeding**"). The proceeding was filed while the Landlord Action was still in progress. The Defendants moved to dismiss, and after a hearing I granted that motion. *See* Order Dismissing Adv. Proc. (the "**Dismissal Order**") [Adv. Proc. No. 18-01571, ECF No. 24]. I ruled that the claim alleging violations of section 487 of the New York Judiciary Law had failed to state a claim upon which relief could be granted, and I dismissed the section 487 claim "with prejudice" as to all defendants. I also ruled that the malpractice and negligence claims were premature, and dismissed those claims without prejudice. Blue Dog did not file an appeal from the order dismissing the section 487 claim.

3. **The Current Proceeding and the Motion to Amend.** Blue Dog, represented by different counsel, later reached a settlement with the Landlord. After that settlement became effective, Blue Dog filed the present adversary proceeding against the Defendants. The initial complaint in the current proceeding was filed on February 26, 2019. I dismissed it but with leave to re-plead [ECF No. 9], and an Amended Complaint was filed on June 9, 2019 [ECF No. 10]. I then denied a motion to dismiss the Amended Complaint. [ECF No. 18].

Blue Dog alleges in the Amended Complaint that the Defendants' failures to make timely expert witness designations rendered Blue Dog unable to prove liability and damages at trial and severely weakened its position in settlement discussions. Am. Compl. ¶¶ 48-50. Blue Dog seeks damages equal to the difference between (a) what it believes it would have obtained after trial if it had been allowed to use the excluded testimony, and (b) the amount it actually received in the mediated settlement. Am. Compl. ¶¶ 63-70.

The additional amendments that Blue Dog now wishes to make are based on discovery materials that Blue Dog has obtained. Blue Dog alleges that in July 2016 other partners at Seyfarth Shaw expressed disappointment and concern and reprimanded Mr. Berman for having led them to believe that Mr. Berman had scheduled depositions when in fact Mr. Berman had not done so. Blue Dog also alleges that at some time prior to December 2016 Seyfarth and its partners concluded that Mr. Berman's handling of various matters was disappointing, that Mr. Berman was "dangerous" and that he was hurting the firm and its clients. Seyfarth allegedly decided to remove Mr. Berman from all client files with the exception of Blue Dog's action against the Landlord. *See* Proposed Am. Compl. ¶¶ 57-76.

Blue Dog contends that it was not advised of these matters and it wishes to assert a claim that Seyfarth Shaw violated section 487 of the New York Judiciary Law. Blue Dog also wishes to add a request for punitive damages to the relief that it seeks.

## **Legal Standards**

Fed. R. Civ. P. 15(a) is applicable to adversary proceedings. *See* Fed. R. Bankr. P. 7015. Since there has already been a prior amendment to Blue Dog's complaint, Rule 15 permits a further amendment only "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend should be "freely given" if the "underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief," except in the presence of "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).

"Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'n, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). "An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a motion to dismiss on some other basis." *McNally v. Yarnall*, 764 F. Supp. 853, 855 (S.D.N.Y. 1991), citing *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir. 1979) and *Freeman v. Marine Midland Bank–New York*, 494 F.2d 1334, 1338 (2d Cir. 1974).

The decision to permit an amendment lies within the discretion of the court, but a court may not refuse to allow and amendment without a justifying reason. *Foman*, 371 U.S. at 178. A court "plainly has discretion to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is made for the delay, and the amendment would prejudice the defendant." *Franconero v. UMG Recordings, Inc.*, 542 F. App'x 14, 18 (2d Cir. 2013).

Defendants have argued that the proposed claim under section 487 of the Judiciary Law and the proposed request for punitive damages are "futile" because they are legally deficient and would be subject to dismissal under Fed. R. Bankr. P. 7012, which incorporates the standards set forth in Fed. R. Civ. P. 12(b)(6). In deciding whether a pleading could survive a motion to dismiss a court must accept the factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *E.E.O.C. v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000). However, the factual allegations in a complaint must be supported by more than mere conclusory statements. *Twombly*, 550 U.S. at 555. The allegations must be sufficient "to raise a right to relief above the speculative level" and provide more than a "formulaic recitation of the elements of a cause of action." *Id*. (citations omitted). "[O]nly a

complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not a "probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Fed. R. Civ. P. 8(a) because it has merely "alleged" but not "show[n] . . . that the pleader is entitled to relief." *Id*. at 679; *see also id*. at 682 (allegations are rejected where there is an "obvious alternative explanation" for the conduct alleged that is more "likely") (internal quotation marks and citations omitted).

## Discussion

**I.     The Motion to Re-Assert a Section 487 Claim Is Denied.**

Section 487 of the New York Judiciary Law provides:

> An attorney or counselor who:
>
> 1. Is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party; or,
>
> 2. Wilfully delays his client's suit with a view to his own gain; or, wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for,
>
> is guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

*See* N.Y. Judiciary Law § 487. There are two independent reasons why the proposed amendment would be futile.

7

A.   **The Section 487 Claim is Barred by *Res Judicata*.**

Blue Dog already asserted a section 487 claim the First Malpractice Proceeding. I dismissed that claim with prejudice. Blue Dog did not ask for permission to replead the claim at that time and it did not file an appeal from the dismissal order.

A dismissal with prejudice has preclusive effect. *See Holcombe v. Ingredients Solutions, Inc.*, 797 F. App'x 630, 635 n.2 (2d Cir. 2020); *Gravatt v. Columbia University*, 845 F.2d 54, 56 (2d Cir. 1988). "A dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action. Such a dismissal constitutes a final judgment with the preclusive effect of '*res judicata* not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit.'" *Nemaizer v. Baker*, 793 F.2d 58, 60–61 (2d Cir. 1986) (citations omitted).

Blue Dog acknowledged, in its submission dated July 15, 2020, that the proposed section 487 claim would immediately be subject to dismissal on grounds of *res judicata* and that the only procedural mechanism through which Blue Dog might negate the preclusive effect of the Dismissal Order would be to move for relief from the Dismissal Order pursuant to Fed. R. Civ. P. 60, which is applicable to adversary proceedings pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 9024. Rule 60 provides, in relevant part, as follows:

> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.**
> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons . . .
>
> **(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); . . . or
>
> **(6)** any other reason that justifies relief.

8

**(c) Timing and Effect of the Motion.**

**(1) *Timing.*** A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

*See* Fed. R. Civ. P. 60(b). However, Blue Dog has not identified any grounds upon which relief under Rule 60(b) would be available to it.

Blue Dog contends that its proposed amended complaint is based on newly discovery evidence. However, a request for relief from a judgment based on "newly discovered evidence" under Rule 60(b)(2) can only be granted if such relief is sought within one year after the entry of the order from which relief is sought. *Id.* Here, no motion for relief under Rule 60(b)(2) was made within the one-year period following the entry of the Dismissal Order on December 6, 2018. In fact, the Motion to Amend was not filed until more than one year had elapsed since the entry of the Dismissal Order.

Blue Dog alternatively argues that it is entitled to relief under Rule 60(b)(6). But it is well-settled that Rule 60(b)(6) cannot be invoked where (as here) another provision of Rule 60(b) explicitly covers the grounds on which relief is sought. *See U.S. v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391–92 (2d Cir. 2001) ("[I]f the reasons offered for relief from judgment can be considered in one of the more specific clauses of Rule 60(b), such reasons will not justify relief under Rule 60(b)(6)").

Blue Dog also argues that the Defendants were slow in turning over certain records that the Court had ordered Seyfarth Shaw to provide when it was replaced as counsel in 2017. *See* Scott Hare Letter, July 15, 2020 [ECF No. 73]. It is not clear why this would be relevant at all. Rule 60(b)(2) always requires a showing that the movant could not reasonably have discovered the alleged new evidence with reasonable diligence, but even if a movant can make such a showing the motion is expressly subject to a one-year time limit. *See* Fed. R. Civ. P. 60(b)(2),

9

60(c). Furthermore, the turnover order that I entered merely required Seyfarth to turn over its litigation files concerning Seyfarth's representation of Blue Dog in the Landlord Action. The "newly discovered evidence" that Blue Dog has identified – which consists of internal emails about Mr. Berman's behavior – was not subject to that turnover order.

Blue Dog alternatively argues that the newly discovered documents were responsive to Blue Dog's First Request for Production of Documents and that Seyfarth only produced the documents on December 20, 2019, approximately 8 months after Blue Dog made the request and two weeks after the expiration of the one-year time bar applicable under Rule 60(b)(2). Again, it is hard to see the relevance of this argument. Rule 60(b)(2) imposes an absolute one-year time limit even in cases where a party could not reasonably have discovered the alleged new evidence with reasonable diligence. Furthermore, the timing of Seyfarth's document production apparently was entirely consensual. If Blue Dog had any thought of resurrecting the section 487 claim, then surely it was on notice of the limited time with which it could seek relief from the Dismissal Order, and so if it needed discovery it should have pressed to get it. Blue Dog instead let the period expire.

### B. The Proposed Amendment Fails to State a Claim under Section 487.

The Proposed Amended Complaint also fails to state a section 487 claim. Blue Dog seeks to invoke subparagraph 1 of section 487, which makes an attorney liable if the attorney "is guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive" Blue Dog. *See* Proposed Am. Compl. ¶ 97. The new allegations, however, do not support a claim of "deceit" for purposes of section 487.

Section 487 of the Judiciary Law derives from the first Statute of Westminster, which was adopted in England in 1275. *Amalfitano v Rosenberg*, 874 N.Y.S.2d 868, 870, 903 N.E.2d

10

265 (N.Y. 2009). Although it is currently a component of the New York Judiciary Law, its origins lie in the criminal law of England. For many years section 487 remained as part of New York's penal law. *Id.* at 871-72.

Relief under section 487 is not lightly given. *Facebook, Inc. v DLA Piper LLP (US)*, 134 A.D.3d 610, 615, 23 N.Y.S.3d 173 (1st Dep't 2015), *denying leave to appeal*, 28 N.Y.3d 903 (2016). The deceit required to establish a section 487 claim requires the making of an affirmative false statement with knowledge of falsity and with an affirmative intent to deceive. *Bill Birds v. Stein Law Firm, P.C.*, 126 N.Y.S.3d 50, 53 (N.Y. 2020); *see also Facebook*, 134 A.D.3d at 615 ("the [section 487] claim will be dismissed if the allegations as to scienter are conclusory and factually deficient"). A section 487 claim "will be dismissed if the allegations as to scienter are conclusory and factually insufficient." *Facebook*, 134 A.D.3d at 615. "Allegations regarding an act of deceit or intent to deceive must be stated with particularity." *Id.* The reach of the statute is confined to intentional egregious misconduct, thus permitting attorneys the latitude needed to "engage in written and oral expression consistent with responsible, vigorous advocacy . . ." *O'Callaghan v. Sifre*, 537 F. Supp. 2d 594, 596 (S.D.N.Y. 2008); *see also Ray v. Watnick*, 182 F. Supp. 3d 23, 29 (S.D.N.Y. 2016), *aff'd*, 688 F. App'x 41 (2d Cir. 2017) (requiring that deceit be of an "extreme or egregious" nature).

In addition, the deception required by section 487 involves a deceptive affirmative representation of facts or circumstances concerning the subject matter of a litigation, made during the conduct of the litigation itself. *See, e.g.*, *Scarborough v. Napoli, Kaiser & Bern, LLP*, 63 A.D.3d 1531, 1532-33, 880 N.Y.S.2d 800 (4th Dep't 2009), *reh'g denied*, 66 A.D.3d 1501 (2009) (affirming denial of summary judgment requested by defendant-attorneys accused of procuring client's stipulation of discontinuance without informing him that case was already

11

dismissed by reason of the law firm's failure to file a timely note of issue); *Izko Sportswear Co. v Flaum*, 25 A.D.3d 534, 537, 809 N.Y.S.2d 119, 122 (2d Dep't 2006) (complaint alleging that bankruptcy counsel failed to disclose to the plaintiff and to the bankruptcy court its prior representation of plaintiff's landlord-creditor stated section 487 claim under deceit theory); *Amalfitano v. Rosenberg*, 428 F. Supp. 2d 196, 208–09 (S.D.N.Y. 2006), *certifying questions to Court of Appeals*, 533 F.3d 117 (2d Cir. 2008), *answering certified questions*, 12 N.Y.3d 8, 874 N.Y.S.2d 868 (N.Y. 2009) (attorney found to have violated section 487 by knowingly (i) incorporating false allegations into complaint, cross-motions for summary judgment, and appeal, (ii) submitting affidavits containing false statements, and (iii) submitting a false tax return into evidence); *Moormann v. Perini & Hoerger*, 65 A.D.3d 1106, 886 N.Y.S.2d 49 (2d Dep't 2009) (triable section 487 claim raised on deceit theory where attorney represented to plaintiff that it was working to retrieve plaintiff's vehicle despite attorney's knowledge that a default judgment already entered against the plaintiff precluded any possibility of retrieval); *Empire Purveyors, Inc. v. Brief Justice Carmen & Kleiman, LLP*, 875 N.Y.S.2d 820, 21 Misc. 3d 1137(A) (Sup. Ct. New York Cnty. 2008) (complaint alleging that law firm settled case without informing client and misappropriated monies paid by adversary to client stated section 487 claim). Alleged deceptions that occur prior to the commencement of litigation are not within the reach of section 487. *See id.* at *3, *Bill Birds*, 126 N.Y.S.3d at 54.

The Proposed Amended Complaint alleges that in July 2016 Mr. Zuckerman (a partner at Seyfarth Shaw) believed that Mr. Berman had deceived him as to whether Mr. Berman had placed telephone calls for setting depositions. Even assuming that this allegation were true, it could not support a section 487 claim as it alleges the deceit of Mr. Zuckerman (a partner of Mr. Berman) rather than any deceit of Blue Dog or the Court.

12

The Proposed Amended Complaint also alleges that Seyfarth Shaw did not disclose its concerns about Mr. Berman or instances in which Mr. Berman's work might have been deficient. But the only times the word "deceit" (or any of its derivatives) is used in the Proposed Amended Complaint are (a) with reference to Mr. Berman's alleged deceit of Mr. Zuckerman, (b) in reciting the statutory language of section 487, and (c) in proposed paragraph 97, where the conclusory statement is made that "[a]s described in greater detail above, Defendants engaged in and practiced deceit, with the intent to deceive their client, Blue Dog, a party to the Landlord Action, and are therefore liable for treble damages under Section 487."

In fact, the Proposed Amended Complaint sets forth no allegation that either Mr. Zuckerman or Mr. Wolfert were of the belief that Mr. Berman was incapable of handling the Landlord Action after they had transferred all other case files away from him. Glaringly absent from the Proposed Amended Complaint is any allegation (a) that any Seyfarth partner actually said anything misleading to Blue Dog, (b) that any Seyfarth partner actually believed that Mr. Berman could not handle the Blue Dog litigation, or (c) that any particular Seyfarth partner wished to deceive Blue Dog and acted with the intent to deceive Blue Dog.

Instead, the Proposed Amended Complaint goes to great lengths to allege that the Defendants kept silent and thereby "did not alert Blue Dog" of their alleged concerns regarding Mr. Berman. Proposed Am. Compl. ¶¶ 65-75. When the Defendants argued in opposition to the motion that a failure to disclose does not necessarily imply an intentional deception [Defs' Mem. of Law ¶ 16], Blue Dog cited to the decision in *Betz v. Blatt,* 160 A.D.3d 689 (2d Dep't 2018), as supposedly supporting the proposition that an attorney's silence can constitute a "deceit" for purposes of section 487. However, *Betz* involved an attorney who was accused of knowingly assisting an executor in the looting and mismanagement of an estate. *Id.* at 690-91, 694. The

court determined, among other things, that the plaintiff had adequately alleged that the attorney had committed an outright attempt to deceive the court by "filing [] a deficient accounting and an addendum, which further delayed the administration of the estate." *Id.* at 695.

In *Betz* the attorney allegedly participated in and facilitated a false accounting that was provided to the client and the court. The pleading in that case therefore alleged that the attorney was a knowing participant in an affirmative deception, and acted with the intent to carry out that deception. By contrast, Blue Dog's allegations of concealment have nothing to do with the subject matter of the Landlord Action or with any statements actually made to Blue Dog by Seyfarth Shaw or any other person. Instead, Blue Dog's allegations involve only Seyfarth's alleged concerns about Mr. Berman's job performance. Blue Dog may make its arguments as to whether Seyfarth acted negligently by allowing Mr. Berman to handle the case, but those allegations do not suffice to state a claim under section 487.

Finally, Blue Dog argues that the Defendants owed a duty of affirmative disclosure pursuant to rules 1.1, 1.3, 1.4, 1.16, 5.1 and 8.3 of the New York Rules of Professional Conduct. Pl's. Reply at 8 [ECF No. 68]. None of the cited rules requires that a law firm disclose information to its client regarding concerns over the job performance of one of its lawyers. Nor has Blue Dog cited any authority for the proposition that a section 487 claim may be predicated upon violation of a Rule of Professional Conduct.

Defendants have also argued that a section 487 claim can only be based on conduct that occurs in the state courts. I am not at all convinced that this is correct. The decision in *Schertenleib v. Traum*, 589 F.2d 1156, 1166 (2d Cir. 1978), has sometimes been cited in support of the argument that section 487 applies only in the state courts, but the actual holding in *Schertenleib* was merely that section 487 is limited to attorney conduct that takes place within

14

the territorial borders of New York State. I note that the recent Court of Appeals decision in *Bill Birds*, 126 N.Y.S.3d at 54, involved a state court claim under section 487 that was based on conduct that occurred during a prior federal court litigation. The Court of Appeals held that the section 487 claim in *Bill Birds* was deficient for various reasons, but it did not express any concern with the fact that the underlying litigation had proceeded in federal court in New York rather than in the state court. I need not resolve this particular defense, however, because the section 487 claim is deficient as pleaded and is also barred by *res judicata*, as explained above.

## II.     Blue Dog May Amend the Complaint to Assert Punitive Damages.

Punitive damages serve a different purpose than compensatory damages. Rather than making the victim whole, punitive damages are intended to punish the tortfeasor and to deter similar future conduct by others. *Ross v Louise Wise Servs.*, 8 N.Y.3d 478, 489 (N.Y. 2007). Punitive damages may be imputed to a law firm for the conduct of its lawyers. *Dischiavi v Calli*, 975 N.Y.S.2d 266, 270 (4th Dep't 2013).

"[T]he standard for imposing punitive damages is a strict one and punitive damages will be awarded only in exceptional cases . . . ." *Marinaccio v Town of Clarence*, 20 N.Y.3d 506, 511 (N.Y. 2013), *denying reargument*, 21 N.Y.3d 976 (N.Y. 2013). The conduct justifying punitive damages must be "egregious tortious conduct" manifesting "spite or malice, or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton." *Rocanova v Equitable Life Assur. Socy. of U.S.*, 83 N.Y.2d 603, 613 (N.Y. 1994) and *Marinaccio*, 20 N.Y.3d at 511; *see also Ross*, 8 N.Y.3d at 489 ("The misconduct must be exceptional, as when the wrongdoer has acted maliciously, wantonly, or with a recklessness that betokens an improper motive or vindictiveness or has engaged in outrageous or oppressive intentional misconduct or

15

with reckless or wanton disregard of safety or rights") (internal citations and quotations marks omitted); *Marinaccio*, 20 N.Y.3d at 512 ("Punitive damages are permitted only when a defendant purposefully causes, or is grossly indifferent to causing, injury and defendant's behavior cannot be said to be merely volitional; an unmotivated, unintentional or even accidental result of a legally intentional act cannot, alone, qualify"); *Sharapata v Town of Islip*, 56 N.Y.2d 332, 335, (N.Y. 1982) (punitive damages "may only be awarded for exceptional misconduct which transgresses mere negligence . . . .")

"Willful" is synonymous with "wanton" and "reckless," and the three terms are "grouped together as an aggravated form of negligence indicating that the actor has intentionally done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Metro. Life Ins. Co. v Noble Lowndes Int'l, Inc.*, 192 A.D.2d 83, 90 (1st Dep't 1993), *aff'd*, 84 N.Y.2d 430 (1994), *denying reh'g*, 84 N.Y.2d 1008 (1994) (quoting Prosser, Torts § 34, at 184–185 [4th ed.]) (internal quotation marks omitted).

Seyfarth has argued that punitive damages are unavailable to Blue Dog because the Proposed Amended Complaint fails to allege that Seyfarth's conduct was aimed at the public generally. The case law on the so-called "public harm requirement" suffers from considerable inconsistency and/or ambiguity, but the weight of the authority lies with the relaxation of this requirement. In *Walker v Sheldon* (10 N.Y.2d 401, 405-06 (N.Y. 1961)), the Court of Appeals applied the public harm requirement in the context of a claim for fraud. In a later fraud case, however, the Court of Appeals explicitly disregarded this requirement, and instead held that "[p]unitive damages are allowable in tort cases such as this so long as the very high threshold of moral culpability is satisfied." *Giblin v Murphy*, 73 N.Y.2d 769, 772 (N.Y. 1988).

16

The cases to which Seyfarth has cited in support of the public harm requirement ultimately rely on *Rocanova*, which discussed the necessity of the public harm requirement in the context of a breach of contract claim but denied punitive damages on other grounds related to the plaintiff's failure to allege sufficiently egregious tortious conduct in association with the parties' contractual relationship. 83 N.Y.2d at 613-14. Some federal courts in this district have read *Rocanova* as abrogating *Giblin*. *See, e.g.*, *Conocophillips v. 261 East Merrick Road Corp.*, 428 F. Supp. 2d 111, 129 (E.D.N.Y. 2006); *Cerveceria Modelo, S.A. De C.V. v. USPA Accessories LLC*, 2008 WL 1710910, at *7 n.3 (S.D.N.Y. Apr. 10, 2008). For the most part, however, New York state court cases have recognized *Giblin's* continued vitality and have treated the "public harm" discussion in *Rocanova* either as *dictum* or as a standard that applies only to breach of contract cases. *See e.g.*, *HSH Nordbank AG v Barclays Bank PLC*, No. 652678/2011, 986 N.Y.S.2d 866, 2014 N.Y. Slip Op. 50290(U) at *21 n.16 (Sup. Ct. New York Cnty. Mar. 3, 2014); *Don Buchwald & Assocs. v Rich*, 281 A.D.2d 329, 330 (1st Dep't 2001) (limiting the public harm requirement to breach of contract cases); *Gonzalez-Vasquez v Mayors Auto Group-Woodside, LLC*, No. 23677/2014E, 110 N.Y.S.3d 213, 2018 N.Y. Slip Op. 51068(U), at *2 (Sup. Ct. Bronx Cnty. 2018) (acknowledging that the public harm requirement does not apply to punitive damages sought in a conversion case); *Simon and Son Upholstery v 601 W. Assocs LLC.*, No. 390376-00, 604837-98, 2003 N.Y. Slip Op. 51281(U), 2003 WL 22231540, at *16-17 (Sup. Ct. New York Cnty. 2003) (reading *Rocanova* to apply to claims alleging fraud in connection with a breach of contract.) I agree with these decisions and hold that Blue Dog need not allege harm directed at the public generally to state a claim for punitive damages.

17

Seyfarth also argues that a mere failure to disclose cannot support a request for punitive damages, citing *Jean v. Chinitz*, 163 A.D.3d 497, 498 (1st Dep't 2018) (dismissing a punitive damages request because the complaint merely alleged that defendant-attorneys concealed their conduct resulting in the negligent dismissal of the plaintiff's claim).  Blue Dog's request for punitive damages, however, is not based merely on Seyfarth's alleged concealment of Mr. Berman's past issues, but encompasses Seyfarth's decision to leave Mr. Berman in charge of the Landlord Action while at the same time allegedly removing him from other matters.

The real issue is whether the allegations regarding Seyfarth's failure to replace Mr. Berman are sufficient to support a claim for punitive damages.  Read in the light most favorable to Blue Dog, the Proposed Amended Complaint alleges that Seyfarth and its partners knew and believed that (i) Mr. Berman had failed to schedule unspecified depositions, (ii) Mr. Berman's conduct of the Landlord Action was "incredibly disappointing and concerning," and (iii) Mr. Berman was a dangerous lawyer whose performance necessitated his removal from other cases.  The question is whether these allegations (if true) are merely allegations of negligent behavior or whether they constitute sufficient allegations that Seyfarth and its partners so consciously and deliberately disregarded Blue Dog's interests such that their conduct may be called willful or wanton.  I believe the allegations suffice for pleading purposes (though it is a close question), and that ultimately the decision as to whether the facts support a request for punitive damages should be reserved for trial.

Accordingly, I will deny that portion of the Motion to Amend that seeks to amend the complaint to add a cause of action under section 487 of the New York Judiciary Law, and I will grant that portion of the Motion to Amend that seeks to amend the complaint to add a claim for punitive damages.

Two other issues remain to be resolved. First, on September 30, 2020, after the motion was fully briefed but before the issuance of this Decision, Blue Dog provided the Court (by email) with a proposed "revised" edition of the Proposed Amended Complaint. The new proposed changes do not change the claims that have been asserted and are not necessary to the prosecution of the claims. To some extent the new proposed changes appear to be gratuitous efforts to quote from potentially embarrassing discovery materials. The claims have been stated and the Defendants are on notice of them, and the pleadings do not need to be amended to incorporate all of the evidence that may be offered at trial. Blue Dog may file an amended complaint that incorporates the punitive damage allegations that were originally filed with the pending motion (excluding, for the avoidance of doubt, the proposed claim under section 487 of the New York Judiciary Law), but the further amendments set forth in the proposed "revised version" on September 30, 2020 are not approved.

Second, portions of the motion to amend were filed under seal, and the Proposed Amended Complaint was itself filed as a sealed exhibit to the motion. I raised this issue with the parties on October 22 and I have considered the request by Mr. Berman's counsel that certain material should remain under seal pursuant to 11 U.S.C. § 107(b)(2). I agree that certain limited references in the proposed amendment should remain under seal and my law clerk will communicate with the parties' counsel to make clear which items those are.

Dated: New York, New York
   October 30, 2020

**s/Michael E. Wiles**
HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE
